1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| PHILIP ALVAREZ, RANDALL BETTISON, MARC KELLEHER, and DARLENE VAUGH individually and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br><br>    v.<br><br>SIRIUS XM RADIO INC.,<br><br>              Defendant. | Case No. 2:18-cv-8605-JVS-SS<br><br>SETTLEMENT AGREEMENT AND RELEASE |

- 1 –

SETTLEMENT AGREEMENT AND RELEASE

THIS SETTLEMENT AGREEMENT AND RELEASE is made and entered into as of June 5, 2020, by and between Plaintiffs Philip Alvarez, Randall Bettison, Marc Kelleher, and Darlene Vaugh (defined below as "Named Plaintiffs"), individually and on behalf of the Settlement Class, and Paul Wright, by and through Class Counsel, and Defendant Sirius XM Radio Inc. ("Sirius XM"), by and through its counsel, Jones Day. Unless otherwise defined, capitalized words or terms used in this Settlement Agreement and Release shall have the meanings as set forth in the "Definitions" Section below.

## I.    RECITALS

WHEREAS, Sirius XM provides and offers, among other products and services, a subscription-based satellite and internet radio service.

WHEREAS, Named Plaintiffs allege, *inter alia*, that: (i) Sirius XM and/or its predecessors (Sirius Satellite Radio Inc. and XM Satellite Radio Inc.) marketed and sold Lifetime Subscriptions to its satellite radio service that would last the lifetime of the subscriber, (ii) Sirius XM misrepresented the Lifetime Subscriptions that it marketed and sold, and refused to honor such subscriptions for the lifetime of the subscriber; and (iii) instead, Sirius XM claimed that each Lifetime Subscription was limited to the life of the radio originally used for the subscription (as opposed to the life of the subscriber) or that each Lifetime Subscription was subject to a limited number of radio transfers, subject to a $75 transfer fee for each such transfer.

WHEREAS, Sirius XM denies Named Plaintiffs' allegations and asserts that it marketed Lifetime Subscriptions for the lifetime of the consumer's radio and subject to the terms and conditions of the subscriptions provided to the consumer at the time of purchase.

WHEREAS, Sirius XM ceased selling Lifetime Subscriptions in or about January 2012.

WHEREAS, based on Sirius XM's available records, Sirius XM warrants and represents that it marketed and sold a total of approximately 964,000 Lifetime Subscriptions. As of June 5, 2020, based on Sirius XM's available records: Sirius XM

- 2 –

SETTLEMENT AGREEMENT AND RELEASE

warrants and represents that there were approximately 838,000 Active Lifetime Subscriptions, approximately 126,000 Inactive Lifetime Subscriptions, and that Internet streaming access of Sirius XM's satellite radio service is available to Active Lifetime Subscribers at no additional fee to Sirius XM.

WHEREAS, Named Plaintiffs purchased Lifetime Subscriptions from Sirius XM.

WHEREAS, on September 12, 2016, Plaintiff Paul Wright ("Wright") filed a class action entitled *Wright v. Sirius XM Radio Inc.*, Case No. 8:16-cv-01688-JVS-JCG (C.D. Cal.) ("*Wright*"), alleging breaches of express and implied contract, fraudulent and negligent misrepresentation, and violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, and Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

WHEREAS, on November 14, 2016, Sirius XM filed a motion to dismiss and to compel arbitration in the *Wright* case and, on June 1, 2017, the district court granted Sirius XM's motion to dismiss and to compel arbitration. The district court also denied Wright's request for leave to amend his complaint to add additional class representatives.

WHEREAS, on May 8, 2018, Plaintiff Darlene Vaugh filed a class action complaint in the Superior Court of New Jersey for Atlantic County entitled *Vaugh v. Sirius XM Radio Inc.*, alleging breaches of express and implied contract, fraudulent and negligent misrepresentation, unjust enrichment, and violations of New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, et seq. Sirius XM removed this action to the District of New Jersey on June 8, 2018 and answered the complaint there on June 11, 2018 (D.N.J. Case No. 1:18-cv-10331-NLH-AMD) ("*Vaugh*").

WHEREAS, Plaintiff Philip Alvarez filed a class action complaint in the Superior Court of California, County of Los Angeles, on August 28, 2018 entitled *Alvarez v. Sirius XM Radio Inc.*, alleging violations of the UCL and CLRA, as well as fraudulent and negligent misrepresentation, and seeking declaratory and injunctive relief only, and no monetary damages. Sirius XM removed this action to the Central District of California on October 5, 2018 and answered the complaint on October 6, 2018 (C.D. Cal. Case No.

- 3 –

X :18-cv-08605-JVS-SS) ("*Alvarez*").

WHEREAS, Plaintiff Randall Bettison filed a class action complaint in the Circuit Court of Oregon for Multnomah County on May 17, 2018 entitled *Bettison v Sirius XM Radio Inc.*, alleging breaches of express and implied contract, fraudulent misrepresentation, unjust enrichment, and violations of Oregon's Unlawful Trade Practices Act, Or. Rev. Stat. § 646.605, et seq. Sirius XM removed this action to the District of Oregon on June 19, 2018 and answered the complaint on June 20, 2018 (D. Or. 3:18-cv-01065-PK) ("*Bettison*").

WHEREAS, Sirius XM denies each and every one of Named Plaintiffs' allegations of unlawful or wrongful conduct and does not concede or admit any liability whatsoever, and in particular denies that it engaged in any misrepresentation in the marketing of its Lifetime Subscriptions, which were clearly described as applying to the lifetime of the consumer's radio; Sirius XM has asserted various other defenses and further denies that any of the challenged conduct caused Named Plaintiffs or any putative class member any injury or damage.

WHEREAS, the Parties engaged in extensive negotiations, including participation in a full-day mediation session on November 29, 2018, before the Honorable Carl J. West (Ret.). The Settlement was reached as a result of extensive arm's-length negotiations, occurring over the course of several months, including discussions following the in-person mediation under the supervision of Judge West.

WHEREAS, before entering into this Settlement Agreement, Named Plaintiffs, by and through Class Counsel, conducted an arm's-length and thorough examination, investigation, and evaluation of the relevant law, facts, and allegations to assess the merits of the claims. Before and during these settlement discussions and mediations, the Parties had an arm's-length exchange of sufficient information to permit Named Plaintiffs, Wright, and Class Counsel to evaluate the claims and potential defenses and to meaningfully conduct informed settlement discussions.

WHEREAS, based upon their review, investigation, and evaluation of the facts and

SETTLEMENT AGREEMENT AND RELEASE

law relating to the matters alleged in the pleadings, Named Plaintiffs and Class Counsel, on behalf of the members of the Settlement Class, agreed to settle the *Vaugh, Alvarez* and *Bettison* actions (collectively defined below as "Cases") and Wright has agreed to settle his individual claim, pursuant to the provisions of this Settlement Agreement, after considering, among other things: (i) the substantial benefits to the proposed Settlement Class Members under the terms of this Settlement; (ii) the risks, costs, and uncertainty of protracted litigation, especially in complex actions such as this, as well as the difficulties and delays inherent in such litigation; and (iii) the desirability of consummating this Settlement as promptly as possible in order to provide effective relief to the proposed Settlement Class Members.

WHEREAS, the undersigned Class Counsel have conducted substantial discovery, have investigated the facts and underlying events relating to the subject matter of the claims, have carefully analyzed the applicable legal principles, and, along with Named Plaintiffs and Wright, Class Counsel have concluded, based upon their investigation, and taking into account the risks, uncertainties, burdens and costs of further prosecution of their claims, and also taking into account the substantial benefits the Settlement Class will receive pursuant to this Settlement Agreement, that a resolution and compromise on the terms set forth herein is fair, reasonable, adequate, and in the best interests of the Settlement Class Members, Named Plaintiffs, and Wright.

WHEREAS, Sirius XM has concluded, despite its belief that it is not liable for the claims asserted in the Cases and that it has defenses thereto, as well as meritorious positions in compelling arbitration in the Cases, that it is in Sirius XM's best interests to enter into this Settlement Agreement to avoid further expense and burden, along with the distraction and uncertainty, of continuing protracted litigation, and thereby to resolve this controversy.

WHEREAS, the respective Named Plaintiffs in *Vaugh* and *Bettison* intend to dismiss the complaints in their own cases, without prejudice; Marc Kelleher, Randall Bettison, and Darlene Vaugh have agreed to join Philip Alvarez in filing an amended

complaint in *Alvarez* immediately following the execution of this Settlement Agreement; and Paul Wright will participate in this Settlement rather than pursue his individual arbitration.

WHEREAS, the Parties agree that this Settlement Agreement shall not be deemed or construed to be an admission or evidence of any violation of any federal or state statute, rule or regulation, or principle of common law or equity, or of any liability, wrongdoing or injury by Sirius XM, or of the truth of any of the claims asserted in the Cases, or of the infirmity or waiver of any of the defenses that have been raised or could be raised by Sirius XM.

NOW THEREFORE, IT IS HEREBY AGREED THAT, in consideration of the covenants and agreements set forth herein, the Action shall be fully and finally settled and released with prejudice, subject to judicial approval as required under Rule 23 of the Federal Rules of Civil Procedure, under the following terms and conditions:

## II.   DEFINITIONS

1.     "Action" means the class action lawsuit entitled *Alvarez v. Sirius XM Radio Inc.,* Case No. 2:18-cv-08605, pending in the United States District Court, Central District of California.

2.     "Active Lifetime Subscription" means a Lifetime Subscription that, according to Sirius XM's records, is associated with a Device that was activated to receive Sirius XM's satellite radio service prior to June 5, 2020 and that continues to be authorized to receive the Sirius XM satellite radio service.

3.     "Administration Expenses" means the reasonable fees, costs, and charges incurred, charged, or invoiced by the Settlement Administrator in relation to this Settlement and to provide the notice, distribution and other administrative tasks of this Settlement, as described in Paragraphs 41 through 46 below.

4.     "Agreement," "Settlement," or "Settlement Agreement" means this Settlement Agreement and Release and the settlement embodied in this Settlement Agreement and Release, including all attached Exhibits (which are an integral part of this

- 6 –

Settlement Agreement and Release and are incorporated herein in their entirety by reference).

5.     "Cases" means the *Vaugh, Alvarez* and *Bettison* cases.

6.     "Claim Deadline" means the date by which a Claim Form, as provided in Paragraph 67(a) below, must be received by the Settlement Administrator. The Claim Deadline shall fall on the date that is ninety (90) days after the Notice Date, or later if otherwise ordered by the Court.

7.     "Claim Form" means the form to be made available to Settlement Class Members with Inactive Lifetime Subscriptions, substantially in the form of **Exhibit A** hereto, which may be modified in form to meet the requirements of the Settlement Administrator, pursuant to which those Settlement Class Members can select their form of compensation as described in Paragraphs 66(b) and 67(a) below.

8.     "Claimant" means an Eligible Claimant who complies with the claims submission requirements set forth in Paragraph 67 below, including the requirements of timely and complete submission.

9.     "Class Counsel" means collectively (i) Robert Ahdoot and Tina Wolfson of Ahdoot & Wolfson, PC, (ii) Keith S. Dubanevich of Stoll Stoll Berne Lokting & Shlachter, PC, and (iii) Cornelius P. Dukelow of Abington Cole & Ellery.

10.     "Class Notice" means collectively the Long Form Notice and the Summary Notice, attached hereto as **Exhibit B** and **Exhibit C**, respectively, along with the internet banner advertisements to be prepared by the Settlement Administrator in a manner consistent with the Long Form Notice as provided in Paragraph 43 below.

11.     "Counsel for Defendant" means Jones Day.

12.     "Court" means the United States District Court for the Central District of California, or any subsequent court, where the Action is proceeding.

13.     "Device" means any radio that is capable of receiving Sirius XM's satellite delivered radio service.

- 7 –

14.    "Effective Date" means the date on which the Final Approval Order and Judgment becomes "Final," which shall be upon the occurrence of all of the following:

(a)    The Settlement is approved by the Court as required by Rule 23 of the Federal Rules of Civil Procedure;

(b)    The Court enters the Final Approval Order and Judgment; and

(c)    If appellate review is not sought from the Final Approval Order and Judgment, the expiration of the time for the filing or noticing of any appeal; or (b) if an appeal is taken or if the Final Approval Order and Judgment are the subject of a further petition, the date on which either such appeal or petition shall have been dismissed prior to resolution by, or the Final Approval Order and Judgment shall have been affirmed in its entirety by, the Court of last resort to which such appeal has been taken or petition submitted and such affirmance has become no longer subject to further appeal or review; provided that a modification or reversal on appeal or review of the Fee and Expense Award and/or the Service Payments awarded by the Court shall not prevent the Settlement from becoming final if all other aspects of the Final Approval Order and Judgment have been affirmed; and provided further that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining when the Final Approval Order and Judgment becomes final.

15.    "Eligible Claimant" means a Settlement Class Member with an Inactive Lifetime Subscription.

16.    "Fee and Expense Award" means such funds as may be approved and awarded by the Court to Class Counsel and/or Named Plaintiffs' Counsel to compensate them for conferring the benefits upon the Settlement Class Members under this Agreement and for their professional time, fees, costs, advances, and expenses incurred in connection with the Action and the Settlement; provided that Sirius XM shall not be required to pay, and is not otherwise responsible for, any Fee and Expense Award to the extent that it exceeds $3,500,000 as set forth in Paragraph 76 below.

- 8 –

SETTLEMENT AGREEMENT AND RELEASE

17.   "Final Approval Hearing" means the hearing at or after which the Court will determine whether to finally approve the Settlement as fair, reasonable, and adequate under Fed. R. Civ. P. 23(e).

18.   "Final Approval Order and Judgment" means the proposed final order and final judgment, fully and finally approving the Settlement and dismissing the Action with prejudice, to be submitted to the Court in connection with the Final Approval Hearing, and thereafter entered by the Court, the proposed form of which is attached hereto as **Exhibit D**.

19.   "Inactive Lifetime Subscription" means a Lifetime Subscription that, according to Sirius XM's records, as of June 5, 2020, is no longer associated with a Device that was activated to receive Sirius XM's satellite delivered radio service. A Settlement Class Member who previously had a Lifetime Subscription, but whose Lifetime Subscription was converted to a yearly, monthly, or some other subscription on a Device that is receiving service, shall be deemed to have an Inactive Lifetime Subscription for purposes of this Settlement Agreement.

20.   "Lifetime Subscription(s)" means a subscription that was marketed and sold to Settlement Class Members as a "lifetime subscription" or a "lifetime plan," and that has not been sold, assigned or otherwise transferred by law or otherwise by such Settlement Class Member. Lifetime Subscriptions are not transferable from one person to another.

21.   "Long Form Notice" means the notice of this Settlement substantially in the form attached as **Exhibit B**.

22.   "Named Plaintiffs" are Philip Alvarez, Randall Bettison, Marc Kelleher, and Darlene Vaugh.

23.   "Notice Date" means the date upon which Class Notice shall commence. Class Notice shall commence no later than forty-five (45) days after the entry of the Preliminary Approval Order.

- 9 –

24.    "Notice Plan" means the method and process of disseminating the Class Notice as described in Paragraphs 50 to 55 below and in the Declaration of the Settlement Administrator attached as **Exhibit E**.

25.    "Opt-Out and Objection Deadline" means the date that is forty-five (45) days after the Notice Date or later if otherwise ordered by the Court, by which a Person in the Settlement Class must opt out of the Settlement or make any objection to the proposed Settlement, the Fee Application, and/or the Service Payment Application, in accordance with the procedures set forth herein and/or in any order of the Court.

26.    "Parties" means, collectively, Defendant Sirius XM, Named Plaintiffs, and Paul Wright.

27.    "Person" means an individual.

28.    "Preliminary Approval Hearing" means the hearing at or after which the Court will determine whether it will likely be able to approve the proposed Settlement under Rule 23(e)(2) of the Federal Rules of Civil Procedure and thus at or after which the Court will direct notice to the proposed Settlement Class under Rule 23(e)(1) of the Federal Rules of Civil Procedure.

29.    "Preliminary Approval Order" means the order to be submitted to and thereafter entered by the Court in connection with the Preliminary Approval Hearing, the proposed form of which is attached hereto as **Exhibit F**.

30.    "Release," "Released Claims," "Releasing Parties" and "Released Parties" are defined in Paragraph 83 below.

31.    "Service Payment(s)" means such funds as may be awarded by the Court to the Named Plaintiffs and Paul Wright in recognition of their time, effort, and service to the Settlement Class, expended in pursuing the Action or in otherwise fulfilling their obligations and responsibilities as the Settlement Class representatives; provided, however, that Sirius XM shall not be required to pay, and is not otherwise responsible for, any Service Payment to the extent that it exceeds $5,000 per Named Plaintiff and Paul Wright, as set forth in Paragraph 75 below.

SETTLEMENT AGREEMENT AND RELEASE

32.     "Settlement Administrator" means Epiq Class Actions & Claim Solutions, Inc., subject to the Court's approval.

33.     "Settlement Class" means all Persons in the United States who purchased a paid subscription from Sirius XM (or one of its predecessors) that was marketed as a "lifetime plan" or "lifetime subscription." Excluded from the Class are: Sirius XM and its parents, subsidiaries, or any entities in which it has a controlling interest, as well as Sirius XM's officers, directors, employees, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded are any Judges to whom this case is assigned as well as their judicial staff and immediate family members.

34.     "Settlement Class Member" means a Person who is included in the definition of the Settlement Class and is not a Successful Opt-Out.

35.     "Settlement Website" means the website to be prepared by the Settlement Administrator in connection with the process of providing Class Notice to Settlement Class Members. The Settlement Website will use the internet URL www.LifeTimeSiriusXMSettlement.com.

36.     "Sirius XM" or "Defendant" means Sirius XM Radio Inc.

37.     "Successful Opt-Out" means any Person(s) who timely and validly exercise their right to opt out of the Settlement Class, pursuant and subject to Paragraph 59.

38.     "Summary Notice" means the notice of this Settlement substantially in the form attached as **Exhibit C**.

39.     "Transfer Internet Page" means Sirius XM's existing online account management Internet site, at which Settlement Class Members will be able to create credentials (or utilize existing credentials) to transfer a Lifetime Subscription from one Device to another pursuant to the terms and conditions of this Settlement Agreement.

- 11 –

SETTLEMENT AGREEMENT AND RELEASE

### III.    SETTLEMENT PROCEDURES

**A.    Named Plaintiffs, Class Counsel, Settlement Class, CAFA Notice, and Settlement Administration**

40.    For purposes of settlement only, the Parties stipulate and agree to the certification of the Settlement Class, subject to the Court's approval and upon the entry of the Final Approval Order and Judgment. Sirius XM shall not object to or otherwise oppose the certification of the Settlement Class. The Parties also stipulate and agree that the Named Plaintiffs shall be appointed to represent the Settlement Class and that Class Counsel shall be appointed to represent the Settlement Class.

41.    The Settlement Administrator, at Sirius XM's direction, shall timely provide notice of the Settlement to appropriate state and federal officials pursuant to 28 U.S.C. §1715 ("CAFA"), and no Party shall request that an order giving final approval of the Settlement be issued prior to the expiration of the time set forth in 28 U.S.C. §1715(d). All costs and expenses related to Sirius XM's compliance with CAFA shall be considered Administration Expenses.

42.    The Parties and the Settlement Administrator shall keep the Settlement Class Member List confidential and not use it for any purpose, other than to effectuate the terms of this Settlement Agreement.

43.    The Settlement Administrator shall be responsible for administrative tasks, which shall include, without limitation, (a) arranging for distribution of the Class Notice and Claim Form to Settlement Class Members; (b) making any mailings to Settlement Class Members required under this Settlement Agreement; (c) forwarding written inquiries from Settlement Class Members to Class Counsel or their designee; (d) establishing and maintaining the Settlement Website, and any internet banner advertisements, subject to review and approval by the Parties; (e) distributing cash payments to Settlement Class Members with Inactive Lifetime Subscriptions, to the extent that such Settlement Class Members submit timely, valid and correct Claim Forms as provided in Paragraph 67 below; and (f) assisting with implementing and administering

- 12 –

SETTLEMENT AGREEMENT AND RELEASE

this Settlement Agreement as provided herein or otherwise in a manner approved by Class Counsel and Counsel for Defendant. Class Counsel and Counsel for Defendant may, by agreement, substitute a different entity as Settlement Administrator, subject to approval by the Court if the Court has entered any order pursuant to Rules 23(e)(1) or (2) of the Federal Rules of Civil Procedure. In the absence of a written agreement, either Class Counsel or Sirius XM may move the Court to substitute a different entity as Settlement Administrator on a showing of good cause.

44.     The Settlement Administrator shall respond promptly to all inquiries from Settlement Class Members with respect to this Settlement Agreement and the Settlement, except to the extent that inquiries are directed to Class Counsel. Prior to the Notice Date, the Settlement Administrator shall establish a toll-free telephone number, which will be staffed by the Settlement Administrator, to assist in answering questions from Settlement Class Members. The toll-free number shall provide a voice response unit with message and interactive voice response (IVR) capabilities. Any scripts, FAQs or other materials for such purpose shall be made available for review and comment by Counsel for Defendant and Class Counsel prior to their use. Class Counsel and Sirius XM shall confer and assist the Settlement Administrator as it reasonably requests.

45.     All Administration Expenses shall be paid by Sirius XM as provided in this Paragraph. Within ten (10) days after entry of the Preliminary Approval Order, Sirius XM shall pay the sum of $75,000 to the Settlement Administrator as an initial payment of Administration Expenses. Thereafter, the Settlement Administrator shall periodically invoice Sirius XM for incurred (but unpaid) Administration Expenses and provide a copy of said invoice to Class Counsel. The Settlement Administrator shall complete and provide to Sirius XM any W-9 forms or other government forms necessary for Sirius XM to pay for the Administration Expenses, and Sirius XM shall have no obligation to pay for any Administration Expenses prior to receipt of such signed forms. Sirius XM shall not be required to compute, estimate, or pay any taxes on behalf of any of the Named

SETTLEMENT AGREEMENT AND RELEASE

Plaintiffs, Paul Wright, or any other Settlement Class Member, Class Counsel or the Settlement Administrator.

46. The Settlement Administrator shall make all reasonable efforts to administer the Settlement efficiently and to minimize and avoid unnecessary Administration Expenses. The Settlement Administrator shall provide a detailed written accounting of all Administration Expenses on a regular basis to Sirius XM, Class Counsel and Counsel for Defendant and shall respond promptly to inquiries by any of them concerning the Administration Expenses.

**B. Preliminary Approval**

47. Following the execution of this Settlement Agreement, Class Counsel shall promptly move the Court for entry of the Preliminary Approval Order (substantially in the form of **Exhibit F** hereto), for the purposes of, among other things: (a) finding that the Court will likely be able to approve the settlement memorialized in this Settlement Agreement such that notice to the Settlement Class should be provided pursuant to this Settlement Agreement; (b) setting a date for a Final Approval Hearing; (c) approving the proposed individual and publication notices substantially in the form attached hereto as **Exhibits B and C**; (d) providing that Settlement Class Members with Inactive Lifetime Subscriptions shall have until the Claim Deadline to submit valid and completed Claim Forms; (e) providing that any objections by any Settlement Class Member to the proposed settlement contained in this Agreement, and/or the entry of the Final Approval Order and Judgment, shall be heard and any papers submitted in support of said objections shall be considered by the Court at the Final Approval Hearing only if, on or before the date(s) specified in the Preliminary Approval Order, such objector submits to the Court a written objection and otherwise complies with the requirements in Paragraph 60 below; (f) establishing dates by which Class Counsel shall file and serve all papers in support of the application for final approval of the Settlement and by which the Parties shall file and serve all papers in response to any valid and timely objections and by which Class Counsel shall file their motion for fees and expenses as provided in Paragraph 76 below;

SETTLEMENT AGREEMENT AND RELEASE

(g) providing that all Settlement Class Members will be bound by the Final Approval Order and Judgment; (h) providing that Persons in the Settlement Class wishing to exclude themselves from the Settlement will have until the date specified in the Preliminary Approval Order to submit to the Settlement Administrator a valid written request for exclusion or opt out; (i) providing a procedure for Persons in the Settlement Class to request exclusion or opt out from the Settlement; (j) setting deadlines consistent with this Agreement for mailing of notice to the Settlement Class, opting out of or objecting to the Settlement, and filing papers in connection with the Final Approval Hearing; (k) appointing Named Plaintiffs as Settlement Class representatives and Class Counsel as counsel for the Settlement Class; and (l) approving the appointment of the Settlement Administrator. For purposes of settlement only, Sirius XM will not oppose the motion for preliminary approval or the Preliminary Approval Order. Plaintiffs shall provide a draft of the motion for preliminary approval of the Settlement to Counsel for Defendant within at least five (5) days prior to the filing deadline of such motion. Plaintiffs shall have no obligation to incorporate any comments made by Counsel for Defendant or by Sirius XM. Plaintiffs shall retain all rights to amend such draft and shall have the option to amend such draft, in any form or manner, in their sole and absolute discretion.

48.    The text of all forms of the individual notice shall be agreed upon by Named Plaintiffs and Sirius XM's counsel, subject to the terms and conditions of this Agreement.

**C.    Class Notice**

49.    Following the entry of the Preliminary Approval Order, the Settlement Administrator shall provide timely Class Notice in the manner and form approved and directed by the Court.

50.    *Settlement Class Member List:*  Sirius XM shall provide the following to the Settlement Administrator in electronic form: a list of all Persons that, according to Sirius XM's records, fall within the definition of the Settlement Class, which list shall include (to the extent reasonably available in Sirius XM's records) each such Person's (i) email,

- 15 –

SETTLEMENT AGREEMENT AND RELEASE

(ii) phone number, (iii) physical mailing address, (iv) a unique party identification number associated with each such Person, where possible to do so, to assist the Settlement Administrator in determining, the number of Active Lifetime Subscriptions and/or Inactive Lifetime Subscription(s) held by each Settlement Class Member as of the date of this Settlement Agreement, and (iv) any corresponding Sirius XM account number associated with an Active Lifetime Subscription or an Inactive Lifetime Subscription for such Person (collectively, the "Settlement Class Member List"). Sirius XM shall provide the Settlement Class Member List to the Settlement Administrator upon or as soon as practicable following the entry of the Preliminary Approval Order, but in no event later than fourteen (14) days after the entry of the Preliminary Approval Order. The Settlement Administrator shall perform any further investigations deemed appropriate by the Settlement Administrator, including using the National Change of Address ("NCOA") database maintained by the United States Postal Service, in an attempt to identify current mailing addresses for individuals or entities whose names are provided by Sirius XM.

51.     *Settlement Website*: Prior to the Notice Date, the Settlement Administrator shall establish the Settlement Website which will contain the Long Form Notice and inform Settlement Class Members of relevant dates and deadlines and related information. The Settlement Website shall include, in .pdf downloadable format, the following: (i) the Long Form Notice; (ii) the Claim Form; (iii) the Preliminary Approval Order; (iii) this Agreement (including all of its Exhibits), (iv) the Consolidated Complaint filed in the Action; and (v) any other materials agreed upon in writing by the Parties and/or required by the Court. To the extent reasonably possible based on the best available records provided by Sirius XM, the Settlement Website shall provide Settlement Class Members with Inactive Lifetime Subscriptions the ability to submit a Claim Form electronically. To the extent reasonably possible, the Settlement Website shall also provide Settlement Class Members with the ability to determine the number of Lifetime Subscription accounts they hold and whether any such account is an Inactive

Lifetime Subscription or an Active Lifetime Subscription as of the date of this Settlement Agreement.

52.     *Direct Notice to Settlement Class Members*: Within forty-five (45) days after the entry of the Preliminary Approval Order and to be substantially completed not later than sixty (60) days after entry of the Preliminary Approval Order, or at such other time as may be ordered by the Court, the Settlement Administrator shall commence distribution of individual notice to Person(s) believed to be included in the definition of the Settlement Class as follows:

(a)     For any such Person for whom an email address is available, the Settlement Administrator shall email the Summary Notice;

(b)     For any such Person for whom an email address is not available, and to the extent that a physical address is available, the Settlement Administrator will send the Summary Notice by U.S. mail, postage prepaid;

(c)     If any notice that has been emailed is returned as undeliverable, the Settlement Administrator shall attempt two other email executions and then attempt post mail service, to the extent a current mailing address is available;

(d)     If any notice that has been post mailed is returned by the Postal Service as undeliverable, the Settlement Administrator shall re-mail the notice to the forwarding address, if any, provided by the Postal Service on the face of the returned mail;

(e)     Neither the Parties nor the Settlement Administrator shall have any other obligation to re-mail individual notices that have been post mailed as provided in this Paragraph.

53.     *Internet Notice*:   Within forty-five (45) days following entry of the Preliminary Approval Order, or at such other time as may be ordered by the Court, the

SETTLEMENT AGREEMENT AND RELEASE

Settlement Administrator shall cause to be published the agreed-upon Internet Notice in various publications and media outlets.

54.   *Reminder Emails*:  Ten (10) days prior to the Claim Deadline, the Settlement Administrator will email a reminder notice to all Persons with Inactive Lifetime Subscriptions, who have a valid email address and have not submitted a Claim Form as of that date. The reminder email shall remind such Persons that should they wish to submit a Claim Form they must do so by the Claim Deadline.

55.   The Settlement Administrator shall have discretion to format the Class Notice in a reasonable manner to minimize mailing costs. Before any notice is commenced, Class Counsel and Counsel for Defendant shall first be provided with a final copy of such notices (including what the items will look like in their final form), and shall have the right to inspect the same for compliance with this Agreement and with the Court's orders.

56.   No later than fourteen (14) days prior to the Final Approval Hearing, the Settlement Administrator will file with the Court a declaration under penalty of perjury describing the establishment and completion of the Notice Plan.

57.   No later than fourteen (14) days prior to the Final Approval Hearing, the Settlement Administrator shall provide to the Parties, and file with the Court a declaration under penalty of perjury which provides, a list identifying all Successful Opt-outs.

58.   The Settlement Administrator shall terminate the Settlement Website ninety (90) days after either (1) the Effective Date, or (2) the date on which the Settlement is terminated or otherwise not approved by the Court. The Settlement Administrator shall then transfer ownership of the URL of the Settlement Website to Sirius XM.

59.   **Opt-Out Rights**.

(a)   Each Person who is included in the definition of the Settlement Class shall have the right to opt-out and not participate in the Settlement, as provided for in the Preliminary Approval Order.

- 18 –

SETTLEMENT AGREEMENT AND RELEASE

(b)     The Summary Notice and Long Form Notice shall inform each such Person of his or her right to request exclusion from the Settlement Class and not to be bound by this Agreement, if, prior to the Opt-Out and Objection Deadline such Person personally completes and mails a request for exclusion ("Opt-Out") that is then actually received by the Settlement Administrator, on or before the Opt-Out and Objection Deadline, at the address set forth in such notices that (i) states his or her full name and address; (ii) contains his or her personal and original signature or the original signature of a Person previously authorized by law, such as a trustee, guardian or Person acting under a power of attorney, to act on behalf of such Person with respect to a claim or right such as those in the Cases; and (iii) states in plain English and unequivocally the Person's intent to be excluded from the Settlement Class, to be excluded from the Settlement, not to participate in the Settlement, and to waive all rights to the benefits of the Settlement. The Settlement Administrator shall promptly inform Counsel for Defendant and Class Counsel in writing of any Successful Opt-Outs.

(c)     Any Person who is included in the definition of the Settlement Class who opts out in a timely and valid manner shall receive no benefit or compensation under this Agreement, shall have no right to object to the Settlement and shall not be subject to the Release contained herein.

(d)     A request for exclusion that does not comply with all of the foregoing, and is not actually received by the Settlement Administrator on or before the Opt-Out and Objection Deadline, as determined by the Settlement Administrator, shall be invalid and the Person serving such request shall remain a Settlement Class Member and be bound by this Agreement and the Release contained herein.

(e)     No Person shall purport to exercise any exclusion rights of any other Person, or purport (i) to opt-out Settlement Class Members as a group, aggregate, or class involving more than one Settlement Class Member; or (ii) to opt-out more than one Settlement Class Member on a single paper, or as an agent or representative of another Person (except to the extent authorized by law). Any such purported opt-outs shall be

SETTLEMENT AGREEMENT AND RELEASE

void, and the Settlement Class Member(s) that is or are the subject of such purported opt-out shall be treated as Settlement Class Member(s) who have not opted out.

60.  **Objections to the Settlement**.

(a)     Any Person who is included in the definition of the Settlement Class who is not a Successful Opt-Out and who wishes to object to the proposed Settlement must, on or before the Opt-Out and Objection Deadline, mail or hand-deliver written objections to the Settlement ("Objections") to Class Counsel and Counsel for Defendant, at the addresses set forth in the individual or publication notices, and file, mail or hand-deliver the Objections simultaneously to the Court. Settlement Class Members may personally object or object through an attorney retained at their own expense; however, each individual Settlement Class Member objecting to the Settlement, in whole or part, shall personally sign the Objection.

(b)     Each Objection must (i) set forth the objector's full name, current address, email address and telephone number, as well as the name, address, email address and telephone number of all attorneys representing the objector; (ii) identify the Lifetime Subscription purchased, including the month and year of the purchase, that brings him or her within the scope of the Settlement Class; (iii) contain the Person's original signature and the signature of counsel for such Person, if any; (iv) state that the Person objects to the Settlement, in whole or in part; (v) set forth a statement of the legal and factual basis for the Objection; (vi) include a list of all cases, by name and case number, in which the objector and/or his or her counsel has filed or in any way participated financially or otherwise in objecting to a class action settlement in the previous five (5) years; and (vii) provide copies of any documents that such Person wishes to submit in support of his or her position. The Objection must also state whether the objection applies only to the objector, to a specific subset of the Class, or to the entire Class.

(c)     Any Settlement Class Member who submits a written and timely Objection, pursuant to the requirements set forth herein, may appear at the Final Approval

Hearing, either in person or through personal counsel hired at the Settlement Class Member's own expense.

(d)      An objector is not required to attend the Final Approval Hearing.

(e)      Any Person who is included in the definition of the Settlement Class who does not provide a timely (on or before the Opt-Out and Objection Deadline) and written objection shall be deemed to have waived any objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the Settlement, any application for attorneys' fees and expenses, and any Service Payments.

**D.    Final Approval**

61.   If the Court preliminarily approves the Settlement, Named Plaintiffs shall submit a motion for final approval of the Settlement, including a memorandum in support of the motion, and shall seek entry of the Final Approval Order and Judgment in the Action substantially in the form attached hereto as **Exhibit D**, within at least fourteen (14) days prior to the Final Approval Hearing. Plaintiffs shall provide a draft of the motion for final approval of the Settlement to Counsel for Defendant within at least five (5) days prior to the filing deadline of such motion. Plaintiffs shall have no obligation to incorporate any comments made by Counsel for Defendant or by Sirius XM. Plaintiffs shall retain all rights to amend such draft and shall have the option to amend such draft, in any form or manner, in their sole and absolute discretion.

62.   Such Final Approval Order and Judgment shall specifically include provisions that: (a) the Court has personal jurisdiction over all Settlement Class Members, the Court has subject matter jurisdiction over the claims asserted in the Action, and that venue is proper; (b) certify the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure; (c) approve the Settlement pursuant to Rule 23 of the Federal Rules of Procedure; (d) find that the Class Notice as distributed was the best notice practicable under the circumstances and fully satisfied the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure; (e) approve the method for Settlement Class Members with Active Lifetime Subscriptions, as well as Settlement Class Members with

- 21 –

Inactive Lifetime Subscriptions who choose the reactivation option, to transfer their subscriptions in the future as provided in Paragraph 66 below; (f) approve the terms of distribution of cash to Settlement Class Members with Inactive Lifetime Subscriptions who have elected that option as provided in Paragraph 66(b)(ii) below and authorize the Parties to implement the terms of the Settlement; (g) confirm that Named Plaintiffs and the Settlement Class Members have released all Released Claims and are permanently barred and enjoined from asserting, commencing, prosecuting, or continuing any of the Released Claims against the Released Parties; (h) retain jurisdiction relating to the administration, consummation, validity, enforcement, and interpretation of this Agreement, the Final Approval Order and Judgment, any final order approving the Fee and Expense Award and Service Payments, and for any other necessary purpose; and (i) enter a judgment that dismisses the action with prejudice, without costs to any Party, except as provided in the Agreement, and subject to the Court's continuing jurisdiction over the Parties for the purpose of enforcement of the terms of this Agreement.

63. The Parties shall recommend that the Final Approval Hearing be scheduled for a date that is not earlier than ninety (90) days after notice pursuant to CAFA is served, and, to the extent practicable consistent with the Court's schedule, no later than one hundred and fifteen (115) days after the entry of the Preliminary Approval Order.

64. Any Settlement Class Member who wishes to appear at the Final Approval Hearing, whether *pro se* or through counsel, must, within the time set by the Court, (a) mail or hand-deliver to the Court a notice of appearance in the Action; (b) provide copies of any exhibits or other documents that the Settlement Class Member intends to present or use as evidence at the hearing; (c) provide a list of all witnesses that the Settlement Class Member intends to call to give evidence at the hearing; (d) take all other actions or make any additional submissions as may be ordered by the Court; and (e) mail or hand-deliver any notice and any such exhibits, lists or other documents to Class Counsel and Counsel for Defendant as provided in the individual or publication notices such that receipt of same by Class Counsel and Counsel for Defendant has occurred no later than

fourteen (14) days prior to the Final Approval Hearing. However, subject to the Court's approval, any Settlement Class Member may appear at the Final Approval Hearing and request to address the Court. Unless expressly permitted by the Federal Rules of Civil Procedure or the Court's local rules, no Settlement Class Member shall be permitted to raise matters at the Final Approval Hearing that the Settlement Class Member could have raised in an Objection, but failed to do, unless otherwise permitted by the Court. Any Settlement Class Member who fails to comply with this Agreement, the individual notice, and any other order by the Court shall be barred from appearing at the Final Approval Hearing, unless otherwise permitted by the Court.

65.     At the Final Approval Hearing, Named Plaintiffs and Class Counsel shall make a good faith effort to present sufficient evidence to support the entry of the Final Approval Order and Judgment, and shall present such evidence as they deem appropriate to support any award of attorneys' fees and expenses.

**IV.   SETTLEMENT CONSIDERATION**

66.     In full and final settlement of the claims of the Settlement Class, and in consideration for the release of the Released Claims, Sirius XM agrees to each of the following:

(a)     Any Settlement Class Member who purchased a Lifetime Subscription that is an Active Lifetime Subscription, shall be entitled, as of the Effective Date and for each such Active Lifetime Subscription registered in the Settlement Class Member's name on the records of Sirius XM as of June 5, 2020, to transfer that Lifetime Subscription to another Device an unlimited number of times. In order to effect any such transfer, the Settlement Class Member shall be required to (1) pay a thirty-five-dollar ($35.00) transfer fee to Sirius XM for each such transfer; and (2) effect the transfer solely online on the Transfer Internet Page.

(b)     Any Settlement Class Member who purchased a Lifetime Subscription that is an Inactive Lifetime Subscription shall be entitled, as of the Effective

Date and for each such Inactive Lifetime Subscription registered in the Settlement Class Member's name on the records of Sirius XM as of June 5, 2020, to either of the following:

(i)      Receive, as of the Effective Date, a reactivation of that Lifetime Subscription (at no charge) on a Device that is not currently receiving Sirius XM's satellite radio service (either pursuant to a paid or trial subscription to satellite radio and / or data services). Such Device shall be reactivated on the schedule set forth in Paragraph 67(f) below. A Settlement Class Member that reactivates his or her Lifetime Subscription as provided in this Agreement shall then be entitled to transfer that lifetime subscription to another Device an unlimited number of times, subject to the transfer requirements of Paragraph 66(a) above. A Settlement Class Member who is deemed to have an Inactive Lifetime Subscription by virtue of the last sentence in Paragraph 18 above and who chooses to reactivate his or her subscription as provided in this Paragraph 66(b)(i) may at the same time elect to have another subscription cancelled. In such a case, Sirius XM shall cancel that other subscription upon request and without any charge regardless of any then-existing agreement covering that other subscription and provide a pro-rata refund of any amounts paid for future service (except to the extent the subscription included bundled equipment, in which case the cancellation will be subject to the terms of that other agreement); or

(ii)     Receive one hundred dollars and no cents ($100.00) per Inactive Lifetime Subscription registered in the Settlement Class Member's name on the records of Sirius XM as of June 5, 2020, on the schedule set forth in Paragraph 71 below. A Settlement Class Member with an Inactive Lifetime Subscription that selects this option shall relinquish all of the Settlement Class Member's rights with respect to that Lifetime Subscription.

(c)      Following the Effective Date, in addition to the benefits set forth in Paragraphs 66(a) and 66(b) herein, Sirius XM shall make Internet streaming access available to Inactive Lifetime Subscribers who choose to reactivate their Lifetime Subscription (pursuant to the terms and conditions herein) for no additional fee to Sirius

XM by such Inactive Lifetime Subscribers. The streaming access shall be made available on terms that are consistent with the capabilities, limitations and terms of the streaming access that Sirius XM provides as of the Effective Date to its other satellite radio subscribers that are offered such streaming access with their subscriptions.

(d)     Sirius XM shall make a Transfer Internet Page accessible to Settlement Class Members by the Effective Date. Following the Effective Date, in the event any Settlement Class Member requests instruction as to how to effectuate a transfer of a Lifetime Subscription from one Device to another, Sirius XM shall provide that Settlement Class Member with the URL address of the Transfer Internet Page. As of the date hereof, the Transfer Internet Page URL address is "care.siriusxm.com." This address will be disclosed in the Summary Notice and the Long Form Notice. Such URL address shall continue to direct Settlement Class Members to the Transfer Internet Page unless a new URL address for the Transfer Internet Page is first published in its Customer Agreement or the new URL address for the Transfer Internet Page is clearly listed on the home page URL of Sirius XM.

(e)     On or prior to the Effective Date, Sirius XM shall amend its Customer Agreement to reflect that a Settlement Class Member with a Lifetime Subscription shall be entitled to transfer that Lifetime Subscription to another Device an unlimited number of times, subject to the following: (1) the Settlement Class Member must pay a thirty-five dollar ($35.00) transfer fee to Sirius XM for each such transfer; and (2) the Settlement Class Member must effect the transfer solely online at the Transfer Internet Page. The Customer Agreement, as so amended, shall be binding on all Settlement Class Members.

(f)     Sirius XM shall not charge any fee for any transfer of a Lifetime Subscription that exceeds thirty-five dollars and no cents ($35.00) per transfer, and any applicable Federal, state or local taxes. Settlement Class Members will be able to pay the thirty-five-dollar ($35.00) transfer fees set forth herein on the Transfer Internet Page.

SETTLEMENT AGREEMENT AND RELEASE

(g)   Sirius XM shall pay any and all Administration Expenses, Service Payments to the Named Plaintiffs, and the Fee and Expense Award to Class Counsel as provided in Paragraphs 45, 75 and 76 of this Agreement.

(h)   Sirius XM shall pay any and all of the internal costs and expenses incurred by Sirius XM in carrying out the terms of the Settlement, including preparing the Settlement Class Member List and fulfilling any of Sirius XM's obligations herein.

(i)   The rights set forth in this Settlement Agreement, including the rights in any Lifetime Subscription and the rights to receive the consideration contained in this Paragraph, are personal to each Settlement Class Member and shall not be sold, assigned or otherwise transferred by law or otherwise to any other Person. Any purported sale, assignment or other alleged transfer of a Lifetime Subscription or the rights set forth in this Settlement Agreement, including the rights to receive the consideration contained in this Paragraph, shall be void and of no force and effect.

67.   **Procedure For Settlement Class Members With Inactive Lifetime Subscriptions.**

(a)   A Settlement Class Member with an Inactive Lifetime Subscription registered in the Settlement Class Member's name on the records of Sirius XM as of June 5, 2020 who submits a valid and timely Claim Form must elect either: (1) the reactivation option (set forth in Paragraph 66(b)(i) above), or (2) the cash option (set forth in Paragraph 66(b)(ii) above). The Claim Form must be received by the Settlement Administrator prior to the Claim Deadline.

(b)   The Claim Form shall be available for download through the Settlement Website. The Claim Form shall require the following information: first and last name, current mailing address (including apartment number, city, state and zip code), current telephone number, and election of the reactivation option or the cash option. For Settlement Class Members who elect the reactivation option, the Settlement Website shall also provide instructions for such Settlement Class Member to enter the radio identification number of a Device on which the Lifetime Subscription may be reactivated.

SETTLEMENT AGREEMENT AND RELEASE

A Settlement Class Member with an Inactive Lifetime Subscription may thereafter visit the Settlement Website for purposes of confirming and/or updating his or her contact information.

(c)   No later than fifteen (15) days following the Claim Deadline, the Settlement Administrator shall provide Sirius XM and Class Counsel with a list of all Claimants who are not on the Settlement Class Member List. No later than fifteen (15) days following receipt of such information, Sirius XM shall advise the Settlement Administrator and Class Counsel whether according to records maintained by Sirius XM such Persons have ever had a Lifetime Subscription and whether that Lifetime Subscription is Inactive.

(d)   To the extent that Claimants are not on the Settlement Class Member List and did not have an Inactive Lifetime Subscription according to records maintained by Sirius XM ("Unverified Claimants"), the Settlement Administrator shall require proof acceptable to the Settlement Administrator, Sirius XM and Class Counsel that such Persons are Settlement Class Members, using a review process approved by the Parties and including evidence of purchase or other proof reasonably indicating the purchase by the Claimant of a Lifetime Subscription. The Settlement Administrator shall disallow any Unverified Claimant's claim that is not supported by such reasonable proof using the review process described above and shall complete the review process no later than fourteen (14) days prior to the Final Approval Hearing.

(e)   The Settlement Administrator shall mail checks to the Settlement Class Members electing the cash option as provided in Paragraph 71 below.

(f)   Sirius XM shall reactivate Lifetime Subscriptions on the Devices identified by Settlement Class Members electing the reactivation option within thirty (30) days after the Effective Date. Settlement Class Members may need to request a refresh signal from Sirius XM to fully enable the Devices to receive the Lifetime Subscription, and Sirius XM shall send an email to Settlement Class Members electing the reactivation

option who supplied a valid email address instructing them how to request such refresh signal.

68. **Settlement Class Members with Active Lifetime Subscriptions Whose Subscriptions Become Inactive Lifetime Subscriptions Prior to the Effective Date.**

(a)     An Active Lifetime Subscription that becomes an Inactive Lifetime Subscription prior to the Effective Date is referred to herein as a "Post Settlement Inactive Subscription."

(b)     A Settlement Class Member who has one or more Post Settlement Inactive Subscription(s) shall be eligible for the same benefits that are available to Settlement Class Members who have Active Lifetime Subscriptions for each such Post Settlement Inactive Subscription. At any time after the Effective Date, Settlement Class Members with Post Settlement Inactive Subscriptions may visit the Transfer Internet Page and follow the instructions for that Settlement Class Member to enter the radio identification number of the Device on which the lifetime subscription shall be reactivated. At such a time, the Settlement Class Member with the Post Settlement Inactive Subscription shall be subject to a thirty-five-dollar ($35.00) reactivation fee payable to Sirius XM on the Transfer Internet Page.

69. A Settlement Class Member who has purchased more than one Lifetime Subscription shall be entitled to participate in the Settlement consideration set forth in Paragraphs 66 to 68 above for each of that Settlement Class Member's Lifetime Subscriptions. To the extent that a Settlement Class Member has one or more Active Lifetime Subscriptions and one or more Inactive Lifetime Subscriptions or Post Settlement Inactive Subscriptions, such Settlement Class Member may participate in the Settlement consideration available for Active Lifetime Subscriptions, Inactive Lifetime Subscriptions, and Post Settlement Inactive Subscriptions, to the extent permitted by this Agreement, separately in the case of each such subscription.

70.     Sirius XM shall, within thirty (30) days after the Effective Date, pay to the Settlement Administrator the amount required by the Settlement Administrator for distribution of cash payments to Settlement Class Members with Inactive Lifetime Subscriptions who have chosen to receive cash and who have submitted timely, valid and correct Claim Forms, as provided in Paragraph 67 above. The Settlement Administrator shall notify Sirius XM's counsel in writing no later than five (5) days after the Effective Date of the required amount for distribution of cash payments to such Settlement Class Members. The Settlement Administrator shall place the amount paid by Sirius XM in a non-interest bearing checking account from which checks shall be drawn to pay Inactive Lifetime Subscriptions who have timely, validly and correctly selected the cash option. Sirius XM shall be responsible for paying such amounts to the Settlement Administrator only to the extent necessary to pay valid claims – as determined by the Parties and the Settlement Administrator – actually made by Settlement Class Members with Inactive Lifetime Subscriptions.

71.     Within sixty (60) days after the Effective Date, the Settlement Administrator shall send, by first-class mail, a check in the amount of one hundred dollars and no cents ($100.00) to each Claimant who elected to receive cash, as provided in Paragraph 66(b)(ii) above and who has submitted a timely, valid and correct Claim Form. Except as provided in this Paragraph, Sirius XM shall have no obligation to make any other or further payments to any Settlement Class Member.

72.     The Settlement Administrator shall utilize current U.S.P.S. software and/or the NCOA database searches to update the Settlement Class Members' address records prior to the mailing of any check. In the event a check is returned to the Settlement Administrator by the United States Postal Service because the address of the recipient is no longer valid, i.e., the envelope is marked "Return to Sender" and does not contain a new forwarding address, the Settlement Administrator shall perform a standard skip trace, in the manner that the Settlement Administrator customarily performs skip traces, in an effort to attempt to ascertain the current address of the particular Settlement Class

Member in question and, if such an address is ascertained, the Settlement Administrator will re-send the physical check as soon as possible thereafter.

73.     The amount of any checks that are not cashed within one hundred and eighty (180) days following issuance, as provided herein, shall be returned to Sirius XM within ten (10) days thereafter.

74.     The Parties shall have no responsibility or liability for any federal, state, or other taxes owed by Settlement Class Members as a result of, or that arise from, any Settlement payments to Settlement Class Members or any other term or condition of this Agreement.

## V.     SERVICE PAYMENTS AND ATTORNEYS' FEES

75.     In recognition of the time and effort the Named Plaintiffs and Paul Wright expended in pursuing the claims resulting in this settlement and in fulfilling their obligations and responsibilities as Settlement Class representatives, and of the benefits conferred on all Settlement Class Members by the Settlement, Class Counsel may ask the Court for the payment of a Service Payment of no more than Five Thousand Dollars and No Cents ($5,000.00) per Named Plaintiff, as well as Paul Wright, to be paid by Sirius XM pursuant to the provision of Paragraph 66(g) hereto, to each of them. Sirius XM shall not oppose or appeal any such application that does not exceed Five Thousand Dollars and No Cents ($5,000.00) for each Named Plaintiff and for Paul Wright. Class Counsel may apply for such an application on or before twenty-one (21) days prior to the Opt-Out and Objection Deadline. If the Court awards the Service Payment, Sirius XM shall deliver to Class Counsel checks, each in the amount of the Service Payment, made payable to each of the Named Plaintiffs, and to Paul Wright, who has been awarded a Service Payment, within fifteen (15) days after (i) the date a completed W-9 form for each such Person is provided to Counsel for Defendant, or (ii) the Effective Date, whichever is later. Sirius XM's agreement not to oppose the application shall not be construed as an admission, agreement or concession by Sirius XM that any Service Payment is reasonable and/or appropriate.

SETTLEMENT AGREEMENT AND RELEASE

76.    Class Counsel shall request, and Sirius XM shall not oppose, a Fee and Expense Award not to exceed Three Million and Five Hundred Thousand Dollars ($3,500,000), to be paid by Sirius XM. Class Counsel may apply for such an award on or before twenty-one (21) days prior to the Opt-Out and Objection Deadline. The Fee and Expense Award, to the extent awarded by the Court, but not to exceed the agreed-upon cap of $3,500,000, shall be paid by Sirius XM to Class Counsel subject to Paragraph 77 below. Sirius XM will not oppose, object, appeal, or otherwise comment on any such fee, cost and expense request that does not exceed an amount equal to Three Million and Five Hundred Thousand Dollars ($3,500,000).

77.    The Fee and Expense Award shall be paid by Sirius XM within fifteen (15) days after the earlier of (a) the Effective Date, but no sooner than the provision to Counsel for Defendant of a completed and fully executed W-9 Form for the payee(s) of the Fee and Expense Award as designated by Class Counsel, or (b) the date on which all of the following conditions have occurred: (i) the entry of the Court's order so awarding the Fee and Expense Award, (ii) provision to Counsel for Defendant of a completed and fully executed W-9 Form for the payee(s) of the Fee and Expense Award as designated by Class Counsel, and (iii) provision to Counsel for Defendant of a fully executed Stipulated Undertaking and Order by Class Counsel, substantially in the form attached hereto as **Exhibit G**.

78.    In the event (a) the Final Approval Order and Judgment (or the order awarding the Fee and Expense Award) is reversed, vacated, modified, and/or remanded for further proceedings or otherwise disposed of in any manner other than one resulting in an affirmance, and (b) Class Counsel have been paid the Fee and Expense Award, then Class Counsel (or, as applicable, any and all successor(s) or assigns of their respective firms) shall, within ten (10) business days of such event, (i) repay to Sirius XM the full amount of the Fee and Expense Award paid to them (without interest), or (ii) repay to Sirius XM the amount by which the award of Fee and Expense Award has been reduced, without interest. In such a case, Class Counsel (or, as applicable, any and all successor(s)

SETTLEMENT AGREEMENT AND RELEASE

or assigns of their respective firms) shall be jointly and severally liable for repayment to Sirius XM of all or a portion of the Fee and Expense Award (as set forth in this Paragraph), without interest.

79.     Class Counsel expressly disclaim any and all right to collect attorneys' fees and expenses from any Person in excess of the amount awarded by the Court, as provided in Paragraph 76 above, and agree, upon demand, to execute a release of any Person's obligation to pay such sums. Class Counsel is responsible for distributing any award of attorneys' fees and expenses among themselves. Sirius XM shall not be liable for any claims ensuing from the division of the Fee and Expense Award among Class Counsel.

80.     Class Counsel shall have the sole and absolute discretion to allocate any Fee and Expense Award among themselves. Sirius XM shall have no liability or other responsibility for allocation of any such Fee and Expense Award, and, in the event that any dispute arises relating to the allocation of fees or expenses, Class Counsel agree to hold Sirius XM harmless from any and all such liabilities, costs, and expenses of such dispute.

81.     The Parties negotiated the attorneys' fees and expenses to be sought by Class Counsel only after reaching an agreement upon the relief provided to the Settlement Class, under the supervision of the Honorable Carl J. West (Ret.) of JAMS.

82.     The Settlement is not conditioned upon the Court's approval of the fees or expenses sought by Class Counsel or the Service Payments sought by Named Plaintiffs and Paul Wright. Any appellate proceedings relating solely to the award of attorneys' fees and expenses and/or the Service Payments shall not delay the effectuation of the Releases contained herein.

## VI.     RELEASES, JUDGMENT AND DISMISSALS

## A.     Releases

83.     In addition to the effect of any orders and final judgments entered in accordance with this Agreement, Named Plaintiffs, Paul Wright, and any Settlement Class Member (individually, a "Releasing Party," and collectively, the "Releasing

- 32 –

Parties"), whether or not that Settlement Class Member objects to the Settlement, shall be bound by this Agreement and shall have recourse only to the benefits, rights and remedies provided hereunder. The Releasing Parties shall completely release and forever discharge Sirius XM (including its predecessor companies, Sirius Satellite Radio Inc., XM Satellite Radio Holdings Inc., and XM Satellite Radio Inc.) and each of its past, present or future parents, subsidiaries, affiliates, officers, directors, employees, general or limited partners, insurers, legal representatives, trustees, attorneys, shareholders, agents, assigns, and third party suppliers and vendors (collectively, the "Released Parties") from any and all claims, counterclaims, lawsuits, set offs, costs, losses, rights, demands, charges, complaints, actions, causes of action, obligations, or liabilities of any and every kind, including without limitation (i) those known or unknown or capable of being known, (ii) those which are unknown but might be discovered or discoverable, and (iii) those accrued or unaccrued, matured or not matured, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, all from the beginning of the world until today, that arise out of or in any way relate or pertain to claims, no matter how styled, (a) that were asserted, or attempted to be asserted, or that could have been asserted, based on the facts alleged in the Cases, the Action and / or the Consolidated Class Action Complaint, or (b) that arise out of, relate to, or are in connection with the sale of Sirius XM's Lifetime Subscriptions, whether arising out of common law, state law, or federal law, whether by Constitution, statute, contract, common law, or equity, or (c) that arise out of, relate to, or are in connection with the administration of the Settlement (the "Released Claims"). The release in this Paragraph shall be included as part of any judgment, so that claims against all of the Released Parties shall be barred by principles of res judicata, collateral estoppel, and claim and issue preclusion.

84.    Each Releasing Party hereby covenants and agrees that it shall not hereafter seek to establish liability against any of the Released Parties and further covenants not to sue any of the Released Parties, based in whole or in part upon any of the Released

Claims, or otherwise institute, cause to be instituted, permit to be instituted on its behalf, or assist in instituting or prosecuting, any proceeding or otherwise assert any Released Claims against any Released Parties.

85.     The Parties intend that there will be entry of a final judgment with prejudice in the Action respecting all claims that are or could have been brought in the Action consistent with the broadest principles of res judicata, collateral estoppel, and claim and issue preclusion, subject to the terms and conditions of this Settlement Agreement and the Final Approval Order and Judgment in the Action.

86.     Each of the Releasing Parties hereby expressly agrees that, upon the Effective Date, each of them shall waive and release any and all provisions, rights, and benefits conferred either (i) by Section 1542 of the California Civil Code or (ii) by any law of any state or territory of the United States, or principle of common law which is similar, comparable, or equivalent to section 1542 of the California Civil Code, with respect to the claims released pursuant to Paragraph 83. Section 1542 of the California Civil Code reads:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

87.     Named Plaintiffs and Paul Wright understand and acknowledge, and all Settlement Class Members shall be deemed to understand and acknowledge, the significance of the waiver of California Civil Code Section 1542 and any other applicable law relating to the limitations on releases. Named Plaintiffs, Paul Wright, and each of the Releasing Parties acknowledges that he or she may hereafter discover facts in addition to, or different from, those facts which they now know or believe to be true with respect to the subject matter of the claims released pursuant to Paragraph 83, but each of those Persons expressly agrees that, upon entry of the Final Approval Order and  Judgment, he

or she shall have waived and fully, finally, and forever settled and released any and all Released Claims, whether or not concealed or hidden, and without regard to any subsequent discovery or existence of any additional or different facts. This is true whether such claims are known or unknown, suspected or unsuspected, contingent or non-contingent, accrued or unaccrued, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or in breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts. The foregoing release of unknown, unanticipated, unsuspected, non-contingent, concealed, hidden, and unaccrued losses or claims is contractual, and not a mere recital.

88.     On the Effective Date, all Settlement Class Members shall be deemed to have, with respect to the subject matter of the Action and the Cases, expressly waived the benefits of any statutory provisions or common law rules that provide, in sum or substance, that a general release does not extend to claims which the Person does not know or suspect to exist in the Person's favor at the time of executing the release, which if known by the Person would have materially affected its settlement with any other party.

89.     In entering into this Agreement, each of the Parties assumes the risk of any unknown or mistake of fact or law. If any Party should later discover any new fact that might have been material to its decision to enter into this Agreement, or if any Party discovers that any fact upon which the Party relied in entering into this Agreement is not true, or that the Party's understanding of the facts or law was incorrect, the Party shall not be entitled to modify, reform, or set aside this Agreement, in whole or in part, by reason thereof.

**B.     Dismissals**

90.     The Named Plaintiffs in the *Vaugh* and *Bettison* cases shall submit stipulated dismissals without prejudice to the courts in those cases, within two (2) business days following the execution of this Agreement. Contemporaneously with the signing of this

- 35 –

Agreement, Paul Wright shall sign a covenant not to sue Sirius XM, substantially in the form attached hereto as **Exhibit H**.

## VII.    MODIFICATION OR TERMINATION OF THE SETTLEMENT

91.    The terms and provisions of this Agreement may be amended, modified, or expanded by written agreement of the Parties and approval of the Court; provided, however, that, after entry of the Final Approval Order and Judgment, the Parties may, by written agreement, effect such amendments, modifications, or expansions of this Agreement and its implementing documents (including all exhibits hereto) without further notice to the Settlement Class or approval by the Court if such changes are consistent with the Court's Final Approval Order and Judgment and do not materially alter, reduce, or limit the rights of Settlement Class Members under this Agreement.

92.    If (a) the Court denies preliminary approval of this Agreement, or declines to finally approve the Settlement, or if the Court does not enter the Final Approval Order and Judgment in the Action substantially in accordance with the terms of this Settlement Agreement, (b) the Court enters the Final Approval Order and Judgment and appellate or other discretionary review is sought, and on such review, such Final Approval Order and Judgment is reversed, vacated or materially modified by any court, (c) any court materially modifies the terms of this Agreement, or (d) the Settlement for any other reason does not become Final in accordance with the terms of this Agreement, then the Settlement and this Agreement shall be terminated upon the election of all of the Named Plaintiffs and Paul Wright or by Sirius XM on its own, each acting through their undersigned counsel as provided in Paragraph 93 below; provided that any reversal, vacatur or modification on appeal or other form of review of any amount of Class Counsel's fees, costs and other expenses, or Service Payments to Named Plaintiffs and Paul Wright awarded by the Court, or any determination by the Court to award less than the amount requested in attorneys' fees, costs and other expenses to Class Counsel, or Service Payments to Named Plaintiffs and/or Paul Wright, shall not give rise to any right

SETTLEMENT AGREEMENT AND RELEASE

of termination or otherwise serve as a basis for termination of the Settlement or this Agreement.

93.    In the event of any condition or event set forth in Paragraph 92 above, all of the Named Plaintiffs and Paul Wright, on one hand, or Sirius XM, on the other, each acting in its sole discretion to be exercised within ten (10) business days after such condition or event, may declare this Agreement null and void (with the exception of Paragraphs 92, 93, and 96-99 herein). If Named Plaintiffs and Paul Wright, collectively, on the one hand, or Sirius XM, on the other hand, elect to terminate this Agreement under this Paragraph 93, that party or those parties must provide written notice to the other Party's or Parties' counsel, as provided in Paragraph 110 below, within ten (10) days of the occurrence of the condition permitting termination.

94.    The Settlement Administrator shall provide a list of any and all Successful Opt-Outs to the Parties within five (5) days after the Opt-Out and Objection Deadline. Sirius XM may terminate this Agreement no later than twenty (20) days after the Opt-Out and Objection Deadline, at its option, if more than two hundred (200) Persons or entities who fall under the definition of the Settlement Class are Successful Opt-Outs. Sirius XM may exercise this option by providing written notice to Class Counsel by that date, as provided in Paragraph 110 below, that Sirius XM revokes the Settlement pursuant to this Paragraph.

95.    To the extent there is an appeal from the Court's entry of the Final Approval Order and Judgment, either as presented to the Court (in accordance with the terms and conditions herein) or otherwise substantially in accordance with the terms of this Settlement Agreement, the Parties agree they shall continue to support and advocate for approval of the Settlement on appeal or in post appeal proceedings. Nothing shall prevent the Named Plaintiffs and/or Sirius XM from appealing any denial by the Court of final approval of the Settlement, and the Parties agree that, in the event of such an appeal, the Parties will propose to the Court that the Action be stayed pending the resolution of any such appeal. In the event of an appeal from a denial by the Court of final approval, the

- 37 –

SETTLEMENT AGREEMENT AND RELEASE

Parties agree that they shall, in good faith, consider supporting and advocating for approval of the Settlement on appeal or in post appeal proceedings, but are not obligated to do so. In the event any such appeal results, by order of the appellate court or by an order after remand or a combination thereof, in the entry of an order(s) whereby the Settlement is approved in a manner substantially consistent with the substantive terms of this Agreement, and resulting in the dismissal of all claims in the Action with prejudice subject to the terms and conditions of this Settlement Agreement, and otherwise meeting the substantive criteria of this Agreement for approval of the Settlement, such order shall be treated as a Final Approval Order and Judgment.

96.     If this Agreement is terminated or disapproved, or if the Effective Date does not occur for any reason, then: (i) this Agreement and all orders entered in connection therewith shall be rendered null and void (with the exception of Paragraphs 92, 93, and 96-99 herein); (ii) this Agreement, and all negotiations, proceedings, public statements and orders relating hereto, including any orders or findings relating to any Settlement class certification, shall be of no force or effect and shall not be used or referred to for any purpose whatsoever, and shall be without prejudice to the rights of the Parties; (iii) no doctrine of waiver, estoppel, or preclusion shall be asserted in any litigated class certification proceedings in the Action or in any other case; and (iv) all Parties shall be deemed to have reverted to their respective status in the Action as of the date and time immediately preceding the execution of this Agreement. Except as otherwise expressly provided in this Settlement Agreement, the Parties shall stand in the same position and shall proceed in all respects as if this Agreement and any related orders had never been executed, entered into, or filed, except that the Parties shall not seek to recover from one another any costs and attorneys' fees incurred in connection with the Settlement and this Agreement.

97.     Notwithstanding any provision of this Agreement, in the event this Agreement is not approved by any court, or terminated for any reason, or the Settlement set forth in this Agreement is declared null and void, or in the event that the Effective

– 38 –

SETTLEMENT AGREEMENT AND RELEASE

Date does not occur, Settlement Class Members, Named Plaintiffs, Paul Wright, and Class Counsel shall not in any way be responsible or liable for any Administration Expenses, taxes, or any other expenses, including any costs of notice and administration associated with the Settlement or this Agreement, and each Party shall bear its own attorneys' fees and costs.

98. If the Settlement is terminated pursuant to the terms of this Agreement, or if this Agreement does not become final, the Settlement Administrator shall return to Sirius XM any funds provided to the Settlement Administrator for Administration Expenses not yet incurred by the Settlement Administrator within ten (10) days after any termination of the Settlement.

99. In the event that the Settlement is terminated, this Agreement shall be of no force or effect, and any release contained herein shall be of no force or effect, and may never be mentioned at trial or in dispositive or class motions or motion papers (except as necessary to explain the timing of the procedural history of any of the Cases), and the Parties will return to their respective positions existing immediately before the execution of this Agreement.

## VIII. REPRESENTATIONS AND WARRANTIES

100. Each Party represents and warrants that he, she, or it intends to be bound fully by the terms of this Settlement Agreement. Each Party warrants that it is acting upon its independent judgment and upon the advice of its counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other Party, other than the warranties and representations expressly made in this Agreement. The Parties acknowledge, agree, and specifically warrant to each other that they have read this Agreement, have received legal advice with respect to the advisability of entering into this Agreement and the Settlement, and fully understand its legal effect. This Settlement Agreement is signed freely by each Party executing it based on the legal advice of its respective attorneys.

SETTLEMENT AGREEMENT AND RELEASE

101.    Counsel for the Parties agree to recommend approval of this Settlement Agreement by the Court and to undertake commercially reasonable efforts, including undertaking all steps and efforts contemplated by this Agreement and any other steps and efforts that may be necessary or appropriate, by order of the Court or otherwise, to carry out the terms of this Agreement.

102.    The undersigned Class Counsel represent that they have been and are fully authorized to conduct settlement negotiations with Counsel for Defendant on behalf of Named Plaintiffs and Paul Wright to enter into, and execute, this Agreement, subject to Court approval pursuant to Rule 23 of the Federal Rules of Civil Procedure.

103.    No Party to this Settlement Agreement has heretofore assigned, transferred, or granted, or purported to assign, transfer, or grant, any of the claims, demands, or cause or causes of action disposed of by this Settlement Agreement.

104.    This Agreement is entered into only for purposes of settlement. In the event that the Court enters an order preliminarily or finally approving the settlement of the Cases in a manner that is inconsistent with the terms of this Agreement, the Parties shall meet and confer in good faith regarding any modifications made to the proposed order. If, after meeting and conferring in good faith, Sirius XM determines that the modifications alter the terms of this Agreement, including but not limited to, because the modifications may increase Sirius XM's liability or reduce the scope of the releases or of the Settlement Class, or if the Court refuses to grant final approval of this Agreement or the Effective Date does not come to pass, then Sirius XM shall have the option to terminate this Agreement, as provided in Paragraph 93 above.

## IX.    MISCELLANEOUS PROVISIONS

105.    Sirius XM expressly disclaims and denies any wrongdoing or liability whatsoever. This Settlement, and any and all negotiations, statements, documents, and/or proceedings in connection with this Settlement, shall not be construed or deemed to be evidence of an admission or concession by Sirius XM of any liability or wrongdoing by Sirius XM or any of its affiliates, agents, representatives, vendors, or any other Person

acting on its behalf with respect to Lifetime Subscriptions or that the case was properly brought as a class action, and shall not be construed or deemed to be evidence of an admission or concession that any Person suffered compensable harm or is entitled to any relief with respect to Lifetime Subscriptions. Sirius XM may file this Agreement in any action or proceeding that may be brought against it in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

106.   Pending determination of whether the Settlement should be granted final approval, the Parties agree not to pursue any claims or defenses otherwise available to them in the Cases, and no Settlement Class Member, either directly, on a representative basis, or in any other capacity, will commence or prosecute any action or proceeding against any of the Released Parties asserting any of the Released Claims, pending final approval of the Settlement.

107.   The Parties believe that this Agreement is a fair, adequate, and reasonable settlement of the Cases, and they have arrived at this Settlement through arm's-length negotiations, taking into account all present and potential relevant factors.

108.   **Confidentiality**.

(a)   It is agreed that, until the filing of the motion for preliminary approval, this Settlement Agreement and its terms shall be confidential and shall not be disclosed to any Person unless required by applicable disclosure laws, required to be disclosed to auditors or attorneys, or agreed to by the Parties.

(b)   All agreements made and orders entered during the course of the Cases relating to the confidentiality of information shall survive this Agreement.

(c)   The Parties shall comply with the Protective Orders entered in any of the Cases.

109. **Press releases, communications and notices**.

(a)     The Parties shall not issue press releases or similar public statements regarding this Settlement, except that Class Counsel may make public statements regarding the Settlement (i) in any future pleadings and/or Court filings in the Action or Cases or any other case related to the Released Claims, (ii) on any *curriculum vitae* or future pleadings in any proceeding relating to Class Counsel's experience and results, and (iii) on Class Counsel's websites, in order to inform visitors to their websites of the case status, with links to the Settlement Website and in order to set forth Class Counsel's experience and results. Nothing in this Paragraph shall bar or otherwise limit Class Counsel's communications with Named Plaintiffs, Paul Wright, any Settlement Class Member, or any individual requesting information about the Settlement, or act as a limit or bar on Class Counsel's ability to file any pleading, request, or petition in the Action, the Cases or any other legal or administrative proceedings on behalf of any Person, including but not limited to Named Plaintiffs, Paul Wright, Settlement Class Members and their attorneys, agents, assigns, heirs or representatives. In the event any Party or attorney is contacted by a member of the press or other Person seeking a public comment on the Settlement (and who is not a Person that falls within the Settlement Class), the Party or attorney may provide the inquiring party with the details of the Settlement as published pursuant to the Preliminary Approval Order, including details of the Settlement Agreement, and the allegations set forth in the pleadings filed in the Action or Cases, without additional editorial statements, or expression of personal opinion. No Party shall disparage any other Party in any fashion. In no event shall Named Plaintiffs, Paul Wright, Class Counsel, or their agents state or imply to any Person that the Settlement represents an acknowledgement by Sirius XM or its vendors of any wrongdoing or liability by any of them. Nothing in this Paragraph shall be interpreted to limit representations that the Parties or their attorneys may make to the Court to assist it in its evaluation of the Settlement; nor shall it prohibit Class Counsel from communicating directly with a potential Settlement Class Member or Settlement Class Members once appointed as Class

Counsel. If a Party is required by a valid, enforceable subpoena or government information request to disclose the Settlement or information about the Settlement, such Party shall provide reasonable prior written notice (to the extent permitted by applicable law) to the other Parties to allow the other Parties to seek to prevent such disclosure. Sirius XM may also provide necessary and accurate information about the Settlement to its officers, directors, public accountants, attorneys, stockholders and other Persons as required by securities laws or other applicable laws or regulations. Notwithstanding any provision herein, this Agreement shall not limit, bar, or otherwise affect any statements, assertions, or arguments in any future pleadings and/or Court filings in the Action or Cases or any other case related to the Released Claims.

(b)     The Parties agree that nothing in this Agreement shall be construed to prohibit communications between Sirius XM or any other Released Parties, on the one hand, and Settlement Class Members, on the other hand, in the course of implementing this Settlement or otherwise in the regular course of Sirius XM's business.

110.   Unless otherwise specified in writing, any notice or delivery sent in connection with this Agreement shall be transmitted overnight by U.S Mail or Federal Express or an equivalent overnight delivery service as follows:

> To Named Plaintiffs, Paul Wright, and Class Counsel:
> Robert Ahdoot
> Tina Wolfson
> AHDOOT & WOLFSON, PC
> 10728 Lindbrook Drive, Los Angeles, CA 90024
>
> To Defendant and Counsel for Defendant:
> Thomas Demitrack
> JONES DAY
> 901 Lakeside Avenue, Cleveland, Ohio 44114

Any date in this Agreement by which a Party to this Agreement must act or otherwise provide notice shall be satisfied by the date of transmission as provided in this Paragraph.

- 43 –

111.   The time periods and dates described in this Agreement with respect to the giving of Class Notice and hearings will be subject to Court approval and modification by the Court with the consent of the Parties.

112.   All terms of this Agreement shall be governed by and interpreted according to the substantive laws of the State of New York without regard to its choice of law or conflict of laws principles that would require the application of the laws of another jurisdiction.

113.   The Settlement Agreement was, and is deemed to have been, drafted by all Parties, and any rule that a document shall be interpreted against the drafter will not apply to this Settlement Agreement.

114.   This Agreement is binding on and shall inure to the benefit of the respective predecessors, successors, heirs, and assigns of the Parties.

115.   This Agreement (including all exhibits hereto and other documents explicitly referenced herein, which form an integral part hereof) contains the entire, complete, and integrated statement of each and every term and provision of the Settlement. There are no promises, representations, warranties, covenants or undertakings governing the subject matter of this Agreement other than those expressly set forth in this Agreement. This Agreement supersedes all prior agreements and understandings among the Parties with respect to the settlement of the Cases. This Agreement may be amended or modified only by a written instrument signed by all Parties or their successors in interest or their duly authorized representatives.

116.   The headings in this Agreement are inserted merely for the purpose of convenience and shall not affect the meaning or interpretation of this document.

117.   The provisions of this Agreement may be waived only in a writing executed by the waiving Party. The waiver by one Party of any breach of this Settlement Agreement by any other Party shall not be deemed a waiver, by that Party or by any other Party, of any other prior or subsequent breach of this Settlement Agreement.

SETTLEMENT AGREEMENT AND RELEASE

118.   This Settlement Agreement shall not inure to the benefit of any third party, except as expressly provided herein.

119.   The Court has jurisdiction over the Parties to this Agreement, and the Settlement Class.

120.   **Disputes, if any**

(a)   To the extent any dispute arises between or among the Parties regarding implementation of this Agreement, the Parties agree in the first instance to mediate the dispute telephonically before Judge West and if necessary, in person before him, before bringing the dispute (if unresolved after such mediation) to the Court. Any action to enforce this Agreement shall be commenced and maintained only in the Court. The Court shall retain exclusive jurisdiction, after entry of the Final Approval Order and Judgment, with respect to interpretation, enforcement, administration and implementation of the terms of the Settlement, and all Parties and Settlement Class Members submit to the exclusive jurisdiction of the Court with respect to the enforcement of this Agreement and the Settlement and any dispute with respect thereto.

(b)   This Paragraph shall not prohibit (i) the assertion in the forum in which a claim is brought that the releases herein are a defense, in whole or in part, to such claim, or (ii) in the event that such a defense is asserted in that forum, the determination of its merits in that forum.

121.   Notwithstanding any other provision of this Agreement, this Agreement and the releases contained herein may be pleaded as a full and complete defense to any action, suit or other proceeding that has been or may be instituted, prosecuted or attempted with respect to any Released Claims and may be filed, offered and received into evidence and otherwise used for such defense.

122.   Any failure of any Party to comply with any obligation, covenant, agreement, or condition herein may be expressly waived in writing, to the extent permitted under applicable law, by the Party or Parties entitled to the benefit of such obligation, covenant, agreement, or condition.

SETTLEMENT AGREEMENT AND RELEASE

123.   This Agreement shall not be subject to collateral attack by any Settlement Class Members or their representatives any time on or after the Effective Date. Such prohibited collateral attacks shall include, but shall not be limited to, claims that a Settlement Class Member's claim should have been heard or decided by another court or in another suit, that a Settlement Class Member's claim was improperly denied, that the payment to a Settlement Class Member was improperly calculated, and/or that a Settlement Class Member failed to receive timely notice of the Settlement.

124.   This Agreement shall not be used, offered or received into evidence in the Action, or any other action, for any purpose other than to enforce, to protect, to construe or to finalize the terms of this Agreement and/or to obtain the preliminary and final approval by the Court of the terms of this Agreement, without a court order.

125.   The Parties shall execute all documents and perform all acts reasonably necessary and proper to effectuate the terms of this Agreement. The execution of documents must take place prior to the date scheduled for the hearing on preliminary approval of this Agreement.

126.   The time periods and dates described in this Settlement Agreement with respect to the giving of Class Notice and hearings will be subject to Court approval and modification by the Court with the consent of the Parties.

127.   If any of the dates or deadlines specified herein falls on a weekend or legal holiday, the applicable date or deadline shall fall on the next business day. All reference to "days" in this Agreement shall refer to calendar days, unless otherwise specified. The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

128.   This Agreement may be executed in counterparts. E-mailed signatures shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Agreement and filed with the Court.

SETTLEMENT AGREEMENT AND RELEASE

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed:

**SETTLEMENT CLASS REPRESENTATIVES:**

PHILIP ALVAREZ

_Philip Alvarez (Jun 6, 2020 15:52 PDT)_
_____
Philip Alvarez

Date: June 5, 2020


RANDALL BETTISON


_____
Randall Bettison

Date: June 5, 2020

MARC KELLEHER


_____
Marc Kelleher

Date: June 5, 2020

DARLENE VAUGH


_____
Darlene Vaugh

Date: June 5, 2020

PAUL WRIGHT


_____
Paul Wright

Date: June 5, 2020

**DEFENDANT:**

SIRIUS XM RADIO INC.


_____
Patrick Donnelly
Executive Vice President, General
Counsel and Secretary


Date: June 5, 2020

- 47 –

SETTLEMENT AGREEMENT AND RELEASE

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed:

**SETTLEMENT CLASS REPRESENTATIVES:**

PHILIP ALVAREZ

_____
Philip Alvarez

Date: June 5, 2020

RANDALL BETTISON

_____
Randall T Bettison (Jun 5, 2020 13:46 PDT)
Randall Bettison

Date: June 5, 2020

MARC KELLEHER

_____
Marc Kelleher

Date: June 5, 2020

DARLENE VAUGH

_____
Darlene Vaugh

Date: June 5, 2020

PAUL WRIGHT

_____
Paul Wright

Date: June 5, 2020

**DEFENDANT:**

SIRIUS XM RADIO INC.

_____
Patrick Donnelly
Executive Vice President, General
Counsel and Secretary

Date: June 5, 2020

- 47 –

SETTLEMENT AGREEMENT AND RELEASE

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed:


**<u>SETTLEMENT CLASS</u>**                          **<u>DEFENDANT:</u>**
**<u>REPRESENTATIVES:</u>**

PHILIP ALVAREZ                                 SIRIUS XM RADIO INC.


_____
Philip Alvarez
                                               _____
Date: June 5, 2020                             Patrick Donnelly
                                               Executive Vice President, General
                                               Counsel and Secretary


RANDALL BETTISON                               Date: June 5, 2020


_____
Randall Bettison

Date: June 5, 2020

MARC KELLEHER

*marc kelleher*
_____
Marc Kelleher

Date: June 5, 2020

DARLENE VAUGH


_____
Darlene Vaugh

Date: June 5, 2020

PAUL WRIGHT


_____
Paul Wright

Date: June 5, 2020

- 47 –

1    IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be

2  executed:

3

4

5  **SETTLEMENT CLASS**            **DEFENDANT**:
   **REPRESENTATIVES:**

6  PHILIP ALVAREZ                  SIRIUS XM RADIO INC.

7

8  _____

   Philip Alvarez                  _____

9  Date: June 5, 2020              Patrick Donnelly
                                   Executive Vice President, General
10                                 Counsel and Secretary

11 RANDALL BETTISON               Date: June 5, 2020

12

13 _____

   Randall Bettison

14 Date: June 5, 2020

15

16 MARC KELLEHER

17

18 _____

   Marc Kelleher

19 Date: June 5, 2020

20 DARLENE VAUGH

21 *Darlene Vaugh*
   <span>Darlene Vaugh (Jun 5, 2020 17:37 EDT)</span>

22 _____

   Darlene Vaugh

23 Date: June 5, 2020

24 PAUL WRIGHT

25

26

27 _____

   Paul Wright

28 Date: June 5, 2020

- 47 –

SETTLEMENT AGREEMENT AND RELEASE

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed:

**SETTLEMENT CLASS**
**REPRESENTATIVES:**

**DEFENDANT**:

PHILIP ALVAREZ

SIRIUS XM RADIO INC.

_____
Philip Alvarez

Date: June 5, 2020

_____
Patrick Donnelly
Executive Vice President, General
Counsel and Secretary

RANDALL BETTISON

Date: June 5, 2020

_____
Randall Bettison

Date: June 5, 2020

MARC KELLEHER

_____
Marc Kelleher

Date: June 5, 2020

DARLENE VAUGH

_____
Darlene Vaugh

Date: June 5, 2020

PAUL WRIGHT

_____
Paul Wright (Jun 6, 2020 14:07 PDT)
Paul Wright

Date: June 5, 2020

- 47 –

SETTLEMENT AGREEMENT AND RELEASE

1        IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be

2    executed:

3

4

5    **SETTLEMENT CLASS**             **DEFENDANT:**
   **REPRESENTATIVES:**

6    PHILIP ALVAREZ                  SIRIUS XM RADIO INC.

7

8    _____
   Philip Alvarez                   Patrick Donnelly

9    Date: June 5, 2020               Executive Vice President, General
                                    Counsel and Secretary

10

11   RANDALL BETTISON             Date: June 5, 2020

12

13   _____
   Randall Bettison

14   Date: June 5, 2020

15

16   MARC KELLEHER

17

18   _____
   Marc Kelleher

19   Date: June 5, 2020

20   DARLENE VAUGH

21

22   _____
   Darlene Vaugh

23   Date: June 5, 2020

24   PAUL WRIGHT

25

26

27   _____
   Paul Wright

28   Date: June 5, 2020

- 47 –

SETTLEMENT AGREEMENT AND RELEASE

1

2   **CLASS COUNSEL**:                    **COUNSEL FOR DEFENDANT**:

3   AHDOOT & WOLFSON, PC             JONES DAY

4

5   _____          _____
    Robert Ahdoot                    Thomas Demitrack

6   Date: June 5, 2020               Date: June 5, 2020

7
    STOLL STOLL BERNE LOKTING &
8   SHLACHTER P.C.

9
    _____
10  Keith S. Dubanevich

11  Date: June 5, 2020

12
    ABINGTON COLE + ELLERY
13

14
    _____
15  Cornelius P. Dukelow

16  Date: June 5, 2020

17

18

19

20

21

22

23

24

25

26

27

28

- 48 –

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CLASS COUNSEL**:

AHDOOT & WOLFSON, PC

_____
Robert Ahdoot

Date: June 5, 2020

STOLL STOLL BERNE LOKTING &
SHLACHTER P.C.

_____
Keith S. Dubanevich

Date: June 5, 2020

ABINGTON COLE + ELLERY

_____
Cornelius P. Dukelow

Date: June 5, 2020

**COUNSEL FOR DEFENDANT**:

JONES DAY

_____
Thomas Demitrack

Date: June 5, 2020

- 48 –

SETTLEMENT AGREEMENT AND RELEASE

1

2    **CLASS COUNSEL**:                         **COUNSEL FOR DEFENDANT**:

3    AHDOOT & WOLFSON, PC                  JONES DAY

4

5    _____              _____
     Robert Ahdoot                            Thomas Demitrack

6    Date: June 5, 2020                        Date: June 5, 2020

7
     STOLL STOLL BERNE LOKTING &
8    SHLACHTER P.C.

9

10   _____
     Keith S. Dubanevich

11   Date: June 5, 2020

12
     ABINGTON COLE + ELLERY
13

14
     _____
15   Cornelius P. Dukelow

16   Date: June 5, 2020

17

18

19

20

21

22

23

24

25

26

27

28

- 48 -

SETTLEMENT AGREEMENT AND RELEASE

**CLASS COUNSEL**:                    **COUNSEL FOR DEFENDANT**:

AHDOOT & WOLFSON, PC          JONES DAY

_____          _____
Robert Ahdoot                        Thomas Demitrack

Date: June 5, 2020                   Date: June 5, 2020

STOLL STOLL BERNE LOKTING &
SHLACHTER P.C.


_____
Keith S. Dubanevich

Date: June 5, 2020

ABINGTON COLE + ELLERY


_____
Cornelius P. Dukelow

Date: June 5, 2020

- 48 -

SETTLEMENT AGREEMENT AND RELEASE