1  Tina Wolfson, CA Bar No. 174806
   *twolfson@ahdootwolfson.com*
2  Robert R. Ahdoot, CA Bar No. 172098
   *rahdoot@ahdootwolfson.com*
3  Theodore Maya, CA Bar No. 223242
   *tmaya@ahdootwolfson.com*
4  AHDOOT & WOLFSON, PC
   10728 Lindbrook Drive
5  Los Angeles, California 90024
   Tel: (310) 474-9111; Fax: (310) 474-8585
6
7  [*Additional Counsel on Signature Pages*]

   *Proposed Class Counsel*
8

9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11

12 | PHILIP ALVAREZ, RANDALL | Case No. 2:18-cv-08605-JVS-SS |
   BETTISON, MARC KELLEHER, and

13 DARLENE VAUGH, individually and | **PLAINTIFFS' NOTICE OF**
   on behalf of all others similarly | **MOTION AND MOTION FOR**

14 situated, | **PRELIMINARY APPROVAL OF**
                                    | **CLASS ACTION SETTLEMENT**
15
            Plaintiffs,            | Hon. James V. Selna, presiding
16
17    v.                          | Date:      July 13, 2020
                                    Time:      1:30 PM
18 SIRIUS XM RADIO INC.,           | Location:  Courtroom 10C
                                    |            411 West 4th Street,
19          Defendant.            |            Santa Ana, CA 92701
20
21                                 [Filed concurrently with the
                                    Settlement Agreement and Release,
22                                 Declarations of Robert Ahdoot,
                                    Philip Alvarez, Cameron Azari,
23                                 Randall Bettison, Keith S.
                                    Dubanevich, Cornelius P. Dukelow,
24                                 Marc Kelleher, Christian Tregillis,
                                    Darlene Vaugh, and Paul Wright,
25                                 and Proposed Order Granting
                                    Preliminary Approval of Class
26                                 Action Settlement]
27
28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 13, 2020 at 1:30 p.m., in Courtroom 10C of the above-captioned Court before the Honorable James V. Selna, Plaintiffs Philip Alvarez, Randall Bettison, Marc Kelleher, and Darlene Vaugh (collectively, "Plaintiffs") will and hereby do move for an Order Granting Preliminary Approval of Class Action Settlement, pursuant to the Settlement Agreement and Release filed concurrently herewith.

More specifically, Plaintiffs move for an Order: (1) granting preliminary approval of the proposed Settlement; (2) finding that a Class can be certified for settlement purposes; (3) approving the parties' proposed Notice Plan and forms of notice; (4) directing that the notice of the proposed Settlement be disseminated to the Class; (5) approving the procedures for Settlement Class Members to exclude themselves from or object to the Settlement; (6) appointing Plaintiffs as Class Representatives for the Class; (7) appointing Tina Wolfson and Robert Ahdoot of Ahdoot & Wolfson, PC, Keith S. Dubanevich of Stoll Stoll Berne Lokting & Shlacter, PC, and Cornelius P. Dukelow of Abington Cole & Ellery as Class Counsel; (8) appointing Epiq Class Action & Claims Solutions, Inc. as the Settlement Administrator specified in the Settlement; and (9) setting the following schedule on further proceedings to determine whether the proposed Settlement is fair, reasonable, and adequate and whether an order awarding attorneys' fees and reimbursement of expenses and service payments should be approved, which would set dates to be calculated from the date on which the Court enters an order granting this motion, as indicated:

| Event | Date |
|-------|------|
| Initial Date for Publishing Notice | 45 days after entry of preliminary approval order |
| Deadline for Plaintiffs' Counsel To File Any Motion For Award Of Attorneys' Fees And Service Payments | 24 days after the Notice Date; 21 days before objection deadline) |
| Deadline for Class Members To Submit Objections To The Proposed Settlement Or Requests For Exclusion | 45 days after the Notice Date |
| Deadline for Settlement Administrator to file list of exclusions with the Court | 14 days before the Final Approval Hearing |
| Deadline for Plaintiffs' Counsel To File Motion For Final Approval Of Class Action Settlement, including responses to any objections | 14 days before the Final Approval Hearing |
| Final Approval Hearing | 115 days after entry of preliminary approval order, or such other date as the Court deems appropriate, but no sooner than 90 days after service of CAFA notice |

This motion is made pursuant to Fed. R. Civ. P. 23 and is based upon: this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the Settlement Agreement and Release; the supporting declarations filed concurrently herewith; and such evidence and argument as the Court may consider at any hearing on this motion.

1   Dated: June 11, 2020                    Respectfully Submitted,

2

3                                           **AHDOOT & WOLFSON, PC**

4                              By:   */s/ Robert Ahdoot*

5                                    Robert Ahdoot
                                     *rahdoot@ahdootwolfson.com*
6                                    Tina Wolfson
                                     *twolfson@ahdootwolfson.com*
7                                    Theodore W. Maya
                                     *tmaya@ahdootwolfson.com*
8                                    10728 Lindbrook Drive
9                                    Los Angeles, California 90024
10                                   Tel: (310) 474-9111; Fax: (310) 474-8585

11
                                     Cornelius P. Dukelow*, OK Bar 19086
12                                   *cdukelow@abingtonlaw.com*
13                                   **ABINGTON COLE + ELLERY**
                                     320 S. Boston Avenue, Suite 1130
14                                   Tulsa, Oklahoma 74103
15                                   Telephone & Facsimile: (918) 588-3400

16                                   Keith S. Dubanevich*, OR Bar 975200
17                                   *kdubanevich@stollberne.com*
                                     **STOLL STOLL BERNE LOKTING &**
18                                   **SHLACHTER P.C.**
19                                   209 SW Oak Street, Suite 500
                                     Portland, Oregon 97204
20                                   Telephone: (503) 227-1600
21                                   Facsimile: (503) 227-6840

22                                   *Attorneys for Plaintiffs and Proposed*
23                                   *Class Counsel*

24                                   *Pro Hac Vice* application pending

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION...................................................................1

II.  PROCEDURAL AND FACTUAL BACKGROUND ...........................................3

III. TERMS OF THE SETTLEMENT ....................................................5

    A.   The Class Definition..................................................5

    B.   The Settlement Benefits ..............................................6

    C.   The Settlement Administrator .........................................8

    D.   The Notice Plan ......................................................8

    E.   Settlement Payments to Inactive Subscribers...........................9

    F.   Proposed Class Representative Service Payments .......................10

    G.   Attorneys' Fees and Costs ............................................11

IV.  PRELIMINARY APPROVAL IS APPROPRIATE .......................................11

    A.   Legal Standards ......................................................11

        1.   Class Certification ............................................12

        2.   Fairness of the Proposed Class Action Settlement ...............12

    B.   Discussion ...........................................................14

        1.   Class Certification ............................................14

                i.   The Class Is Sufficiently Numerous.........................14

                ii.  There Are Common Questions of Law and Fact.................15

                iii. The Class Representatives' Claims are
                      Typical of Those of Other Class Members ...................15

                iv.  Class Representatives and Class Counsel
                      Adequately Represent Class Members.........................16

                v.   The Settlement Class Meets the Requirements of
                      Rule 23(b)(3) Because Common Issues of Law
                      and Fact Predominate ......................................18

**TABLE OF CONTENTS**
(continued)

Page

2.  The Proposed Settlement Should be Preliminarily Approved ... 19

    i.  The Strength of Plaintiffs' Case ....................................... 19

    ii.  The Risk, Expense, Complexity, and Likely
         Duration of Further Litigation ......................................... 19

    iii.  The Risk of Maintaining Class Action Status
         Throughout the Trial ........................................................ 19

    iv.  The Amount Offered in Settlement ................................. 20

    v.  The Extent of Discovery Completed and the
         Stage of the Proceedings ................................................. 20

    vi.  The Experience and Views of Counsel ............................ 20

    vii.  The Presence of a Governmental Participant .................. 21

    viii.  The Reaction of the Class Members to the
         Proposed Settlement ........................................................ 21

3.  The Settlement was the Product of Arm's-Length
    Negotiations .............................................................................. 21

4.  The Proposed Notice Is Appropriate ......................................... 22

5.  The Claim Process Is Easy and not Cumbersome ..................... 24

6.  The Court Should Set Settlement Deadlines and Schedule a
    Final Approval Hearing .............................................................. 24

V.  CONCLUSION ...................................................................................... 25

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*Abat v. Chase Bank USA, N.A.*, No. SACV 0701476-CJC (ANx),
2011 WL 13130637 (C.D. Cal. July 11, 2011) .................................................. 23

*Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952 (9th Cir. 2013),
*cert. denied*, 135 S.Ct. 53 (2014)...................................................................... 15

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231 (1997).............. passim

*Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013)...................... 18

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ...................... 13, 14

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ............................... 14

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) .................................. 16

*General Tel. Co. v. Falcon*, 457 U.S. 147 (1982) ....................................................... 17

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .......................................... 16

*Harris v. Vector Mktg. Corp.*, 2011 WL 1627973 (N.D. Cal. 2011) .......................... 14

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ........... 13, 21

*In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717 (C.D. Cal. 2002)............................... 17

*In re Nat'l Football League Players Concussion Injury Litig.*,
821 F.3d 410 (3d Cir.) ...................................................................................... 11

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
962 F. Supp. 450 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998) ............... 23

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
895 F.3d 597 (9th Cir. 2018) ............................................................................ 16

*Jordan v. Cnty. of Los Angeles*, 669 F.2d 1311 (9th Cir.),
*vacated on other grounds*, 459 U.S. 810 (1982) ............................................... 14

*Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
244 F.3d 1152 (9th Cir. 2001)........................................................................... 19

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) .................................. 15

*Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*,
618 F.3d 988 (9th Cir. 2010)............................................................................. 11

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ........................... 22

*Noll v. eBay, Inc.*, 309 F.R.D. 593 (N.D. Cal. 2015).................................................. 23

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Officers for Justice v. Civil Service Comm'n of the City & Cnty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983) .................. 13

*Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439 (N.D. Cal. 2008) ...................... 19

*Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53 (1st Cir. 2004) ........................ 22

*Sandoval v. Roadlink USA Pac., Inc.*, No. EDCV 10-00973 VAP,
  2011 WL 5443777 (C.D. Cal. Oct. 9, 2011) ........................................ 12

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994) ............................................ 22

*Spann v. J.C. Penney Corp.*, 314 F.R.D. 312 (C.D. Cal. 2016) .................................. 14

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ................................ 11, 13

*Stone v. Howard Johnson Int'l, Inc.*, No. 12-CV-01684 PSG (MANX),
  2015 WL 13648551 (C.D. Cal. June 15, 2015) ................................... 23

*Thomas v. Baca*, 231 F.R.D. 397 (C.D. Cal. 2005) ...................................... 15

*Tijero v. Aaron Bros., Inc.*, 2013 WL 60464 (N.D. Cal. 2013) .................................. 14

*Trotsky v. Los Angeles Fed. Sav. & Loan Ass'n.*, 48 Cal.App.3d 134 (1975) ............. 22

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541 (2011) ................. 12, 18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir.),
  *cert. denied*, 544 U.S. 1044 (2005) ................................................ 22

*Warner v. Toyota Motor Sales, U.S.A., Inc.*, No. CV152171FMOFFMX,
  2016 WL 8578913 (C.D. Cal. Dec. 2, 2016) ...................................... 22

*Wershba v. Apple Comput., Inc.*, 91 Cal.App.4th 224 (2001) ...................................... 22

*West v. Circle K Stores, Inc.*, 2006 WL 1652598 (E.D. Cal. 2006) ............................ 14

*Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468 (E.D. Cal. 2009) ................................. 14

**Other Authorities**

4 Newberg on Class Actions § 11:53, at p. 167 (4th ed. 2013) ..................................... 22

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

**Rules and Statutes**

28 U.S.C. § 1715 ................................................................................... 21

Fed. R. Civ. P. 23, Adv. Comm. Notes to 2018 Amendment ................................ 12, 13

Fed. R. Civ. P. 23(a) ...................................................................... 12, 14, 15, 16

Fed. R. Civ. P. 23(b) ................................................................................. 18

Fed. R. Civ. P. 23(c) ................................................................................. 22

Fed. R. Civ. P. 23(e) ...................................................................... 12, 13, 14

# I.   <u>INTRODUCTION</u>

Plaintiffs respectfully seek preliminary approval of a proposed class action Settlement, filed concurrently herewith, that if approved would resolve claims alleged in a number of class actions against Defendant Sirius XM Radio Inc. ("Sirius XM").[1] These actions all result from Sirius XM's sale of "Lifetime Subscriptions" to its satellite radio service, that lasted not for the lifetime of the consumers who purchased them (as plaintiffs alleged they should have done), but for the lifetime of the particular Device such consumers first used to receive the service and, up to three more Devices thereafter with a $75 transfer fee for each transfer between Devices (which Sirius XM asserts was consistent with its marketing).

The proposed Settlement achieves a "Lifetime Subscription" for Settlement Class Members that can actually last for their lifetime, as opposed to a maximum of four Devices. (Settlement Agreement ("SA") ¶¶ 66-68.) Pursuant to the Settlement, Settlement Class Members will be able to transfer their Lifetime Subscriptions to an *unlimited* number of different Devices, for a charge of $35 per transfer (a significant reduction from Defendant's $75 per transfer fee). (*Id.* ¶ 66(a).)

In the event a Settlement Class Member no longer holds an Active Lifetime Subscription (but, rather, an Inactive Lifetime Subscription that, for instance, expired along with a Device, or was converted to a yearly, monthly, or some other subscription), he or she will have the option of reactivating that Lifetime Subscription (at no charge) with the above benefits, or claiming $100 in cash. (*Id.* ¶ 67.) Finally, and in addition, Internet streaming of Sirius XM's radio service will be made available to inactive lifetime subscribers who choose to reactivate, with

---

[1]   Unless otherwise defined, Capitalized terms herein have the meaning set forth in the Settlement Agreement and Release, filed concurrently herewith.

no additional fee paid to Sirius XM (Internet streaming is already available to active lifetime subscribers at no additional fee paid to Sirius XM). (*Id.* ¶ 66(c).)

Plaintiffs' expert, Christian Tregillis, opines that the Settlement's benefits areworth approximately $96.4 million. (Concurrently filed Declaration of Christian Tregillis ("Tregillis Decl.") ¶ 35.) The terms of this Settlement are not only fair, reasonable, and adequate, as required for approval under the Federal Rules, but represent an achievement that most likely is better than any result Plaintiffs could hope to achieve through continued litigation of these actions, were they to certify a class and make it to trial before a court — no mean feat, particularly given that this Court previously compelled the earliest filed of these actions to individual arbitration under the terms of Defendant's alleged subscriber agreement. *See Wright v. Sirius XM Radio, Inc.*, No. 16-01688 JVS, ECF 59.

The Settlement was achieved after two-and-a-half years of hard-fought litigation, in this Court on behalf of Plaintiffs Alvarez and Wright (formerly a plaintiff in his own case), as well as in other trial courts on behalf of Plaintiffs Bettison and Vaugh, and in the Ninth Circuit Court of Appeals after Wright appealed this Court's order in an earlier case compelling individual arbitration of his claims. The Settlement is the result of extensive arms'-length negotiations overseen by Judge Carl West (Ret.), a respected and experienced JAMS mediator and former California Superior Court Judge.

For all these reasons, and for those set forth in more detail below, Plaintiffs respectfully request that the Court grant preliminary approval to the Settlement, issue the proposed Preliminary Approval Order, appoint Epiq Class Action & Claim Solutions, Inc. ("Epiq") as the Settlement Administrator, find, solely for purposes of effectuating the proposed Settlement, and pursuant to Rule 23(e)(1), that the prerequisites for class certification under Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure are likely to be found to be satisfied, and allow notice of the Settlement to issue to Class Members.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

All Plaintiffs allege that, at the time of their purchases, they understood that that their Lifetime Subscriptions would last for *their* lifetime, as opposed to the lifetime of a particular Device. Sirius XM denies such allegations and maintains that such so-called Lifetime Subscriptions were limited to the lifetime of four Devices (the first plus three additional Devices) and that a $75 fee is required for each such transfer from one Device to another until a subscriber reached their given limit of three transfers.

Plaintiff, Paul Wright, filed the earliest of the actions, on September 12, 2016, in this Court.  (C.D. Cal. Case No. 8:16-cv-01688-JVS-JCG ("*Wright*")). On November 14, 2016, Sirius XM filed a motion to dismiss and to compel arbitration in the *Wright* case. The parties fully briefed that motion, and the Court heard oral argument on April 24, 2016. In response to Plaintiffs' counsel's argument at that hearing, the Court permitted further briefing on the impact of the California Supreme Court's then-recent decision in *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 956 (2017). After that briefing, on June 1, 2017, the Court granted Defendant's motion, dismissing Plaintiff Wright's claims without prejudice. (*Wright*, ECF 59.) The Court also denied Wright's request for leave to amend his complaint to add additional class representatives. (*Id.*)

Thereafter, three other lifetime subscribers filed their own class actions, including Plaintiff Alvarez, who filed this action in the Superior Court of California for Los Angeles County on August 28, 2018, seeking only declaratory and injunctive relief rather than monetary damages. Sirius XM removed this action to this Court on October 5, 2018 and answered the complaint on October 6, 2018 (C.D. Cal. Case No. 18-cv-08605-JVS-SS ("*Alvarez*")).

Plaintiff Randall Bettison filed a class action complaint in the Circuit Court of Oregon for Multnomah County on May 17, 2018, entitled *Bettison v Sirius XM Radio Inc*. Sirius XM removed the *Bettison* action to the District of Oregon on

3

June 19, 2018 and answered the complaint on June 20, 2018 (D. Or. Case No. 3:18-cv-01065-PK) ("*Bettison*").

Plaintiff Darlene Vaugh filed her class action complaint on May 8, 2018, in the Superior Court of New Jersey for Atlantic County. Sirius XM removed this action to the District of New Jersey on June 8, 2018 and answered the complaint there on June 11, 2018 (D.N.J. Case No. 1:18-cv-10331-NLH-AMD) ("*Vaugh*").

On April 4, 2017, counsel for then-Plaintiff Wright and for Plaintiff Alvarez held an in-person settlement conference with counsel for Sirius XM at the Jones Day office in New York, but despite a number of follow up conversations, a resolution did not occur at that time. (Declaration of Robert Ahdoot ("Ahdoot Decl.") ¶ 9.)

On June 28, 2017, shortly before Alvarez, Bettison, and Vaugh filed their cases, Plaintiff Wright appealed this Court's order granting Defendant's motion to dismiss and to compel arbitration of his claims. (9th Cir. Case No. 17-55928 (the "Appeal").) Thereafter, the parties filed their opening, response, and reply briefs in the Appeal. (*Id.* ECF Nos. 11, 21, 23.)

While that appeal and the other Plaintiffs' claims were pending, and after all briefing in the Appeal was submitted, on November 29, 2018, the parties participated in a full-day mediation session before the Honorable Carl J. West (Ret.). (Ahdoot Decl. ¶ 11.)

At Plaintiffs' counsel's request, Defendant provided substantial information in advance of mediation, sufficient to enable Plaintiffs' counsel to value the claims and understand the prospective Class's composition. (*Id.* ¶ 12.) This information, and the parties' prior investigations, litigation, and briefing, gave Plaintiffs' counsel an understanding of the claims and defenses sufficient to meaningfully conduct informed settlement discussions. (*Id.*).

The Settlement was not reached at the November 29, 2018 mediation. (*Id.*) Nonetheless, with the continued assistance of Judge West, after protracted and

lengthy negotiations, and immediately before oral argument before the Ninth Circuit in the Appeal, on December 5, 2018, the Parties were able to reach an agreement in principal. (*Id.* ¶ 15.) Accordingly, Plaintiff Wright moved to dismiss his appeal at oral argument, and the Ninth Circuit did not rule on the appeal. (9th Cir. Case No. 17-55928, ECF 38.)

The Parties then engaged in additional and extensive months long negotiations, through many telephone discussions, to finalize and memorialize all aspects of the Settlement Agreement, including each of its exhibits. (Ahdoot Decl. ¶¶ 16-17.) Also, after a competitive bidding process amongst well known national settlement administration companies, the Parties engaged Epiq to advise regarding the mechanics of the Settlement, the notice process, and to administer the Settlement. (*Id.* ¶¶ 18-19.) The notice program and each document comprising the notice were extensively negotiated and exhaustively refined, with input from experts at Epiq, to make them easy to read and understand. (*Id.*; *see also* generally Declaration of Cameron Azari filed concurrently herewith.)

### III.   TERMS OF THE SETTLEMENT

#### A.   The Class Definition

The Settlement Class is defined as:

All Persons in the United States who purchased a paid subscription from Sirius XM (or one of its predecessors) that was marketed as a "lifetime plan" or "lifetime subscription." Excluded from the Class are: Sirius XM and its parents, subsidiaries, or any entities in which it has a controlling interest, as well as Sirius XM's officers, directors, employees, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded are any Judges to whom this case is assigned as well as their judicial staff and immediate family members.

(SA ¶ 33.)

The Settlement Class currently consists of approximately 964,000 individuals. As of the execution date of the Settlement Agreement, approximately

838,000 of whom have Active Lifetime Subscriptions[2] ("Active Subscribers"), and approximately 126,000 of whom have Inactive Lifetime Subscriptions[3] ("Inactive Subscribers"). (SA ¶¶ 2, 19; *see also* SA Section I, Recitals.)

### B.   The Settlement Benefits

Under the Settlement, Sirius XM agrees to: (1) allow Inactive Subscribers to reactivate their Lifetime Subscriptions at no charge;[4] (2) allow Active Subscribers and Inactive Subscribers who have opted to reactivate their account (pursuant to this Settlement) to transfer their Lifetime Subscriptions to other Devices an *unlimited* number of times; (3) not charge more than $35 for any transfer of a Lifetime Subscription to other Devices (a reduction of the current fee of $75 per transfer), and (4) provide Inactive Subscribers who choose to reactivate with access to Sirius XM's Internet streaming service at no cost (this feature is currently available to Active Lifetime Subscribers). Inactive Subscribers may choose to forgo the relief above and, instead, be paid a $100 cash payment. Sirius

---

[2]   The Settlement Agreement defines an Active Lifetime Subscription as a Lifetime Subscription that, according to Sirius XM's records, is associated with a Device that was activated to receive Sirius XM's satellite radio service prior to June 5, 2020 and that continues to be authorized to receive the Sirius XM satellite radio service. (SA ¶ 2.)

[3]   The Settlement Agreement defines an Inactive Lifetime Subscription as a Lifetime Subscription that, according to Sirius XM's records, as of June 5, 2020, 2020, is no longer associated with a Device that was activated to receive Sirius XM's satellite delivered radio service. A Settlement Class Member who previously had a Lifetime Subscription, but whose Lifetime Subscription was converted to a yearly, monthly, or some other subscription is deemed to have an Inactive Lifetime Subscription. (SA ¶ 19.)

[4]   Inactive Lifetime Subscribers who elect to cancel another paid Sirius XM subscription at no charge when they reactivate their Lifetime Subscription will receive a *pro rata* refund of any amounts paid for future service unless such paid subscription purchased included bundled equipment. (SA ¶ 66(c)(i); Ex. B (Long Form Notice FAQ 8).)

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

1
2
3
4

XM has also agreed to pay for the costs of the settlement notice and administration, court-approved attorneys' fees and expenses up to $3.5 million, and Service Payments for each Named Plaintiff and Paul Wright[5] up to $5,000 each. (SA ¶¶ 45, 76-78.)

5
6
7

Active Subscribers will receive the benefits of the Settlement automatically. In the event an Active Subscriber does not opt out, then he or she will be subject to the releases set forth in the Settlement.

8
9
10
11
12
13
14
15
16

Inactive Subscribers must submit a Claim Form to obtain the Settlement's benefits (i.e. reactivation of the Lifetime Subscription or a $100 payment). (*Id.* ¶ 68(a) and Ex. A (Claim Form).) Claim Forms may be submitted on-line (through the Settlement Website) or by mail. In the event an Inactive Subscriber does not submit a Claim Form, and does not opt out, then he or she will be subject to the releases set forth in the Settlement. Settlement Class Members will be provided an opportunity to determine whether they have either Inactive Lifetime Subscriptions or Active Lifetime Subscriptions (as of the Settlement Agreement's date) *via* a tool on the Settlement Website's landing page. (*Id.* ¶ 51.)

17
18
19
20
21
22

Defendant offered Lifetime Subscriptions for prices ranging from $357.54 to $755.00. (Ahdoot Decl. ¶ 25; Tregillis Decl. ¶ 21 & Ex. B.) Given their relatively high cost and value, the value of each Lifetime Subscription that no longer expires, or that is reactivated, pursuant to the terms of the Settlement, is significant. (Tregillis Decl. ¶¶ 18-36.) In addition, the reduction of the Device transfer fee from $75 to $35 – for at least the 838,000 Active Subscribers –

23
24
25
26
27
28

[5]     Pursuant to Sirius XM's Motion to Compel Arbitration, Plaintiff Paul Wright was ordered to participate in individual arbitration against Sirius XM. (*Wright*, ECF 59.) Mr. Wright dismissed his appeal of this Order after a settlement in principle was reached. Rather than pursuing arbitration, however, Paul Wright will participate in the Settlement albeit not as a Class Representative. In addition to the Settlement, Mr. Wright has also agreed to a Covenant Not to Sue Sirius XM. (SA ¶ 91, Ex. H.)

1  increases the value of the Settlement significantly. Factoring all these data points,
2  Plaintiffs' expert values the Settlement's benefits at $96.4 million (this valuation
3  does not include any amounts paid for Notice and Administration, Service
4  Payments, and Attorneys' Fees and Expenses, all of which are to be paid by Sirius
5  XM in addition to benefits described above). (Tregillis Decl. ¶ 35.)

6  **C.   The Settlement Administrator**

7  The Parties propose that Epiq, an experienced and reputable national class
8  action administrator, serve as Settlement Administrator to provide notice;
9  administer the claim process; distribute payments; and provide other services
10  necessary to implement the Settlement. (SA ¶¶ 32, 41-44, 46; *see also* SA Ex. E
11  (Declaration of Cameron R. Azari, Esq. Re Settlement Notice Plan ("Azari Decl.")
12  ¶¶ 5-9.) Defendant agrees to pay all notice and administration expenses, and this
13  payment will not reduce any of the benefits available to Settlement Class
14  Members. (SA ¶ 45.)

15  **D.   The Notice Plan**

16  Direct Notice of the Settlement will be provided by email (with follow up
17  physical US Mail for "bounced" emails) to every Class Member that Sirius XM
18  can identify in its records. (*Id.* ¶ 52 and Ex. E (Azari Decl. ¶¶ 14-18 and
19  Attachments 3 and 4.) This notice will be augmented by an internet notice
20  campaign and publication. (SA ¶ 53 and Ex. E (Azari Decl. ¶¶ 19-20).) The
21  Settlement Administrator will begin disseminating notice no later than 45-days
22  after this Court enters the Preliminary Approval Order granting this motion (the
23  "Notice Date").

24  No later than fourteen (14) days after the Court enters the Preliminary
25  Approval Order, Defendant will provide the Settlement Administrator with a list
26  of all potential Settlement Class Members that exist in their records, including their
27  physical and email addresses, and whether their Lifetime Subscriptions are
28  Inactive or Active. (SA ¶ 50.) Then, on or before the Notice Date, the Settlement

Administrator will email the Summary Notice to the email addresses provided by Defendant. (*Id.* ¶ 52(a).) The Settlement Administrator then will mail Summary Notices to all Settlement Class Members with respect to whom the email "bounces back," or for whom there is no physical address. (*Id.* ¶ 52(b)-(d).)

The Settlement Administrator will make every effort to update physical addresses whenever emails and subsequent physical mailings appear undeliverable. (*Id.* ¶ 52(b)-(d).) Ten (10) days prior to the Claim Deadline, the Settlement Administrator will issue email reminder notices to all Inactive Subscribers who have not submitted a Claim Form and have a valid email address. (*Id.* ¶ 54.) The Settlement Administrator will publish notice over the Internet, in an effort to reach any Settlement Class Members who are not reached through the direct notice efforts described above. (*Id.* ¶ 53.) Finally, the Settlement Administrator will provide the required notice of the Settlement to various governmental agencies in compliance with the Class Action Fairness Act. (*Id.* ¶ 41.)

All of the electronic and physical Notice forms will direct Settlement Class Members to the Settlement Website, at www.LifeTimeSiriusXMSettlement.com. There, Settlement Class Members will be able to review the Long Form Notice, submit a claim, determine whether their account is active or inactive as of the date of the Settlement Agreement (*i.e.* June 5, 2020), review key filings from the case docket (including all briefing regarding Settlement approval, attorneys' fees, and the Court's orders thereon), and review the answers to Frequently Asked Questions (FAQs). (*Id.* ¶ 51.)

### E. Settlement Payments to Inactive Subscribers

Within thirty (30) days after the Effective Date, Defendant will pay the Settlement Administrator all money required to make cash payments to Inactive Subscribers who submitted a valid Claim Form electing the $100 payment instead of reactivation. (SA ¶ 70.) These payments will be made by check sent via US

1    Mail within sixty (60) days after the Effective Date. (*Id.* ¶ 71.) Settlement Class

2    Members who receive checks will have 180 days to cash their checks. (*Id.* ¶ 71,

3    73.) Any residual (*i.e.* amount of checks mailed and uncashed after 180 days) will

4    be paid back to Sirius XM. (*Id.* ¶ 73.)

5    **F.   Proposed Class Representative Service Payments**

6    The Settlement would not have been possible without the time and effort of

7    each of the four Named Plaintiffs, as well as Paul Wright, who stepped forward on

8    behalf of other Settlement Class Members, accepting the risk of negative publicity

9    and the responsibility of cooperating in the litigation and discovery in order to

10   right the wrong that affected them and so many others. Accordingly, Plaintiffs'

11   counsel will ask that the Court award each of them a $5,000 Service Payment, and

12   Defendant agrees not to oppose any such request. (SA ¶ 75.) Defendant will pay

13   the Court approved Service Payments, which will not reduce the benefits available

14   to Settlement Class Members. (*Id.*)

15   As set forth in their declarations, these Plaintiffs, and Paul Wright, have

16   been active participants in the litigation. They investigated the matter prior to and

17   after retaining their respective attorneys, participated in the plaintiff vetting

18   process implemented by Plaintiffs' counsel, reviewed and approved their original

19   complaints, participated in preparing initial disclosures, understood that they may

20   have to sit for a deposition, kept in contact with counsel to monitor the progress of

21   the litigation, and reviewed and communicated with their counsel regarding the

22   Settlement Agreement and its exhibits. (*See generally* concurrently filed

23   Declarations of Philip Alvarez, Randall Bettison, Marc Kelleher, Darlene Vaugh,

24   and Paul Wright; *see also* Ahdoot Decl. ¶¶ 26-27.)

25

26

27

28

1

### G.     Attorneys' Fees and Costs

As part of the Settlement, Class Counsel agree not to seek an award of fees in excess of $3.5 million, and Defendant agrees not to oppose such a request. (SA ¶ 76.) Defendant has agreed to pay any amount awarded by the Court (up to a maximum of $3.5 million). This payment will not reduce the benefits available to Class Members.

Attorneys' fees were negotiated only after agreement was reached on all material terms of the Settlement. (Ahdoot Decl. ¶ 17.) *See also In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 445 (3d Cir.), *as amended* (May 2, 2016) (deferring discussion of fees until after material settlement terms are agreed upon is a practice routinely approved by courts). Class Counsel may opt to be paid the Attorneys' Fees and Expenses awarded by the Court, prior to the Effective Date, provided they all execute a Stipulated Undertaking. (SA ¶ 77 and Ex. G.)

The Proposed Preliminary Approval Order provides that Class Counsel will file a motion for payment of attorneys' fees and expenses prior to the Final Approval Hearing and prior to the Opt-Out and Objection Deadline. Class Members will have the opportunity to comment on or object to the fee petition under Rule 23(h), consistent with Ninth Circuit authority. *See Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*, 618 F.3d 988, 993-94 (9th Cir. 2010).

### IV.    <u>PRELIMINARY APPROVAL IS APPROPRIATE</u>

#### A.   Legal Standards

"[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

### 1. Class Certification

Parties seeking class certification for settlement purposes must satisfy the requirements of FRCP 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S.Ct. 2231, 2248 (1997). "A court considering such a request should give the Rule 23 certification factors 'undiluted, even heightened, attention in the settlement context.'" *Sandoval v. Roadlink USA Pac., Inc*., No. EDCV 10-00973 VAP, 2011 WL 5443777, at *2 (C.D. Cal. Oct. 9, 2011) (quoting *Amchem*, 521 U.S. at 621). At the preliminary approval stage, "if a class has not [yet] been certified, the parties must ensure that the court has a basis for concluding that it likely will be able, after the final hearing, to certify the class." Fed. R. Civ. P. 23, Adv. Comm. Notes to 2018 Amendment.

A party seeking class certification must first demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345, 131 S.Ct. 2541, 2548 (2011).

### 2. Fairness of the Proposed Class Action Settlement

Rule 23(e) provides that "the claims, issues, or defenses of a certified class may be settled. . . only with the court's approval." Fed. R. Civ. P. 23(e). "The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class," and if, upon reviewing that information, the Court concludes that is likely "to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal," then the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." *Id.* This is the "preliminary approval"

1   decision that Plaintiffs now ask the Court to make. Fed. R. Civ. P. 23, Adv. Comm.

2   Notes to 2018 Amendment.

3     "The primary concern of [Rule 23(e)] is the protection of th[e] Class

4   Members, including the named plaintiffs, whose rights may not have been given

5   due regard by the negotiating parties." *Officers for Justice v. Civil Service Comm'n*

6   *of the City & Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982), *cert.*

7   *denied*, 459 U.S. 1217 (1983). The Court may approve a settlement agreement

8   "after a hearing and only on finding that it is fair, reasonable, and adequate." Fed.

9   R. Civ. P. 23(e)(2). District courts must consider various factors in assessing a

10  settlement proposal:

11    &bull; the strength of the plaintiffs' case;

12    &bull; the risk, expense, complexity, and likely duration of further litigation;

13    &bull; the risk of maintaining class action status throughout the trial;

14    &bull; the amount offered in settlement;

15    &bull; the extent of discovery completed and the stage of the proceedings;

16    &bull; the experience and views of counsel;

17    &bull; the presence of a governmental participant; and

18    &bull; the reaction of the Class Members to the proposed settlement.

19  *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004).

20    "[I]n the context of a case in which the parties reach a settlement agreement

21  prior to class certification, courts must peruse the proposed compromise to ratify

22  both the propriety of the certification and the fairness of the settlement." *Staton v.*

23  *Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). "Prior to formal class certification,

24  there is an even greater potential for a breach of fiduciary duty owed the class

25  during settlement. Accordingly, such agreements must withstand an even higher

26  level of scrutiny for evidence of collusion or other conflicts of interest than is

27  ordinarily required under Rule 23(e) before securing the court's approval as fair."

28  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

Ultimately, "[s]trong judicial policy favors settlements." *Churchill*, 361 F.3d at 576 (ellipses and quotation marks omitted) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

Approval of a class action settlement requires a two-step process: preliminary approval followed by a later, final approval. *See West v. Circle K Stores, Inc.*, 2006 WL 1652598, *2 (E.D. Cal. 2006) ("[A]pproval of a class action settlement takes place in two stages."); *Tijero v. Aaron Bros., Inc.*, 2013 WL 60464, *6 (N.D. Cal. 2013) ("The decision of whether to approve a proposed class action settlement entails a two-step process."). At the preliminary approval stage, the court "evaluate[s] the terms of the settlement to determine whether they are within a range of possible judicial approval." *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 472 (E.D. Cal. 2009). Although "[c]loser scrutiny is reserved for the final approval hearing[,]" *Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, *7 (N.D. Cal. 2011), "the showing at the preliminary approval stage—given the amount of time, money and resources involved in, for example, sending out new class notices—should be good enough for final approval." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016).

## B.   Discussion

### 1.   Class Certification

As shown below, the Settlement Class meets the requirements of Rule 23 and, accordingly, the Court should direct notice informing Settlement Class Members that the Court "likely will be able to" certify the Settlement Class for purposes of judgment on the appeal. Fed. R. Civ. P. 23(e)(1)(B).

### i.   The Class Is Sufficiently Numerous

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). Joinder is usually impracticable if a class is "large in numbers." *See Jordan v. Cnty. of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir.), *vacated on other grounds*, 459 U.S. 810 (1982) (class sizes of 39,

14

64, and 71 are sufficient to satisfy the numerosity requirement). Joinder of all 964,000 Settlement Class Members would be impractical, to say the least. The Settlement Class is sufficiently numerous.

### ii.    There Are Common Questions of Law and Fact

The commonality requirement is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "This does not, however, mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single significant question of law or fact." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013), *cert. denied*, 135 S.Ct. 53 (2014) (emphasis and internal quotation marks omitted); *see Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) (characterizing commonality as a "limited burden," stating that it "only requires a single significant question of law or fact"). Proof of commonality under Rule 23(a) is "less rigorous" than the related preponderance standard under Rule 23(b)(3). *See Mazza*, 666 F.3d at 589.

Here, there are many common issues of law and fact that affect the Class uniformly and satisfy the commonality requirement, including: The terms and conditions covering Defendant's sale of Lifetime Subscriptions to Settlement Class Members; Defendant's communication of those terms to Settlement Class Members; whether Defendant's representations concerning its Lifetime Subscriptions were misleading in any way; and whether Settlement Class Member's claims are subject to individual arbitration.

### iii.   The Class Representatives' Claims are Typical of Those of Other Class Members

Rule 23(a)(3) requires that the Class Representatives' claims be typical of those of the Class. The typicality requirement of Rule 23 is satisfied if the claim of the named class representative arises "from the same course of conduct that gives rise to the claims of unnamed Class Members to bring individual actions. *Thomas v. Baca*, 231 F.R.D. 397, 401 (C.D. Cal. 2005); *Hanlon v. Chrysler Corp.*,

150 F.3d 1011, 1020 (9th Cir. 1998) (describing standard for typicality as permissive; claims typical if "reasonably co-extensive with those of absent Class Members" although "they need not be substantially identical."). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other Class Members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks and citation omitted).

Here, the claims of the named Plaintiffs are typical of the claims of the Settlement Class. Plaintiffs' and Class Members' claims arise from the same nucleus of facts and are based on the same legal theory: that Defendant's sale of Lifetime Subscriptions was misleading.

### iv. Class Representatives and Class Counsel Adequately Represent Class Members

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class," which requires (1) that the named Plaintiff not have conflicts of interest with the proposed Class; and (2) that the named Plaintiff be represented by qualified and competent counsel. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 607 (9th Cir. 2018). "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis*, 657 F.3d at 985; *see also Amchem*, 521 U.S. at 625-26 ("The adequacy inquiry under Rule 23(a) . . . serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members.").

Plaintiffs and their counsel are adequate. First, the proposed Class Representatives do not have any conflicts of interest with the absent Class Members, as their claims are coextensive with those of the Class Members, both Active and Inactive Subscribers. *General Tel. Co. v. Falcon*, 457 U.S. 147, 157-58, fn. 13 (1982). They have read and understood the basic allegations of the CAC and are willing to prosecute this matter on behalf of the Class. (Ahdoot Decl. ¶¶ 26-27; *see also generally* concurrently filed proposed Class Representative Declarations of Philip Alvarez, Randall Bettison, Marc Kelleher, and Darlene Vaugh.) As detailed in their declarations, the proposed Class Representatives have been consistently involved in this litigation, providing valuable insight and useful facts allowing Class Counsel to effectively litigate this action, perform discovery, and negotiate this Settlement. Further, all proposed Class Representatives were clearly advised of and understand their obligations as Class Representatives. Plaintiffs regularly communicated with Class Counsel regarding various issues pertaining to this case and will continue to do so until the Settlement is approved, and its administration completed. *Id.*

Second, proposed Class Counsel are qualified and experienced in conducting class action litigation, especially cases involving consumer protection. (Ahdoot Decl. ¶¶ 29-37 & Ex. B; Declaration of Keith S. Dubanevich ("Dubanevich Decl.") ¶¶ 3-5; Declaration of Cornelius Dukelow ("Dukelow Decl.") ¶¶ 2-5.) Proposed Class Counsel vigorously prosecuted this action and will continue to do so through final approval. Proposed Class Counsel identified and investigated the claims in this lawsuit and the underlying facts, and successfully negotiated this Settlement. (Ahdoot Decl. ¶¶ 12-16, 21-24; Dukelow Decl. ¶¶ 4-5; Dubanevich Decl. ¶ 6.) *See also In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002) (a court evaluating adequacy of representation may examine "the attorneys' professional qualifications, skill, experience, and resources . . . [and] the attorneys' demonstrated performance in the suit itself"); *Barbosa v.*

17

Case No. 2:18-cv-08605-JVS-SS

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

1   *Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 443 (E.D. Cal. 2013) ("There is no

2   challenge to the competency of the Class Counsel, and the Court finds that

3   Plaintiffs are represented by experienced and competent counsel who have

4   litigated numerous class action cases.")).

5
6        **v.   The Settlement Class Meets the Requirements of Rule 23(b)(3)
                Because Common Issues of Law and Fact Predominate**

7        In addition to the requirements of Rule 23(a), at least one of the prongs of

8   Rule 23(b) must be satisfied. Rule 23(b)(3) allows certification of a class if the

9   Court finds that "questions of law or fact common to class members predominate

10  over any questions affecting only individual members, and that a class action is

11  superior to other available methods for fairly and efficiently adjudicating the

12  controversy." Fed. R. Civ. P. 23(b)(3). In the settlement context, the manageability

13  criterion of Rule 23(b)(3)(D) does not apply. *Amchem*, 521 U.S. at 620.

14       "Common questions that yield common answers" and are "apt to drive the

15  resolution of this case" predominate over any individual issues. *Dukes*, 564 U.S.

16  at 345. Here, The Amended Consolidated Class Action Complaint alleges a

17  common law breach of contract cause of action for the nationwide class.  The

18  Complaint alleges that Sirius XM did not honor the terms of the Lifetime

19  Subscriptions it sold to all Class Members. These common issues of law and fact

20  include: the terms and conditions covering Sirius XM's sale of Lifetime

21  Subscriptions to Settlement Class Members; Sirius XM's communication of those

22  terms to Settlement Class Members; whether Sirius XM's representations

23  concerning its Lifetime Subscriptions were misleading in any way; and whether

24  Settlement Class Member's claims are subject to individual arbitration.

25       Whether Defendant breached a contract with the Class Members — the sole

26  cause of action in the Complaint — is a straightforward legal question that is

27  common to all Class Members. Indeed, even if all fifty states' law applies to the

28  respective residents of those states, this question still predominates because the

18

elements of this cause of action do not vary state-by-state in any significant respect. (Ahdoot Decl. ¶ 24 and Ex. A, 50-State survey of breach of contract law).

Finally, if the proposed Settlement Agreement is approved, there will be no need for a trial, and thus manageability of the classes for trial is irrelevant. *Amchem*, 521 U.S. at 620. A class settlement is superior to other methods of litigation where, as here, class treatment will promote greater efficiency and no realistic alternative exists. *See Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001); *Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 448 (N.D. Cal. 2008).

## 2.  The Proposed Settlement Should be Preliminarily Approved

### i.    The Strength of Plaintiffs' Case

Plaintiffs are confident that they would succeed if this case proceeded to trial. However, given the heavy obstacles and inherent risks Plaintiffs face with respect to their claims — and even getting to trial —the substantial benefits the Settlement provides favor preliminary approval of the Settlement. *See* pp. 6-8, *supra*.

### ii.   The Risk, Expense, Complexity, and Likely Duration of Further Litigation

This factor overwhelmingly weighs in favor of preliminary approval of the Settlement. The risk, expense, complexity, and likely duration of further litigation in this Action is substantial.

### iii.  The Risk of Maintaining Class Action Status Throughout the Trial

Class certification has not yet been granted in this Action. Given Defendant's insertion of class action waivers into the terms and conditions it contends govern all Settlement Class Members' Lifetime Subscriptions, attaining and maintaining class action status would be risky.

Even if Plaintiffs obtained class certification, there is no guarantee that the class action status would be maintained. Defendant would likely appeal any decision by the Court, resulting in additional delay to Class Members.

### iv.    The Amount Offered in Settlement

Through this Settlement, Settlement Class Members will get substantial benefits from the Lifetime Subscriptions Plaintiffs always contended they were owed. Active Subscribers, as well as those Inactive Subscribers who choose to reactivate those subscriptions, will be able to transfer their Lifetime Subscriptions to different Devices an unlimited number of times, at a reduced price of $35, which is less than half of the $75 Defendant currently charges for the three transfers it allows under its current alleged terms and conditions. As Plaintiffs' expert opines, the Settlement fairly is valued at $96.4 million. Accordingly, this factor weighs heavily in favor of preliminary approval.

### v.    The Extent of Discovery Completed and the Stage of the Proceedings

Although the *Wright* action did not proceed far into the discovery period, given this Court's ruling on Defendant's Motion to Dismiss and to Compel Arbitration, that action was intensely litigated in this Court and in the Ninth Circuit before the Settlement finally was reached. Ultimately, Defendant disclosed substantial evidence under mediation privilege, and thus the extent of discovery completed is more extensive than the stage of proceedings alone might suggest. (Ahdoot Decl. ¶ 12.) Again, this factor supports preliminary approval.

### vi.    The Experience and Views of Counsel

Plaintiffs are represented by attorneys who have substantial experience serving as counsel in numerous complex actions. (Ahdoot Decl. ¶¶ 29-37 & Ex. B; Dukelow Decl. ¶¶ 2-5; Dubanevich Decl. ¶¶ 3-5.) They fully endorse the Settlement as fair, reasonable, and adequate and in the best interests of the Class. (Ahdoot Decl. ¶ 38; Dukelow Decl. ¶ 5; Dubanevich Decl. ¶ 6.)

vii.    **The Presence of a Governmental Participant**

No governmental agency is involved in this litigation, but the Attorney General of the United States and Attorneys General of each State will be notified of the proposed Settlement pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and will have an opportunity to raise any concerns or objections. (SA ¶ 41.)

viii.   **The Reaction of the Class Members to the Proposed Settlement**

The Settlement Class has yet to be notified of the Settlement and given an opportunity to object, so it is premature to assess this factor. Before the Final Approval Hearing, the Court will receive and be able to review all objections or other comments received from Settlement Class Members, along with a full accounting of all requests for exclusion.

**3.  The Settlement was the Product of Arm's-Length Negotiations**

In addition to the above factors, the Court also must be satisfied that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset*, 654 F.3d at 946-47. Here, there are no indicia of collusion.

When negotiations began, Plaintiffs had a clear view of the strengths and weaknesses of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement. The Parties engaged in extensive arm's length negotiations, including a full-day mediation session and extensive negotiations after that, with the assistance of Judge West. (Ahdoot Decl. ¶ 11.)

Plaintiffs began to negotiate attorney fees only after the Parties reached an agreement on all other terms of the Settlement with the assistance of Judge West. (Ahdoot Decl. ¶ 17; Dukelow Decl. ¶ 4; Dubanevich Decl. ¶ 6.) Any award of Attorneys' Fees and Expenses to Plaintiffs' counsel will not reduce the significant benefits inuring to Settlement Class Members. There is no indication of collusion or fraud in the settlement negotiations, and none exists.

1

### 4.  The Proposed Notice Is Appropriate

2      "The court must direct notice in a reasonable manner to all Class Members

3  who would be bound by the proposal." Fed. R. Civ. P. 23©(1). Federal Rule of

4  Civil Procedure 23(c)(2) requires the Court to "direct to Class Members the best

5  notice that is practicable under the circumstances, including individual notice to

6  all members who can be identified through reasonable effort," although actual

7  notice is not required. *Amchem*, 521 U.S. at 617; *Reppert v. Marvin Lumber &*

8  *Cedar Co.*, 359 F.3d 53, 56 (1st Cir. 2004); *Silber v. Mabon*, 18 F.3d 1449, 1454

9  (9th Cir. 1994). "The standard for the adequacy of a settlement notice in a class

10  action under either the Due Process Clause or the Federal Rules is measured by

11  reasonableness." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113 (2d

12  Cir.), *cert. denied*, 544 U.S. 1044 (2005). The best practicable notice is that which

13  is "reasonably calculated, under all the circumstances, to apprise interested parties

14  of the pendency of the action and afford them an opportunity to object." *Mullane*

15  *v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see Trotsky v. Los*

16  *Angeles Fed. Sav. & Loan Ass'n.*, 48 Cal.App.3d 134, 151-52 (1975) (same);

17  *Wershba v. Apple Comput., Inc.*, 91 Cal.App.4th 224, 252 (2001) ("As a general

18  rule, class notice must strike a balance between thoroughness and the need to avoid

19  unduly complicating the content of the notice and confusing Class Members.").

20  The notice should provide sufficient information to allow Class Members to decide

21  whether they should accept the benefits of the settlement, opt out and pursue their

22  own remedies, or object to its terms. *See Wershba*, 91 Cal.App.4th at 251-52.

23  "[N]otice is adequate if it may be understood by the average class member."

24  *Warner v. Toyota Motor Sales, U.S.A., Inc.*, No. CV152171FMOFFMX, 2016 WL

25  8578913, at *14 (C.D. Cal. Dec. 2, 2016) (quoting 4 Newberg on Class Actions §

26  11:53, at p. 167 (4th ed. 2013)).

27      Subject to Court approval, the Parties have selected Epiq Class Action &

28  Claims Solutions, Inc. as the Settlement Administrator. The notice program agreed

1   to by the Parties and approved by Epiq includes direct emails and physical mailings

2   to all Settlement Class Members, an internet campaign, and reminder emails to

3   Inactive Subscribers who have not submitted a Claim Form (to be transmitted 10

4   days prior to the Claim Deadline). The Settlement Administrator estimates that

5   notice will reach at least 90% of Settlement Class Members and that the Notice

6   Plan is the best notice practicable and satisfies all due process requirements.  (SA

7   Ex. E (Azari Decl. ¶¶ 13, 26-29).) This represents the best notice practicable, and

8   less extensive notice has been approved by courts in this Circuit. *Noll v. eBay, Inc.*,

9   309 F.R.D. 593, 605 (N.D. Cal. 2015); *Stone v. Howard Johnson Int'l, Inc.*, No.

10  12-CV-01684 PSG (MANX), 2015 WL 13648551, at *2 (C.D. Cal. June 15,

11  2015); *Abat v. Chase Bank USA, N.A.*, No. SACV 0701476-CJC (Anx), 2011 WL

12  13130637, at *6 (C.D. Cal. July 11, 2011).

13          The Long Form Notice (SA Ex. B) is clear, precise, informative, and meets

14  all of the necessary standards. (SA Ex. E (Azari Decl. ¶¶ 18, 24-25).) It includes

15  information such as the case caption; a description of the Settlement Class; a

16  detailed description of the Settlement's benefits and how to obtain them; a

17  description of the claims and the history of the litigation; a description of the

18  Settlement and the claims being released; the names of proposed Class Counsel; a

19  statement of the maximum amount of attorneys' fees that will be sought by

20  proposed Class Counsel; the amount proposed Class Counsel will seek for Service

21  Payments; the Final Approval Hearing date; a description of Settlement Class

22  Members' opportunity to appear at the hearing; a statement of the procedures and

23  deadlines for requesting exclusion and filing objections to the Settlement; and the

24  manner in which to obtain further information. *In re Prudential Ins. Co. of Am.*

25  *Sales Practices Litig.*, 962 F. Supp. 450, 496 (D.N.J. 1997), *aff'd*, 148 F.3d 283

26  (3d Cir. 1998); s*ee also* Manual For Complex Litigation § 30.212 (4th ed. 2004)

27  (Rule 23© notice designed to be a summary of the litigation and settlement to

28

apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings).

The Notice Plan was reviewed and analyzed to ensure it meets the requisite due process requirements. (SA Ex. E (Azari Decl. ¶¶ 10-13).) Indeed, the program here is consistent with, and exceeds, other similar court-approved notice plans, the requirements of FRCP 23©(2)(B), and the Federal Judicial Center ("FJC") guidelines for adequate notice. (*Id.* ¶ 24.) As there is no alternative method of notice that would be more practicable here or more likely to notify Settlement Class Members, the proposed procedure for providing notice and the content of the Class Notice constitute the best practicable notice to Settlement Class Members and complies with the requirements of Due Process.

### 5.  The Claim Process Is Easy and not Cumbersome

The Claim process is only required for the minority of Settlement Class Members who are Inactive Subscribers. It is straightforward and requires nothing more than logging on to the Settlement Website and submitting a Claim there, or a Settlement Class Member may print the Claim form from that website and mail a filled-in hardcopy to the Settlement Administrator if they prefer. (SA ¶ 68(a)-(b).)

### 6.  The Court Should Set Settlement Deadlines and Schedule a Final Approval Hearing

In connection with preliminary approval, the Court must set a Final Approval Hearing date, dates for mailing the Notices, and deadlines for objecting to the Settlement and filing papers in support of the Settlement. Plaintiffs propose the schedule set forth in the Notice of Motion (above), which the Parties believe will provide ample time and opportunity for Class Members to decide whether to request exclusion or object.

## V.   <u>CONCLUSION</u>

Plaintiffs respectfully request that the Motion be granted and the Court enter an order substantially in the form accompanying the Settlement as Exhibit F thereto: (1) notifying Settlement Class Members that the Court is likely to certify the proposed Settlement Class; (2) preliminarily approving the proposed class action Settlement; (3) appointing class representatives and Class Counsel; (4) appointing the notice and Settlement Administrator; (5) approving the class Notice and related Settlement administration documents; and (6) approving the proposed class settlement administrative deadlines and procedures, including the proposed Final Approval Hearing date and procedures regarding objections, exclusions and submitting Claim Forms.

Respectfully submitted,

**AHDOOT & WOLFSON, PC**

Dated: June 11, 2020        By:     */s/ Robert Ahdoot*
                                   Robert Ahdoot
                                   *rahdoot@ahdootwolfson.com*
                                   Tina Wolfson
                                   *twolfson@ahdootwolfson.com*
                                   Theodore Maya
                                   *tmaya@ahdootwolfson.com*
                                   10728 Lindbrook Drive
                                   Los Angeles, California 90024
                                   Tel: (310) 474-9111
                                   Fax: (310) 474-8585

                                   Cornelius P. Dukelow* (OK Bar 19086
                                   *cdukelow@abingtonlaw.com*
                                   **ABINGTON COLE + ELLERY**
                                   320 S. Boston Avenue, Suite 1130
                                   Tulsa, Oklahoma 74103
                                   Tel & Fax: (918) 588-3400

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Keith S. Dubanevich* OR Bar 975200
*kdubanevich@stollberne.com*
**STOLL STOLL BERNE LOKTING &**
**SHLACHTER P.C.**
209 SW Oak Street, Suite 500
Portland, Oregon 97204
Tel: (503) 227-1600; Fax: (503) 227-6840

*Attorneys for Plaintiffs and Proposed
Class Counsel*

**Pro Hac Vice* application pending

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL