Tina Wolfson, CA Bar No. 174806
*twolfson@ahdootwolfson.com*
Robert R. Ahdoot, CA Bar No. 172098
*rahdoot@ahdootwolfson.com*
Theodore Maya, CA Bar No. 223242
*tmaya@ahdootwolfson.com*
Bradley K. King, CA Bar No. 274399
*bking@ahdootwolfson.com*
AHDOOT & WOLFSON, PC
2600 West Olive Avenue, Suite 500
Burbank, California 91505
Tel: (310) 474-9111; Fax: (310) 474-8585

[*Additional Counsel on Signature Pages*]

*Class Counsel*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| PHILIP ALVAREZ, RANDALL BETTISON, MARC KELLEHER, and DARLENE VAUGH, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SIRIUS XM RADIO INC.,<br><br>Defendant. | Case No. 2:18-cv-08605-JVS-SS<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND EXPENSES AND FOR SERVICE PAYMENTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hon. James V. Selna, presiding<br><br>Date:     January 25, 2021<br>Time:     1:30 PM<br>Location: Courtroom 10C<br>          411 West 4th Street,<br>          Santa Ana, CA 92701<br><br>See, *lifetimesiriusxmsettlement.com* for attendance details and dial in information for video conference<br><br>[Decls. of R. Ahdoot, P. Alvarez, R. Bettison, K. Dubanevich, C. Dukelow, M. Kelleher, D. Vaugh and P. Wright filed concurrently] |

1

## <u>NOTICE OF MOTION AND MOTION</u>

2

3
**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

4

5      **PLEASE TAKE NOTICE** that on January 25, 2021 at 1:30 p.m., in

6    Courtroom 10C of the above-captioned Court before the Honorable James V. Selna,

7    Plaintiffs Philip Alvarez, Randall Bettison, Marc Kelleher, and Darlene Vaugh

8    (collectively, "Plaintiffs") will and hereby do move for an Order awarding: (a) a

9    Service Payment of $5,000 to each Plaintiff and Paul Wright; (b) Class Counsel's

10    attorneys' fees in the amount of $3,470,984.63, which amounts to 3.6% of the

11    estimated value of the Settlement's benefits (and a multiplier of 2.1 of Class

12    Counsel's collective lodestar of $1,646,825.25); and (c) and reimbursement of

13    litigation expenses in the amount of $29,015.37. Sirius XM's payment of these

14    amounts will not in any way reduce the total benefits available to the Class through

15    the Settlement.

16      Please check www.lifetimesiriusxmsettlement.com prior to the hearing for

17    attendance procedures, including details regarding dial in information via video

18    conference.

19      Plaintiffs respectfully request that the Court grant this motion because: (a)

20    the Service Payments are modest and justified in light of Plaintiffs' commitment to

21    the case; (b) the requested attorneys' fees are fair and reasonable because Class

22    Counsel were able to achieve an extraordinary result through a Settlement that

23    provides a remedy to all Settlement Class Members nationwide in a case that faced

24    extremely high risks if litigation continued; (c) the requested fees comport with

25    Ninth Circuit case law developed in similar complex litigation; and (d) the expenses

26    for which reimbursement is sought were reasonable and necessarily incurred in

27    connection with the prosecution of this Action.

28

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declarations of Robert Ahdoot, Philip Alvarez, Randall Bettison, Keith S. Dubanevich, Cornelius P. Dukelow, Marc Kelleher, Darlene Vaugh and Paul Wright, the Settlement Agreement and Release previously filed with the Court (ECF No. 68), all papers filed in support thereof, and such evidence and argument as the Court may consider.

Dated: November 16, 2020        Respectfully Submitted,

**AHDOOT & WOLFSON, PC**

By:    */s/ Robert Ahdoot*

Tina Wolfson
*twolfson@ahdootwolfson.com*
Robert Ahdoot
*rahdoot@ahdootwolfson.com*
Theodore W. Maya
*tmaya@ahdootwolfson.com*
Bradley K. King
*bking@ahdootwolfson.com*
2600 West Olive Avenue, Suite 500
Burbank, California 91505
Tel: (310) 474-9111; Fax: (310) 474-8585


Cornelius P. Dukelow
(admitted *pro hac vice*)
*cdukelow@abingtonlaw.com*
**ABINGTON COLE + ELLERY**
320 S. Boston Avenue, Suite 1130
Tulsa, Oklahoma 74103
Telephone & Facsimile: (918) 588-3400

Keith S. Dubanevich
(admitted *pro hac vice*)
*kdubanevich@stollberne.com*
**STOLL STOLL BERNE LOKTING &
SHLACHTER P.C.**
209 SW Oak Street, Suite 500
Portland, Oregon 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840

*Attorneys for Plaintiffs and Class Counsel*

MOTION FOR ATTORNEYS' FEES & EXPENSES AND FOR SERVICE PAYMENTS

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ......................................................................................... 1

II.   BACKGROUND .......................................................................................... 3

    A.  Class Counsel Devoted Substantial Time and Resources Investigating,
Commencing, and Prosecuting the Claims Alleged in this Action ......... 3

    B.  Class Counsel Engaged in Extensive Arms'-Length Settlement
Discussions and Negotiated All Aspects of the Settlement ................... 6

    C.  Class Counsel Obtained Preliminary Settlement Approval and
Implemented the Court-Approved Notice Plan ..................................... 8

    D.  Class Counsel Achieved a Strong Result for the Class .......................... 9

    E.  Settlement Administration Costs, Attorneys' Fees and Expenses,
and Service Payments ......................................................................... 11

    F.  Release .................................................................................................. 11

III.  ARGUMENT .............................................................................................. 11

    A.  Class Counsel's Fee Request Is Fair, Reasonable, and Adequate and
Should Be Approved ............................................................................ 11

       1.  The Requested Fee Is Reasonable Under the Percentage Method ... 12

       2.  The *Vizcaino* Factors Support the Award Requested ..................... 14

          a.  Class Counsel Achieved an Excellent Recovery
for Plaintiffs ....................................................................... 14

          b.  Plaintiffs Faced Significant Risks in this Litigation ............. 15

          c.  Successfully Prosecuting This Matter Required Significant
Skill and Effort on the Part of Class Counsel ...................... 15

          d.  Class Counsel Assumed Considerable Risk Litigating
on an Entirely Contingent Basis ........................................... 17

          e.  The Awards in Similar Cases Supports the
Reasonableness of the Requested Attorneys' Fees ............... 18

        f.  The Reaction of the Class to Date Is Overwhelmingly
            Positive .................................................................................. 19
    3.  A Lodestar Cross-Check Confirms the Reasonableness
        of the Requested Fees ...................................................................... 19
        a.  The Number of Hours Claimed Is Reasonable...................... 19
        b.  Class Counsel's Hourly Rates Are Reasonable.................... 21
        c.  The Multiplier Is Justified Given the Results Obtained, the
            Complexity of the Issues, and the Contingent Nature of the
            Representation ...................................................................... 21
  B.  Class Counsel Are Entitled to Reimbursement of Their Reasonable
      Litigation Expenses ................................................................................ 24
  C.  The Requested Service Payments Are Reasonable and Justified.......... 24
IV.  CONCLUSION ............................................................................................ 25

MOTION FOR ATTORNEYS' FEES & EXPENSES AND FOR SERVICE PAYMENTS

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>Cases</u>

*Alyeska Pipeline Serv. Co. v. Wilderness Soc.*,
   421 U.S. 240, 275 (1975) ............................................................... 12

*Barbosa v. Cargill Meat Sols. Corp.*,
   297 F.R.D. 431 (E.D. Cal. 2013) ............................................... 16, 19

*Been v. O.K. Industries, Inc.*,
   No. 02-cv-285, 2011 WL 4478766 (E.D. Okla. 2011) ................................. 23

*Boeing v. Van Gemert*,
   444 U.S. 427 (1980) ...................................................................... 13

*Boyd v. Bank of Am. Corp.*,
    No. 13-cv–561–DOC-JPR, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014).. 18

*Burden v. Select Quote Ins. Servs.*,
   No. 10-cv-5966, 2013 WL 3988771 (N.D. Cal. Aug. 2, 2013) ..................... 19

*Camacho v. Bridgeport Fin., Inc.*,
   523 F.3d 973 (9th Cir. 2008)................................................................ 21

*Craft v. County of San Bernardino*,
   624 F. Supp. 2d 1113 (C.D. Cal. 2008)................................................ 22

*Davis v. City and County of San Francisco*,
   976 F.2d 1536 (9th Cir. 1992).............................................................. 23

*Garner v. State Farm Mut. Auto. Ins. Co.*,
   No. 08-cv-1365, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .................... 24

*Hanlon v. Chrysler Group*,
   150 F.3d 1011 (9th Cir. 1998)............................................................. 21

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994)................................................................... 24

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ...................................................................... 14

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011)..........................................................passim

*In re Heritage Bond Litig.*,
   No. 02-ml-1475-DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005)............. 14

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..............................................passim

MOTION FOR ATTORNEYS' FEES & EXPENSES AND FOR SERVICE PAYMENTS

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*,
    No. 15-md-2672, 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ................. 22

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) .................................................................. 17, 23

*In re: Toyota Motor Corp Unintended Acceleration Litigation*,
    No. 10-ml-02151-JVS-FMO (C.D. Cal. June 17, 2013) ............................... 13

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975) .................................................................. 21, 23

*Knight v. Red Door Salons, Inc.*,
    No. 08–cv-1520, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ....................... 18

*Laffitte v. Robert Half Int'l Inc.*,
    1 Cal. 5th 480 (2016) ................................................................................ 12

*Lee v. JPMorgan Chase & Co.*,
    No. 13-cv-511-JLS-JPR, 2015 WL 12711659 (C.D. Cal. Apr. 28, 2015) ..... 18

*Leonard, et al. v. Baumer* (*In re United Energy Corp. Solar Power Modules*
    *Tax Shelter Inv. Sec. Litig.*), No. 87-cv-3962-RN-G,
    1989 WL 73211 (C.D. Cal. Mar. 9, 1989) .................................................. 24

*Lopez v. Youngblood*,
    No. 07-cv-474, 2011 WL 10483569 (E.D. Cal. Sept. 1, 2011) ..................... 13

*Nwabueze v. AT & T Inc.*,
    No. 09-cv-1529, 2013 WL 6199596 (N.D. Cal. Nov. 27, 2013) ................. 13

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ..................................................................... 24

*Romero v. Producers Dairy Foods, Inc.*,
    No. 05-cv-0484, 2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) ................... 18

*Schulein v. Petroleum Dev. Corp.*,
    No. 11-cv-1891-AG-AN, 2015 WL 12762256 (C.D. Cal. Mar. 16, 2015) .... 23

*Six Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) .............................................................. 12, 13

*Smith v. CRST Van Expedited, Inc.*,
    No. 10-cv-1116, 2013 WL 163293 (S.D. Cal. 2013) .................................... 18

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ................................................................ 12, 24

MOTION FOR ATTORNEYS' FEES & EXPENSES AND FOR SERVICE PAYMENTS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

*Van Vranken v. Atl. Richfield Co.*,
 901 F. Supp. 294 (N.D. Cal. 1995) ........................................................22, 25

*Vizcaino v. Microsoft Corp.*,
 290 F.3d 1043 (9th Cir. 2002)..................................................................passim

*Wershba v. Apple Computer*,
 91 Cal. App. 4th 224 (2001).........................................................................22

*Williams v. MGM-Pathe Commc'ns Co.*,
 129 F.3d 1026 (9th Cir. 1997)......................................................................13

## Other Authorities

4 Newberg and Conte, *Newberg on Class Actions* § 14.6 (4th ed. 2007).............18

Federal Judicial Center, Manual for Complex Litigation,
 § 27.71, 336 (4th ed. 2004) ..........................................................................15

## Rules

Fed. R. Civ. P. 23(e) .........................................................................................12

MOTION FOR ATTORNEYS' FEES & EXPENSES AND FOR SERVICE PAYMENTS

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Class Counsel from three law firms achieved an excellent nationwide class Settlement which secured unlimited transfers of the lifetime subscriptions at issue for all Class Members after four years of hard-fought litigation in four courts, frought with numerous litigation risks and a grant of a motion to compel arbitration on an individual basis. Class Counsel now respectfully request that the Court award $5,000 to each of the five Class Representatives as a Service Payment for their efforts in this litigation, and $3,500,000 in attorneys' fees and expenses as contingent compensation for counsel's efforts, to be paid by Defendant separately, without decreasing any class benefits.

Settlement Class Members ("Class Members") will get what they contended they were owed: unlimited transfers of satellite radio service to different Devices, at a reduced price of $35 per transfer, which is less than half of the $75 Defendant currently charges for each of the three transfers it allows. Plaintiffs' expert Christian Tregillis opines that the Settlement's benefits are worth at least $96,400,000.

This is an outstanding result given the substantial risks that the Class faced in every phase of the litigation, especially in light of Defendant prevailing on a motion to compel arbitration on an individual basis. Absent a settlement, this litigation would have been tied up in appeals for years and/or hundreds of individual arbitrations. By contrast, the Settlement restores the "Lifetime Subscriptions" now and provides Settlement Class Members with the relief they sought to obtain through this lengthy and high-risk litigation.

Class Counsel from three firms expended an enormous amount of effort across four federal cases to finally achieve this great result for the class. They conducted a detailed factual and legal investigation, interviewed hundreds of potential Class Members, and continued communication with Class Members throughout the case. They conducted repeated settlement attempts prior to the ruling on the motion to

compel arbitration, and while briefing the motion. They coordinated their litigation efforts among each other cordially and efficiently. After a fully briefed appeal, substantial exchanges of confirmed information among the Parties, additional informal settlement efforts, and a mediation before Honorable Carl J. West (Ret.) of JAMS, Class Counsel were able to finalize the material terms of the Settlement, literally minutes before oral argument before the Ninth Circuit. Months of arms'-length discussions and negotiations between the Parties about important settlement details followed, as counsel drafted and re-drafted the settlement documents.

The amount of attorneys' fees and expenses and Service Payments were negotiated with Judge West's assistance and supervision after the material terms of the Settlement were agreed upon. The Parties finally agreed that Class Counsel may apply to the Court for a Service Payment of $5,000 to each of the four Named Plaintiffs and an award of attorneys' fees, costs and expenses, not to exceed $3,500,000. The Parties also agreed that any such amounts awarded by the Court will be paid separately by Sirius XM, and thus will not reduce any of the Settlement's benefits to the Class.

Class Counsel now respectfully request that the Court award $3,500,000 in attorneys' fees and expenses as contingent compensation for their efforts. The fee requested, $3,470,984.63 (after $29,015.37 in expenses are deducted) equates to 3.6% of the estimated minimum Settlement value of benefits made available for the Class, and is well below the Ninth Circuit's 25% benchmark for such awards.

Based solely on fees incurred to date, the requested fee award constitutes a multiplier of 2.1 on the collective lodestar of $1,646,825.25 expended by the three Class Counsel law firms that contributed to the success of this litigation, which is within the range of multipliers approved in the Ninth Circuit, and is supported here given the complexity of the issues, the contingent nature of the representation, and other factors considered by courts undertaking this approach.

1
2
3
4
5

In addition, the four Plaintiffs and Paul Wright seek a Service Payment of $5,000 each in recognition for their services as Class representatives in this case (for a total of $25,000). Without these individuals' investment of time, and their courage to step forward and vindicate the Class's rights against a large corporation, the Class would not have obtained the substantial relief offered by the Settlement.

6
7
8
9
10
11
12

Class Counsel respectfully submit that the requested fee award is justified in light of the significant Settlement benefits obtained despite the numerous risks and obstacles of this litigation, the significant work Class Counsel have invested and will continue to invest in this case, and the caliber of Class Counsel's work in the face of formidable opposition. Further, given the time and effort the Plaintiffs and Mr. Wright devoted to this litigation on behalf of the Class, Class Counsel submit that the requested Service Payments are reasonable.

13
14

For all these reasons, and for those set forth in more detail below, Plaintiffs respectfully request that the Court grant this Motion in its entirety.

15

## II.   BACKGROUND

16
17

### A.   Class Counsel Devoted Substantial Time and Resources Investigating, Commencing, and Prosecuting the Claims Alleged in this Action

18
19
20
21
22
23

In this Action, Plaintiffs claim that Sirius XM systematically advertised and sold its Lifetime Subscriptions to consumers by leading consumers to believe that such lifetime subscriptions were for the lifetime of the consumer. *See generally* Amended Consolidated Class Action Complaint (ECF 67.) Plaintiffs allege that, at the time of their purchases, they understood that that their Lifetime Subscriptions would last for *their* lifetime, as opposed to the lifetime of a particular Device.

24
25
26
27

Sirius XM denies these allegations and maintains that the so-called Lifetime Subscriptions were limited to the lifetime of four Devices (the first plus three additional Devices) and that a $75 fee is required for each such transfer from one Device to another until a subscriber reached their given limit of three transfers.

28

1   The proposed Settlement seeks to resolve three separate class action lawsuits
2   filed by three firms on behalf of the Plaintiffs against Sirius XM under the captions
3   *Vaugh v. Sirius XM Radio Inc.*, No. 1:18-cv-10331-NLH-AMD (D.N.J.) ("*Vaugh*"),
4   *Alvarez v. Sirius XM Radio Inc.*, No. 2:18-cv-08605-JVS-SS (C.D. Cal.) ("*Alvarez*"),
5   and *Bettison v Sirius XM Radio Inc*., 3:18-cv-01065-PK (D. Or.) ("*Bettison*"), as
6   well as the individual claim of Wright in the class action entitled *Wright v. Sirius*
7   *XM Radio Inc*., No. 8:16-cv-01688-JVS-JCG (C.D. Cal.)[1] ("*Wright*"), which was
8   dismissed by the Court of Appeals at oral argument when the Parties announced the
9   Settlement. As set forth in detail in the concurrently filed Declarations of Robert
10  Ahdoot ("Ahdoot Decl."), Keith Dubanevich ("Dubanevich Decl.") and Cornelius
11  Dukelow ("Dukelow Decl."), Class Counsel expended considerable efforts in these
12  actions, and vigorously litigated the cases from inception, for over four years,
13  through a onslaught of impediments, facing and overcoming every obstacle.

14  Class Counsel conducted significant pre-filing investigations, which included
15  detailed review and evaluation of the facts, including a thorough and exhaustive
16  investigation of issues related to Sirius XM's representations, advertising,
17  marketing, business practices, and promotional efforts and comprehensive research
18  and analysis of the applicable law, including those relating to Sirius XM's arbitration
19  provisions. (Ahdoot Decl. ¶ 12.) Class Counsel interviewed, and conducted a
20  detailed vetting of hundreds of affected Class Members, with whom they
21  communicated throughout the course of the litigation. (*Id*. ¶ 13.) Class Counsel
22  drafted the initial complaints filed in the four actions. (*Id*.) In all phases of the

[1]   Plaintiff, Paul Wright, filed the earliest of the actions, on September 12, 2016, in this Court. On November 14, 2016, Sirius XM filed a motion to dismiss and to compel arbitration in the *Wright* case. The Parties fully briefed that motion, and the Court heard oral argument on April 24, 2016. In response to Plaintiffs' counsel's argument at that hearing, the Court permitted further briefing on the impact of the California Supreme Court's then-recent decision in *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 956 (2017). After that briefing, on June 1, 2017, the Court granted Defendant's motion, dismissing Mr. Wright's claims without prejudice. (*Wright*, ECF 59.) The Court also denied Mr. Wright's request for leave to amend his complaint to add additional class representatives. (*Id.*)

litigation, Class Counsel endeavored to gain an ample understanding of the legal issues underlying Plaintiffs' claims. (*Id.* ¶ 14.)

The breadth of information gleaned from their extensive discovery and investigation efforts allowed Class Counsel to weigh the likely success of Plaintiffs' claims and estimate individual damages associated with Plaintiffs' claims. (*Id.* ¶ 15.) This necessary work also allowed Class Counsel to proceed forward in a collaborative manner and formulate a litigation strategy aimed at obtaining meaningful relief for the Settlement Class as efficiently as possible. (*Id.* ¶ 16.)

Other litigation-related work performed by Class Counsel included, *inter alia*: repeated briefings on Sirius XM's Motion to Compel arbitration in *Wright*; a fully briefed appeal in *Wright* (including preparing for and attending oral argument immediately before settlement); preparing and serving written discovery; reviewing documents produced by Sirius XM; preparing and serving initial disclosures; meetings, emails, and phone calls between attorneys and staff at Class Counsel's law firms; numerous conference calls and correspondence between Class Counsel and defense counsel; regularly communicating with the Plaintiffs and scores of other clients regarding the progress of the cases; regularly communicating with Plaintiffs regarding case developments, discovery, settlement and litigation strategy; and preparing numerous case management statements and attending case management hearings in the four separate litigations. (*Id.* ¶ 17.)

After the Court granted Defendant's motion to compel arbitration (*Wright* ECF 59), Class Counsel notified its clients and expended considerable effort renewing vetting efforts and preparing individual arbitration case files, including demands to commence arbitration for each client, in anticipation of potential individual arbitration proceedings. (*Id.* ¶ 20.) While Class Counsel immediately pursued an appeal of the order compelling arbitration, Class Counsel also prepared for all of their clients to file individual arbitration demands and proceed pursuant to Sirius XM's arbitration provision. (*Id.*) Class Counsel temporarily halted these

efforts when settlement negotiations regarding a class resolution progressed. (*Id.*) The actions were finally settled after Class Counsel fully briefed the appeal and prepared for and appeared at oral argument. (*Id.*)

### B.   Class Counsel Engaged in Extensive Arms'-Length Settlement Discussions and Negotiated All Aspects of the Settlement

The result achieved was not easily won. Rather, the Settlement was reached as a result of extensive arms'-length discussions and negotiations (in conjunction with the exchange of documents and information between the Parties), occurring over the course of many months. (Ahdoot Decl. ¶ 21.)

In Spring of 2017, counsel for Plaintiff Wright began exploring the possibility of resolution and engaging a mediator. The Parties held an in-person settlement conference with counsel for Sirius XM at the Jones Day office in New York, but despite a number of follow up conversations, a resolution did not occur at that time. (*Id.* ¶ 22.) Nevertheless, these initial conversations laid the groundwork for future resolution discussions, and Plaintiffs' Counsel expended significant time and resources during the initial talks, including hard-fought negotiation of informal discovery and review of the documents Sirius XM agreed to produce pursuant to those resolution efforts. (*Id.* ¶ 23.)

On June 28, 2017, shortly before Plaintiffs Alvarez, Bettison, and Vaugh filed their cases, Plaintiff Wright appealed this Court's order granting Defendant's motion to dismiss and to compel arbitration of his claims. (9th Cir. Case No. 17-55928 (the "Appeal").) Thereafter, the Parties filed their opening, response, and reply briefs in the Appeal. (*Id.* ECF Nos. 11, 21, 23.)

While that appeal and the other Plaintiffs' claims were pending, and after all briefing in the Appeal was submitted, on November 29, 2018, the Parties participated in a full-day mediation session before the Honorable Carl J. West (Ret.). (Ahdoot Decl. ¶ 28.)

1     At Plaintiffs' counsel's request, Defendant provided substantial information
2 in advance of mediation, sufficient to enable Plaintiffs' counsel to value the claims
3 and damages and understand the prospective Class's composition. (*Id.* ¶ 29.) This
4 information, and the Parties' prior investigations, litigation, and briefing, gave
5 Plaintiffs' counsel an understanding of the claims and defenses sufficient to
6 meaningfully conduct informed settlement discussions. (*Id.*)

7     The Settlement was not reached at the November 29, 2018 mediation. (*Id.* ¶
8 31.) Nonetheless, with the continued assistance of Judge West, after protracted and
9 lengthy negotiations, and on the morning of the oral argument before the Ninth
10 Circuit in the Appeal (after the Parties had checked in), on December 5, 2018, the
11 Parties were able to reach an agreement in principle. (*Id.* ¶ 32.) Accordingly, Plaintiff
12 Wright moved to dismiss his appeal at oral argument, and the Ninth Circuit did not
13 rule on the appeal. (9th Cir. Case No. 17-55928, ECF 38.)

14     The Parties then engaged in additional and extensive months-long
15 negotiations, through many telephone conferences, to finalize and memorialize all
16 aspects of the Settlement Agreement, including each of its many exhibits. (Ahdoot
17 Decl. ¶ 33.) While such documentation is always work intensive and time
18 consuming, Sirius XM had very strong viewpoints on every detail of the process,
19 and every minutiae of the Settlement was extensively negotiated and hard fought.
20 (*Id.* ¶ 34.) The Parties thus worked diligently and expended additional time and
21 effort to negotiate and finalize the terms of a written settlement agreement and the
22 number of ancillary documents and the plan for Class Notice. (*Id.* ¶ 35.)

23     Even though Sirius XM is paying for Settlement administration in addition to
24 the benefits made available to the Class, the Parties held a competitive bidding
25 process to procure claims administration estimates from well-known administration
26 companies, at the conclusion of which the Parties selected Epiq Class Action &
27 Claims Solutions, Inc. ("Epiq"). (*Id.* ¶ 37.) The notice program and each document
28 comprising the notice were extensively negotiated and exhaustively refined, with

input from experts at Epiq, to make them easy to read and understand. (*Id.* ¶¶ 37-38; Declaration of Cameron Azari filed on June 11, 2020, ECF 68-5.)

In addition to the Named Plaintiffs and Paul Wright, Class Counsel also communicated the Settlement's terms to all of their many clients, who unanimously expressed support. (Ahdoot Decl. ¶ 40.)

On June 5, 2020, after months of negotiations, the Parties executed the Settlement Agreement. (*Id.* ¶ 41.) At all times during settlement discussions, the negotiations were at arms' length. Furthermore, it was always the Named Plaintiffs' and Class Counsel's primary goal to achieve the maximum substantive relief possible for the Class.

## C. Class Counsel Obtained Preliminary Settlement Approval and Implemented the Court-Approved Notice Plan

After the lengthy process that led to finalization of the Settlement Agreement and its many exhibits, Class Counsel prepared and filed Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Motion for Preliminary Approval"), which included supporting documents, declarations, and exhibits. (ECF 69.) As discussed therein, despite the risk and uncertainty of class certification and continued litigation, the Settlement is an outstanding result for the Settlement Class.

On July 15, 2020, the Court preliminarily approved the Settlement and ordered that the Class be given notice. *See* Order Regarding Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order") (ECF 75), After the Court preliminarily approved the Settlement, the Parties continued to work with the Settlement Administrator to supervise dissemination of Notice to Class Members. (Ahdoot Decl. ¶ 43.) These efforts included review and drafting of the language and format of the Settlement Website, the script for the automated response to the toll-free number, the language and format of the Settlement Class Notice forms, monitoring for exclusion requests and objections, and ensuring prompt response to each and every Class Member inquiry (whether by phone or e-mail)

regarding the Settlement. (*Id.*) There have been numerous inquiries by Class Members all of whom, to date, have expressed support for the terms of the Settlement. (*Id.*)

### D.    Class Counsel Achieved a Strong Result for the Class

The details of the Settlement were set forth in Plaintiffs' Motion for Preliminary Approval, are incorporated herein, and are only briefly summarized below. The Settlement provides substantial benefits to Class Members[2] in exchange for the Release. (SA ¶¶ 66, 83-87.)

The Settlement achieves "Lifetime Subscriptions" for Class Members that can actually last for their lifetimes, as opposed to a maximum of four Devices. (SA ¶¶ 66-68.) Pursuant to the Settlement, Class Members will be able to transfer their Lifetime Subscriptions to an *unlimited* number of different Devices, for a charge of $35 per transfer, a significant reduction from Defendant's currently imposed $75 per transfer fee. (*Id.* ¶ 66(a).)

In the event a Class Member no longer holds an Active Lifetime Subscription (but, rather, an Inactive Lifetime Subscription that, for instance, expired along with a Device, or was converted to a yearly, monthly, or some other subscription), he or she will have the option of reactivating that Lifetime Subscription (at no charge) with the above benefits, or claiming $100 in cash. (*Id.* ¶ 67.) Finally, and in addition, Internet streaming of Sirius XM's radio service will be made available to Inactive Lifetime Subscribers who choose to reactivate, with no additional fee paid to Sirius XM (Internet streaming is already available to active lifetime subscribers at no additional fee paid to Sirius XM). (*Id.* ¶ 66(c).)

---

[2]    The Settlement Class is defined as: "All Persons in the United States who purchased a paid subscription from Sirius XM (or one of its predecessors) that was marketed as a 'lifetime plan' or 'lifetime subscription' . . . ." (Preliminary Approval Order (ECF 75) at p. 2; SA ¶ 33.) As of June 2020, the Settlement Class consists of approximately 964,000 individuals, approximately 838,000 of whom have Active Lifetime Subscriptions, and approximately 126,000 of whom have Inactive Lifetime Subscriptions. (SA ¶¶ 2, 19; *see also* SA Section I, Recitals.)

1        Inactive Subscribers must submit a Claim Form to obtain the Settlement's

2   benefits (*i.e.*, reactivation of the Lifetime Subscription or a $100 payment). (*Id.* ¶

3   68(a) and Ex. A (Claim Form).) Claim Forms may be submitted online (through the

4   Settlement Website) or by mail. In the event an Inactive Subscriber does not submit

5   a Claim Form, and does not opt out, then he or she will be subject to the releases set

6   forth in the Settlement. Class Members will be provided an opportunity to determine

7   whether they have either Inactive Lifetime Subscriptions or Active Lifetime

8   Subscriptions (as of the Settlement Agreement's date) *via* a tool on the Settlement

9   Website's landing page. (*Id.* ¶ 51.)

10       Defendant offered Lifetime Subscriptions for prices ranging from $357.54 to

11  $755.00. (Ahdoot Decl. ¶ 29; *see also* Declaration of Christian Tregillis ("Tregillis

12  Decl.") ¶ 21 & Ex. B, ECF 69-9.) Given their relatively high cost and value, the

13  value of each Lifetime Subscription that no longer expires, or that is reactivated,

14  pursuant to the terms of the Settlement, is significant. (Tregillis Decl. ¶¶ 18-36.) In

15  addition, the reduction of the Device transfer fee from $75 to $35—for at least the

16  838,000 Active Subscribers—increases the value of the Settlement significantly.

17  Factoring all these data points, Plaintiffs' expert, Christian Tregillis, opines that the

18  Settlement's benefits are worth approximately $96.4 million; this valuation does not

19  include any amounts paid for Notice and Administration, Service Payments, and

20  Attorneys' Fees and Expenses, all of which are to be paid by Sirius XM in addition

21  to benefits described above. (*Id.* ¶ 35.)

22       The Settlement represents an achievement that most likely is better than any

23  result Plaintiffs could hope to achieve through continued litigation of these actions,

24  particularly given that this Court previously compelled the earliest filed of these

25  actions to individual arbitration under the terms of Defendant's alleged subscriber

26  agreement. *See Wright v. Sirius XM Radio, Inc.*, No. 16-01688 JVS, ECF 59.

27

28

### E.   Settlement Administration Costs, Attorneys' Fees and Expenses, and Service Payments

The Settlement provides that Sirius XM will separately pay for any and all Settlement Administration Expenses, Service Payments, and Attorneys' Fees and Expenses. (SA ¶ 66(g).) Sirius XM will pay for any Service Payment awarded by the Court, so long as the amount does not exceed $5,000 for each Plaintiff, as well as Paul Wright.[3] (*Id.* ¶ 75.) Sirius XM will also pay for any attorneys' fees and expenses awarded by the Court to Class Counsel, so long as the amount does not exceed $3,500,000. (*Id.* ¶ 76.) Sirius XM's payment of these amounts will not in any way reduce the total benefits available to the Class.

### F.   Release

If the Settlement is approved, Plaintiffs, Mr. Wright, and only Class Members who do not timely opt out or request exclusion from the Settlement Class will release Sirius XM from all claims "(a) that were asserted, or attempted to be asserted, or that could have been asserted, based on the facts alleged in the Cases, the Action and/or the Consolidated Class Action Complaint, or (b) that arise out of, relate to, or are in connection with the sale of Sirius XM's Lifetime Subscriptions, whether arising out of common law, state law, or federal law, whether by Constitution, statute, contract, common law, or equity, or (c) that arise out of, relate to, or are in connection with the administration of the Settlement (the "Released Claims")." (SA ¶ 83.) Thus, the release is limited and tailored only to apply to allegations in the actions.

## III.   ARGUMENT

### A.   Class Counsel's Fee Request Is Fair, Reasonable, and Adequate and Should Be Approved

District courts may award attorneys' fees and costs to a prevailing plaintiff where "the successful litigants have created a common fund for recovery or extended

---

[3]   Pursuant to Sirius XM's Motion to Compel Arbitration, Plaintiff Paul Wright was ordered to participate in individual arbitration against Sirius XM. (*Wright*, ECF 59.) Mr. Wright dismissed his appeal of this Order after a settlement in principle was reached. Rather than pursuing arbitration, however, Paul Wright will participate in the Settlement, albeit not as a Class Representative. In addition to the Settlement, Mr. Wright also agreed to a Covenant Not to Sue Sirius XM. (SA ¶ 91, Ex. H.)

substantial benefit to the class." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240 (1975)). In deciding whether a requested fee amount is appropriate, the Court's role is to determine whether such amount is "fundamentally 'fair, adequate, and reasonable.'" *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003) (quoting Fed. R. Civ. P. 23(e)).

Where a class settlement results in the creation of common benefits, district courts may use either—or both—the "percentage-of-the-fund" or the "lodestar multiplier" method to determine a reasonable fee. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). "Despite [courts'] discretion, use of the percentage method in common fund cases appears to be dominant." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008); *see also, e.g., Vizcaino*, 290 F.3d at 1050 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award"); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (affirming percentage award).

"The percentage method 'is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation.'" *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503 (2016)) (citation omitted). Regardless of the chosen method, courts must award attorneys' fees based on an evaluation of "all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. Class Counsel's fee request here is fair, reasonable and adequate under either the percentage or lodestar approach.

### 1. The Requested Fee Is Reasonable Under the Percentage Method

Under the percentage method, the district court may award attorneys' fees equal to a percentage of the total monetary benefits available to the Class. *Vizcaino*, 290 F.3d at 1047; *In re: Toyota Motor Corp Unintended Acceleration Litigation*,

No. 8:10-ml-02151-JVS-FMO (C.D. Cal. June 17, 2013), Order re: Fees (ECF 3802) at p. 6, n. 7 (Selna, J). The percentage of the benefit method is favored over a lodestar approach because it "more closely aligns the interests of the counsel and the class, i.e., class counsel directly benefit from increasing the size of the class fund and working in the most efficient manner." *Vizcaino*, 290 F.3d at 1047.

The benchmark award of attorneys' fees in "common fund" or constructive common fund" cases is 25%. *In re Bluetooth*, 654 F.3d at 942 (citing *Six Mexican Workers*, 904 F.2d at 1311). When a settlement provides monetary benefits on a claims-made basis but does not create a common fund fixing the amount of benefits available to the Class, "the Ninth Circuit may analyze the case as a 'constructive common fund' for fee setting purposes." *Nwabueze v. AT & T Inc.*, No. 09-cv-1529, 2013 WL 6199596, at *11 (N.D. Cal. Nov. 27, 2013) (quoting *In re Bluetooth*, 654 F.3d at 940-941).

"To calculate appropriate attorneys' fees under the constructive common fund method, the Court should look to the maximum settlement amount that could be claimed." *Nwabueze*, 2013 WL 6199596, at *11. Courts have long looked to the entire value of the benefits made available to class members, even in cases where it is unlikely all or most of the benefits will be claimed. *Lopez v. Youngblood*, No. 07-cv-474, 2011 WL 10483569, at *12 (E.D. Cal. Sept. 1, 2011) ("It is well established that, in claims made or class reversion cases where there is a maximum fund, and unclaimed funds revert to the defendant, it is appropriate to award class fund attorneys' fees based on the gross settlement value"); *accord Boeing v. Van Gemert*, 444 U.S. 427, 479-81 (1980) (concluding that class counsel may recover a fee based on entire common fund created for class, even if some class members make no claims against the fund); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (reversing award of attorneys' fees because trial court failed to base fee award on the entire settlement, rather than the amount claimed).

1      In this case, Plaintiffs' expert opines that the Settlement's benefits are worth

2  approximately $96.4 million. (Tregillis Decl. ¶ 35.)

3      Accordingly, Class Counsel's requested fee award of $3,470,984.63

4  represents 3.6% of that amount. This is well below the Ninth Circuit's 25%

5  "benchmark" for such awards. *Vizcaino*, 290 F.3d at 1047. On this basis alone, Class

6  Counsel's fee request is fair and reasonable.

7          **2.  The *Vizcaino* Factors Support the Award Requested**

8      Class Counsel's fee request is further justified by the factors commonly used

9  to assess appropriate attorneys' fees.

10      In determining the appropriateness of a fee award, the Ninth Circuit directs

11  courts to consider: "(1) the results achieved; (2) the risk of litigation; (3) the skill

12  required and the quality of work; (4) the contingent nature of the fee and the financial

13  burden carried by the plaintiffs; and (5) awards made in similar cases." *In re*

14  *Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1046 (citing *Vizcaino*, 290 F.3d at 1048-

15  1050). A court may also consider the volume of work performed, counsel's skill and

16  experience, the complexity of the issues faced, and the reaction of the class. *See,*

17  *e.g., In re Heritage Bond Litig.*, No. 02-ml-1475-DT, 2005 WL 1594403, at *18-23

18  (C.D. Cal. June 10, 2005).

19      As explained herein and in the supporting declarations of Class Counsel, the

20  extraordinary result presented by the Settlement, the contingent nature of

21  representation, the risks of litigation, the highly complex nature of the litigation, and

22  the high caliber of lawyering required and employed by all counsel, weigh in favor

23  of the reasonable of fees sought by Class Counsel. (Ahdoot Decl. ¶¶ 4-5, 10-17.)

24          **a.  Class Counsel Achieved an Excellent Recovery for Plaintiffs**

25      "[T]he most critical factor is the degree of success obtained." *Hensley v.*

26  *Eckerhart*, 461 U.S. 424, 436 (1983); *see also In re Bluetooth*, 654 F.3d at 942

27  ("Foremost among these considerations . . . is the benefit obtained for the class.");

28

1   Federal Judicial Center, Manual for Complex Litigation, § 27.71, 336 (4th ed. 2004)

2   (the "fundamental focus is on the result actually achieved for class members").

3   Here, the Settlement provides Class Members with the precise relief this

4   litigation sought to obtain. The Settlement achieves a "Lifetime Subscription" for

5   Class Members that can actually last for their lifetime, as opposed to a maximum of

6   four Devices. (SA ¶¶ 66-68.)

7   In contrast to zero, which is what Class Members well might receive had the

8   case continued to litigation, Plaintiffs' expert opines that the Settlement's benefits

9   are worth approximately $96,400,000. (Tregillis Decl. ¶ 35.) This demonstrates the

10   extraordinary nature of the relief provided to the Class under this Settlement.

11   **b. Plaintiffs Faced Significant Risks in this Litigation**

12   Risk is an important factor in determining a fair fee award. *In re Omnivision*

13   *Techs., Inc.*, 559 F. Supp. 2d at 1047 ("The risk that further litigation might result in

14   Plaintiffs not recovering at all, particularly a case involving complicated legal issues,

15   is a significant factor in the award of fees") (citing *Vizcaino*, 290 F.3d at 1048).

16   Here, the Class faced the very real possibility that Sirius XM's arbitration

17   agreements and class action waivers would be found valid and enforceable. Had the

18   case continued in litigation, Sirius XM's arbitration policy and class action waiver

19   likely would have prevented Class Members from proceeding in court, or as a class

20   action, effectively eliminating the possibility of any comparable result. Because the

21   case could perish, as demonstrated by this Court's ruling that compelled the earliest

22   filed of these actions to individual arbitration under the terms of Sirius XM's alleged

23   subscriber agreement (*see Wright*, ECF 59), Class Counsel's achievement on behalf

24   of the Class is extraordinary.

25   **c. Successfully Prosecuting This Matter Required Significant**
26   **Skill and Effort on the Part of Class Counsel**

27   The complexity of this case required experienced legal skills and high quality

28   work. The "prosecution and management of a complex national class action requires

unique legal skills and abilities" that are to be considered when determining a reasonable fee. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1047 (citation omitted); *see also Vizcaino*, 290 F.3d at 1048 (reasoning that the complexity of the issues involved and skill and effort displayed by class counsel are among the relevant factors for determining the proper fee under the percentage approach). This case presented extraordinary challenges that required extraordinary lawyering.

Class Counsel in this matter have extensive experience litigating and serving as counsel in numerous consumer class actions, and other complex matters, including cases regarding unfair business practice claims and false advertising claims. (Ahdoot Decl. ¶¶ 65-75 & Ex. A; Dubanevich Decl. ¶¶ 22-26; Dukelow Decl. ¶ 2 & Ex. A.) Class Counsel spent 2,160.95 hours actively litigating this case over the past four years. (Ahdoot Decl. ¶ 51; Dubanevich Decl. ¶¶ 9-10.) These hours yielded a collective lodestar of $1,646,825.25. (Ahdoot Decl. ¶¶ 51-52; Dubanevich Decl. ¶¶ 9-10.) Class Counsel identified and investigated the claims in this lawsuit, vigorously prosecuted this action and will continue to do so through final approval. Class Counsel's substantial skill, expertise, and experience were critical to achieving the Settlement here. (Ahdoot Decl. ¶¶ 10-17; Dubanevich Decl. ¶¶ 17, 22-26; Dukelow Decl. ¶ 3.)

As addressed more fully below and in Class Counsels' supporting declarations, investigating, prosecuting, and settling this matter required considerable commitment of time and resources. (*See infra* Section III.A.3.a.) Moreover, the caliber of opposing counsel—another important factor in important in evaluating the quality of Class Counsel's work—supports the requested award, given that Sirius XM is one of the largest satellite radio providers in the United States and is represented by one of the largest and most prominent law firms in the country. That Plaintiffs achieved such an excellent result against such a formidable opponent is yet another factor supporting the requested multiplier. *See Vizcaino*, 290 F.3d 1043; *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013).

#### d. Class Counsel Assumed Considerable Risk Litigating on an Entirely Contingent Basis

The requested multiplier is further justified because this case presented a significant risk of non-payment. *In re Omnivision*, 559 F. Supp. 2d at 1047; *Vizcaino*, 290 F.3d at 1048.

The Ninth Circuit has confirmed that a fair fee award must include consideration of the contingent nature of the fee. *See, e.g., Vizcaino*, 290 F.3d at 1050. Courts long have recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work. *See, e.g., In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose."); *Vizcaino*, 290 F.3d at 1051 (observing courts reward successful class counsel in contingency cases "by paying them a premium over their normal hourly rates"). This factor deserves particular weight under the unique circumstances of this matter.

If Class Counsel had been able to negotiate a fee directly with Class Members, a 25% contingent fee would have been eminently reasonable, if not low, for a case this complex, risky, and difficult. Had the case continued in litigation, Sirius XM's arbitration policy and class action waiver likely would have prevented Class Members from proceeding in court, or as a class action, effectively eliminating the possibility of any comparable result. Because the case could perish, as was the result in several other concurrent cases involving Sirius XM's arbitration clauses, Class Counsel's achievement on behalf of the Class is extraordinary. Given the prospective risks and difficulties, it would have been quite reasonable for Class Members to retain counsel at *no cost* to them unless counsel succeeded, in which case counsel would be entitled to 25% of the total of any fund recovered (after counsel's

17

expenses). This is especially true given the willingness of Class Counsel's law firms to advance 2,160.95 hours of time and $29,015.37 in costs, with no hope of recovering those funds unless the case was successful.

Class Counsel prosecuted this matter on a purely contingent basis, agreeing to advance all necessary expenses and agreeing that they would only receive a fee if there was a recovery. (Ahdoot Decl. ¶ 54.) Indeed, Class Counsel received no compensation at all during over four years of litigating this case on behalf of the Class. (*Id*.) Class Counsel's "substantial outlay," and the risk that none of it would be recovered, further supports the award of the requested fees here. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1047.

### e.  The Awards in Similar Cases Supports the Reasonableness of the Requested Attorneys' Fees

Comparing the requested fees to awards in similar cases highlights the reasonableness of this application. "[I]n most common fund cases, the award exceeds" the 25% benchmark that guides Class Counsel's request here. *Knight v. Red Door Salons, Inc*., No. 08–cv-1520, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009). "Empirical studies show that, regardless of whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." *Romero v. Producers Dairy Foods, Inc*., No. 05-cv-0484, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (quoting 4 Newberg and Conte, *Newberg on Class Actions* § 14.6 (4th ed. 2007).

"Under the percentage method, California has recognized that most fee awards … are 33 percent." *Smith v. CRST Van Expedited, Inc*., No. 10-cv-1116, 2013 WL 163293, at *5 (S.D. Cal. 2013); *Lee v. JPMorgan Chase & Co*., No. 13-cv-511-JLS-JPR, 2015 WL 12711659, at *8-9 (C.D. Cal. Apr. 28, 2015) (awarding one-third of common fund); *Boyd v. Bank of Am. Corp*., No. 13–cv–561–DOC-JPR, 2014 WL 6473804, at *10-11 (C.D. Cal. Nov. 18, 2014) (same); *Burden v. Select Quote*

*Ins. Servs.*, No. 10-cv-5966, 2013 WL 3988771, at *5 (N.D. Cal. Aug. 2, 2013) (same); *Barbosa*, 297 F.R.D. at 454 (same).

Here, the fee requested, $3,470,984.63 equates to 3.6% of the estimated Settlement value of benefits made available for the Class, and is well below the Ninth Circuit's 25% benchmark for such awards. Fee awards in similar cases supports the requested fees.

### f. The Reaction of the Class to Date Is Overwhelmingly Positive

The deadline for class members to exclude themselves is November 30, 2020. The Class Notice informs Class Members that Class Counsel will seek attorneys' fees and expenses in an amount not to exceed $3,500,000, subject to Court approval, and that Class Members have the opportunity to comment on or object to the fee application. The Class Notice also informs Class Members that the Settlement Website makes the full Settlement Agreement available for Class Members' review. (ECF 68.) As of November 6, 2020, only 28 persons have opted for exclusion, and no objections have been submitted. These numbers stand in stark contrast to the more than 1,129,370 mailings sent (as of November 6, 2020) to Class Members. (Ahdoot Decl. ¶ 44.). In addition, Class Counsel have communicated with numerous Class Members who contacted Class Counsel with questions regarding the Settlement: all such individuals expressed support for the Settlement. (*Id.* ¶ 43.)

### 3. A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fees

Application of the lodestar method here confirms the propriety of Class Counsel's fee request. Under this approach, the lodestar figure is determined by multiplying the number of hours reasonably expended on the litigation by hourly rates. *In re Bluetooth*, 654 F.3d at 941.

### a. The Number of Hours Claimed Is Reasonable

Class Counsel maintained contemporaneous, detailed time records billed in 1/10 of an hour increments. The hours expended by each Class Counsel's firm

included in the present request are detailed in the accompanying Ahdoot Declaration, and have been reviewed in detail by Class Counsel. (Ahdoot Decl. ¶¶ 55-57.) Class Counsel's time records are available upon the Court's request for *in camera* review.

Class Counsel and their staff have devoted a total of 2,160.95 hours to this litigation, for a total lodestar of $1,646,825.25. (Ahdoot Decl. ¶¶ 51-52.) All of this time was reasonable and necessary for the prosecution of this action. Class Counsel took meaningful steps to ensure the efficiency of their work. (*Id.* ¶¶ 56-57.) And, as explained further below, these amounts do not include the additional time that Class Counsel will have to spend in seeing this litigation to its conclusion.

As detailed above and in the declarations, these hours include: (1) engaging in significant pre-filing investigations, which included detailed review and evaluation of the facts, including a thorough and exhaustive investigation of issues related to Sirius XM's representations, advertising, marketing, business practices, and promotional efforts and comprehensive research and analysis of the applicable law; (2) extensively researching and filing the individual complaints; (3) researching and drafting the opposition to Sirius XM's motion to compel arbitration and motion to dismiss; (4) fully litigating an appeal; (5) numerous meetings, conference calls, and correspondence between Class Counsel and defense counsel, and regularly communicating with the Plaintiffs and Paul Wright regarding case developments, discovery, and litigation strategy (and regularly communicating with the scores of Class Counsel other clients regarding the progress of this matter, including the terms of the Settlement); (6) reviewing materials provided by Sirius XM in advance of mediation; (7) researching and drafting mediation briefs; (8) consulting with several experts; (9) attending a full-day mediation session and a settlement conference; (10) negotiating the details of the Settlement Agreement over multiple months and drafting the preliminary approval motion; and (11) responding to inquiries from Class Members after Notice was disseminated. (Ahdoot Decl. ¶¶ 11-43.)

1    Moreover, additional work will be required. Class Counsel must still: (1)
2    prepare for and attend the final approval hearing, including the research and drafting
3    of the final approval papers and responses to objections; (2) continue to respond to
4    the many inquiries from Class Members; (3) oversee the Settlement through final
5    approval of distribution of Settlement benefits; (4) oversee the claims administration
6    process, including addressing any claim review issues; and (5) handle any appeals.
7    (Ahdoot Decl. ¶ 60.)

8                    **b.  Class Counsel's Hourly Rates Are Reasonable**

9    Class Counsel are entitled to the hourly rates charged by attorneys of
10   comparable experience, reputation, and ability for similar complex federal litigation.
11   *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Here, Class
12   Counsel's hourly rates are reasonable in light of their significant experience,
13   expertise, and skill. Class Counsel are qualified and experienced in conducting class
14   action litigation, especially cases involving consumer protection. (Ahdoot Decl. ¶¶
15   65-75 & Ex. A; Dubanevich Decl. ¶¶ 27-31; Dukelow Decl. ¶ 3 & Ex. A.)

16   Class Counsel have brought to this case extensive experience in the area of
17   consumer class actions and complex litigation. (Ahdoot Decl. ¶¶ 65-75 & Exhibit
18   A.) The hourly rates of Class Counsel are in line with prevailing rates in this District,
19   and have been approved by other federal and state courts. (*Id.* ¶¶ 76-82.)

20                   **c.  The Multiplier Is Justified Given the Results Obtained, the
21                   Complexity of the Issues, and the Contingent Nature of the
                     Representation**

22   A court may reduce or enhance the lodestar figure based on "a host of
23   'reasonableness' factors, 'including the quality of representation, the benefit
24   obtained for the class, the complexity and novelty of the issues presented, and the
25   risk of nonpayment.'" *In re Bluetooth*, 654 F.3d at 942 (quoting *Hanlon v. Chrysler*
26   *Group*, 150 F.3d 1011, 1029 (9th Cir. 1998), and citing *Kerr v. Screen Extras Guild,*
27   *Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

28

1   Based on these factors, as further explained below, Class Counsel submit that

2   the fee request of $3,470,984.63, which represents a multiplier of approximately 2.1[4]

3   on the total lodestar incurred by Class Counsel in this litigation is modest and more

4   than merited given the excellent results obtained on a contingency basis, in this

5   complex case. *See, e.g., Vizcaino*, 290 F.3d at 1051 & Appendix (approving

6   multiplier of 3.65 and citing cases with multipliers as high as 19.6); *In re Volkswagen*

7   *"Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, No. 15-md-2672,

8   2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) ("'Multipliers in the 3-4 range

9   are common in lodestar awards for lengthy and complex class action litigation.'")

10  (quoting *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298-99 (N.D. Cal.

11  1995)); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal.

12  2008) (upholding 25% of the fund award resulting in a multiplier of approximately

13  5.2, and citing cases in support); *Wershba v. Apple Computer*, 91 Cal. App. 4th 224,

14  255 (2001) ("Multipliers can range from 2 to 4 or even higher.").

15  Given the extensive efforts required of Class Counsel to get to this point and

16  to secure an exceptional settlement for the Class valued approximately $96.4

17  million. *see supra*, Section II.D, in the face of the risks presented, the complexity of

18  the issues this litigation entailed, and the risk of no recovery in light of Sirius XM's

19  arbitration policy and other defenses, the requested multiplier is well warranted and

20  falls within the range approved by courts in this Circuit. *See, e.g. In re Volkswagen*

21  *"Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 15-md-2672, 2017

22  WL 3175924, at *4 (N.D. Cal. July 21, 2017) (approving lodestar multiplier of 2.02

23  as "more than reasonable given the complexities of this case, the skill and diligence

24  of Class Counsel, and the extraordinary results achieved for the Class"); *In re:*

25  *Toyota Motor Corp Unintended Acceleration Litigation*, No. 10-ml-2151-JVS-

26

27

28  [4]   The 2.1 multiplier is the quotient between the requested fee amount of
    $3,470,984.63, and the total lodestar amount of $1,646,825.25.

FMO, Order re: Fees (ECF 3802) at p. 15 (approving as reasonable a multiplier of 2.87, noting it was "within the range approved by courts within this Circuit").

For example, a recent Central District court decision cited with approval a holding that a multiplier of 2.43 is "per se reasonable" in a nationwide class action settlement. *See Schulein v. Petroleum Dev. Corp.*, No. 11-cv-1891-AG-AN, 2015 WL 12762256, at *1 (C.D. Cal. Mar. 16, 2015) (citing *Been v. O.K. Industries, Inc*., No. 02-cv-285, 2011 WL 4478766, at *11 (E.D. Okla. 2011) (citing a study reporting the average multiplier in 1,120 class actions and finding that a 2.43 multiplier would be "per se reasonable")).

That the considerable risks here were undertaken by Class Counsel on an entirely contingent basis further justifies the requested multiplier. *See Vizcaino*, 290 F.3d at 1050; *Kerr*, 526 F.2d at 70.[5] "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for wining contingency cases." *In re Wash. Pub.*, 19 F.3d at 1299. Counsel's "substantial outlay" of time and money and the significant risk that none of it would be recovered, further supports Class Counsel's requested modest multiplier. *In re Omnivision*, 559 F. Supp. 2d at 1047.

Class Counsel's requested multiplier also is reasonable given that the fee award will compensate them not only for the work already performed, but future work as well, as described above (including their continuing obligation to the Class Members to oversee the claims process). In effect, this means that the final lodestar will be higher, and the 2.1 multiplier ultimately will be lower. Together, all these factors support Class Counsel's request here.

---

[5] Although the *Bluetooth* court suggested that "whether the fee was fixed or contingent" is "no longer [a] valid" factor, citing *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1546 (9th Cir. 1992), *Vizcaino*, which post-dates *Davis*, suggests otherwise, and the *Bluetooth* court nonetheless considered "the risk of nonpayment" among the "'reasonableness' factors" courts should consider when awarding fees. *In re Bluetooth*, 654 F.3d at 942.

**B.    Class Counsel Are Entitled to Reimbursement of Their Reasonable Litigation Expenses**

Under well-settled law, Class Counsel are entitled to recover "out-of-pocket expenses that would normally be charged to a fee-paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal citation and quotation marks omitted). It is appropriate to reimburse Class Counsel for such expenses from the common fund. *See, e.g., Leonard, et al. v. Baumer* (*In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*), No. 87-cv-3962-RN-G, 1989 WL 73211, at *6 (C.D. Cal. Mar. 9, 1989).

To date, Class Counsel have collectively incurred $29,015.37 in unreimbursed litigation costs. (Ahdoot Decl. ¶¶ 61-62; Dubanevich Decl. ¶¶ 18-19.) The costs for which Class Counsel seek reimbursement were reasonably necessary for the continued prosecution and resolution of this litigation (Ahdoot Decl. ¶¶ 61-62, 64; Dubanevich Decl. ¶¶ 18-19, 21), and were incurred by Class Counsel for the benefit of Class Members with no guarantee that they would be reimbursed. *See Staton*, 327 F.3d at 974 (class counsel are entitled to reimbursement of expenses they reasonably incurred). Class Counsel's litigation costs are reasonable in amount and the Court should approve their reimbursement.

**C.    The Requested Service Payments Are Reasonable and Justified**

"Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). Further, numerous courts in the Ninth Circuit approved incentive awards of $10,000 and higher where, as here, the Named Plaintiffs have demonstrated a strong commitment to the case. *See Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365, 2010 WL 1687832, at *17, n. 8 (N.D. Cal. Apr. 22, 2010) (collecting cases where dedicated class representative received incentive award of $20,000 or more).

When considering requests for incentive awards, courts may consider five factors: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class

1  representative; (3) the amount of time and effort spent by the class representative;

2  (4) the duration of the litigation; and (5) the personal benefit (or lack thereof)

3  enjoyed by the class representative as a result of the litigation. *Van Vranken*, 901 F.

4  Supp. at 299. These factors favor Plaintiffs' request for service payments.

5      The Settlement would not have been possible without the time and effort of

6  each of the four Plaintiffs, as well as Paul Wright, who stepped forward on behalf of

7  other Class Members, accepting the risk of negative publicity and the responsibility

8  of cooperating in the litigation and discovery in order to right the wrong that affected

9  them and so many others. Defendant agrees not to oppose any such request. (SA ¶

10  75.) Defendant will pay the Court approved Service Payments, which will not reduce

11  the benefits available to Class Members. (*Id.*)

12      As set forth in their declarations, these Plaintiffs, and Paul Wright, have been

13  active participants in the litigation. They investigated the matter prior to and after

14  retaining their respective attorneys, participated in the plaintiff vetting process

15  implemented by Plaintiffs' counsel, reviewed and approved their original

16  complaints, participated in preparing initial disclosures, understood that they may

17  have to sit for a deposition, kept in contact with counsel to monitor the progress of

18  the litigation, and reviewed and communicated with their counsel regarding the

19  Settlement Agreement and its exhibits. (*See generally* concurrently filed

20  Declarations of Philip Alvarez, Randall Bettison, Marc Kelleher, Darlene Vaugh,

21  and Paul Wright; *see also* Ahdoot Decl. ¶¶ 45-48.)

22  **IV.   CONCLUSION**

23      For the foregoing reasons, Plaintiffs respectfully request that the Motion be

24  granted and the Court enter an Order (a) awarding Class Counsel's attorneys' fees

25  in the amount of $3,470,984.63, plus reimbursement of litigation expenses in the

26  amount of $29,015.37; and (b) awarding the Plaintiffs and Paul Wright a Service

27  Payment in the amount of $5,000 each for their efforts and commitment on behalf

28  of Class Members.

Respectfully submitted,

**AHDOOT & WOLFSON, PC**

Dated: November 16, 2020

By:    */s/ Robert Ahdoot*

Robert Ahdoot
*rahdoot@ahdootwolfson.com*
Tina Wolfson
*twolfson@ahdootwolfson.com*
Theodore Maya
*tmaya@ahdootwolfson.com*
Bradley K. King
*bking@ahdootwolfson.com*
AHDOOT & WOLFSON, PC
2600 West Olive Avenue, Suite 500
Burbank, California 91505
Tel: (310) 474-9111; Fax: (310) 474-8585

Cornelius P. Dukelow (*pro hac vice*)
*cdukelow@abingtonlaw.com*
**ABINGTON COLE + ELLERY**
320 S. Boston Avenue, Suite 1130
Tulsa, Oklahoma 74103
Tel & Fax: (918) 588-3400

Keith S. Dubanevich (*pro hac vice*)
*kdubanevich@stollberne.com*
**STOLL STOLL BERNE LOKTING &
SHLACHTER P.C.**
209 SW Oak Street, Suite 500
Portland, Oregon 97204
Tel: (503) 227-1600; Fax: (503) 227-6840

*Attorneys for Plaintiffs and Class Counsel*