## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   CV 18-8605 JVS(SSx)                    Date   February 8, 2021

Title   Phillip Alvarez v. Sirius XM Radio Inc.

Present: The Honorable   **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

Proceedings:       **[IN CHAMBERS] <u>Order Regarding Motion for Final Approval of Class Action Settlement and Motion for Attorney's Fees</u>**

      Plaintiffs Philip Alvarez, Randall Bettison, Marc Kelleher, and Darlene Vaughn (collectively – "Plaintiffs") moved for final approval of a class action settlement. Settlement Mot., ECF No. 89. Plaintiffs also moved for attorney's fees. Fees Mot., ECF No. 83. Defendant Sirius XM Radio Inc. ("Sirius XM") does not oppose either motion. Following review of the Court's first tentative order, Plaintiffs submitted a supplemental motion. Supplemental Mot., ECF No. 93. The Court held hearings on the motion on both January 25 and February 8, 2021.

      For the following reasons, the Court **GRANTS** final approval of the proposed settlement and **GRANTS** Plaintiffs' motion for attorney's fees.

### I. BACKGROUND

*A.     Allegations and Procedural History*

      The background is drawn from Plaintiffs' First Amended Complaint ("FAC") and is therefore based solely on allegations. Sirius XM sold lifetime subscriptions to consumers. FAC, ECF No. 67, ¶ 1. Sirius XM advertised and sold its lifetime subscriptions to consumers by leading consumers to believe that such lifetime subscriptions were for the lifetime of the consumer. Id. ¶ 16. However, when consumers have tried to transfer their lifetime subscriptions from one radio receiver to another or from one automobile to another, Sirius XM has taken the position that the "lifetime" referred to is not the lifetime of the purchasing consumer, but the lifetime of the receiver or automobile. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-8605 JVS(SSx) | Date | February 8, 2021 |

| Title | Phillip Alvarez v. Sirius XM Radio Inc. |

Alvarez filed this action in Los Angeles County Superior Court on August 28, 2018, alleging violations of the California Unfair Competition Law ("UCL") and the California Consumer Legal Remedies Act ("CLRA"), as well as fraudulent and negligent misrepresentation. Not., ECF No. 1, at 2. Sirius XM removed this action to this Court on October 5, 2018. Id. The Court granted preliminary approval of the parties' Settlement on July 15, 2020. Preliminary Approval Order, ECF No. 75.

    *B.*    *Summary of the Settlement*

        *1.*    *The Settlement Class*

The Settlement Class is defined as:

All Persons in the United States who purchased a paid subscription from Sirius XM (or one of its predecessors) that was marketed as a "lifetime plan" or "lifetime subscription." Excluded from the Class are: Sirius XM and its parents, subsidiaries, or any entities in which it has a controlling interest, as well as Sirius XM's officers, directors, employees, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded are any Judges to whom this case is assigned as well as their judicial staff and immediate family members.

Settlement Agreement ("SA"), ECF No. 68, ¶ 33.

The Settlement Class currently consists of approximately 964,000 individuals, approximately 838,000 of whom had active lifetime subscriptions, and approximately 126,000 had inactive lifetime subscriptions. First Tregillis Decl., ECF No. 69-9, ¶ 12.

        *2.*    *Settlement Amount and Injunctive Relief*

The proposed Settlement achieves a "lifetime subscription" for Settlement Class Members that can actually last for their lifetime, instead of being limited to a maximum of four devices. SA ¶¶ 66-68. Pursuant to the Settlement, Settlement Class Members will be able to transfer their lifetime subscriptions to an unlimited number of different devices, for a charge of $35 per transfer (a reduction from Sirius XM's $75 per transfer fee). Id. ¶ 66(a).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-8605 JVS(SSx) | Date | February 8, 2021 |
|---|---|---|---|

| Title | Phillip Alvarez v. Sirius XM Radio Inc. |
|---|---|

In the event a Settlement Class Member no longer holds an active lifetime subscription (but, rather, an inactive lifetime subscription that, for instance, expired along with a device, or was converted to a yearly, monthly, or some other subscription), he or she will have the option of reactivating that lifetime subscription (at no charge) with the above benefits, or claiming $100 in cash. Id. ¶ 67.

Internet streaming of Sirius XM's radio service will be made available to Settlement Class Members with an inactive lifetime subscription who choose to reactivate, with no additional fee paid to Sirius XM – a service already available to those with an active lifetime subscription at no additional fee. Id. ¶ 66(c).

Plaintiffs' expert, Christian Tregillis, initially submitted a declaration concluding that the Settlement's benefits are conservatively worth at least $96.4 million. First Tregillis Decl. ¶ 35. Following review of the Court's tentative, Tregillis submitted a second, more detailed declaration revising up his estimate of the Settlement's value to at least $421,544,000. Second Tregillis Decl. ¶ 53.

The Court readily agrees that those who do not have a lifetime subscription will receive a value of $100. Those who opt to not receive a new subscription will receive $100. Meanwhile, reactivating a lifetime subscription, given prevailing rates for a Sirius XM subscription, would result in a value greater than $100 after about two years of use. See First Tregillis Decl. ¶¶ 25-26, 34. Considering the relatively slow rate at which individuals have historically allowed their lifetime subscriptions to become inactive, it is reasonable to assume that individuals who will restart their lifetime subscription will gain at least two years of use.[1] See id. ¶ 29.

---

[1] The Court notes that assumptions have to be made to conclude that the historical rate at which subscribers became inactive will continue to apply in the future. For example, Sirius XM stopped selling Lifetime Subscriptions in January 2012, after having sold them for a number of years. First Tregillis Decl. ¶ 12. The Court is not aware of what the current average age is of lifetime subscribers, though the median of all Sirius XM subscribers in 2020 is estimated at 44. Id. ¶ 32. If the average age of lifetime subscribers is older, it is possible that the rate at which they become inactive could soon increase. Moreover, normal market forces could cause a shift away from Sirius XM or other forms of satellite radio, leading to a further decline in use. Nevertheless, the Court believes that it is fair to assume that the average inactive lifetime subscriber who reactivates will gain at least two years of use. See Second Tregillis Decl. ¶ 36 (estimating current average age of lifetime subscribers to be at most 55.33).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-8605 JVS(SSx) | Date | February 8, 2021 |
|---|---|---|---|

| Title | Phillip Alvarez v. Sirius XM Radio Inc. |
|---|---|

On the other hand,  the parties estimate from Sirius XM's records that approximately 838,000 Settlement Class Members continue to hold lifetime subscription plans. First Tregillis Decl. ¶ 19. These Class Members will receive two benefits. First, they will receive a $40 benefit for each transfer they make of their lifetime subscription to a new receiver because the transfer fee is reduced from $75 to $35. Second, they will receive the value of the satellite radio subscription that they no longer need to purchase to replace their lifetime subscriptions after hitting the previous maximum of three transfers. See id. ¶ 22. The Court initially concluded that Tregillis did not consider the frequency at which Settlement Class Members transfer their lifetime subscriptions, meaning that it was not possible to quantify the total value to the Settlement Class of the reduced transfer fee. Nor had Tregillis addressed how frequently Settlement Class Members end up having to purchase separate satellite radio subscriptions after hitting the three-transfer maximum on their current lifetime subscriptions. Consequently, there was no way of knowing whether Settlement Class Members would actually receive the benefit of extended use of their subscriptions as Tregillis suggested.

The Court concludes that Tregillis's second declaration is sufficient to conclude that the scale of the settlement is at least beyond $100 million. Tregillis answered each of the Court's previous concerns by making reference to Table 1 in his previous declaration, which illustrates the percent of lifetime subscriptions that became inactive in each year. See Second Tregillis Decl. ¶ 13 (citing First Tregillis Decl. ¶ 29). He then describes the data that are used to derive Table 1 in two separate ways. Compare id. ¶ 16 ("The information contained in this data set is a month-by-month accounting (spanning over a decade) of Lifetime Subscriptions sold and the number of subscriptions that were, as of 2019, active or inactive.") with id. ¶ 19 (describing the data as "show[ing] how many subscribers reached their fourth transfer and became inactive"). If the data in fact only show the number of people who became inactive, then they would also include lifetime subscribers who became inactive because of death, lack of interest in continuing to use Sirius XM, or any other reason besides reaching the four-transfer limit. It would then not be accurate to use this data to reach the conclusion that lifetime subscribers transfer their subscription once every 6.25 years. See id. ¶¶ 19-24. This is important because the frequency of transfers is essential to calculating either the value that would accrue from the reduced transfer fee or from avoiding having to pay a separate Sirius XM subscription. See id. ¶¶ 42, 45.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    CV 18-8605 JVS(SSx)                                    Date    February 8, 2021

Title    Phillip Alvarez v. Sirius XM Radio Inc.

That being said, the Court concludes that circumstantial evidence suggests that 6.25 years is a fair approximation of the frequency with which lifetime subscribers transfer service. Tregillis notes that car owners have been found to change cars on average once every 6.5 years. Id. ¶ 25; see also "Vehicles Getting Older: Average Age of Light Cars and Trucks in U.S. Rises Again in 2016 to 11.6 Years, IHS Markit Says," IHS Markit (Nov. 22, 2016).[2] As most lifetime subscriptions seem to be used in cars, this suggests that lifetime subscribers are likely to need to transfer their subscriptions approximately every 6.25 years.

The Court therefore agrees with Plaintiffs and Tregillis that $421,544,000 is a reasonable estimate of the order of magnitude of the Settlement's value.[3]

> 3.    *Attorneys' Fees and Costs*

Class Counsel are (i) Robert Ahdoot and Tina Wolfson of Ahdoot & Wolfson, PC, (ii) Keith S. Dubanevich of Stoll Stoll Berne Lokting & Shlachter, PC, and (iii) Cornelius P. Dukelow of Abington Cole & Ellery.

Class Counsel request fees and expenses of $3,500,000. Fees Motion at 1. This consists of $ 3,470,984.63 in attorney's fees and $ 29,015.37 in fees. Id. at 25. Class counsel also request $ 5,000 in Service Payments for each Plaintiff and Paul Wright. Id.

> 4.    *Administrative Expenses and Service Awards*

Sirius XM agreed to pay for the costs of the settlement notice and administration, court-approved attorneys' fees and expenses up to $3.5 million, and service payments for each Named Plaintiff and Paul Wright up to $5,000 each. SA ¶¶ 45, 75-78.

The Settlement Administrator has been responsible for administrative tasks,

---

[2] Available at:
https://news.ihsmarkit.com/prviewer/release_only/slug/automotive-vehicles-getting-older-average-age-light-cars-and-trucks-us-rises-again-201.

[3] The Court appreciates Tregillis's thorough analysis in his supplemental declaration, particularly in how he accounted for life expectancy of lifetime subscribers. Cf. Second Tregillis Decl. ¶¶ 37-49.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-8605 JVS(SSx) | Date | February 8, 2021 |
|---|---|---|---|

| Title | Phillip Alvarez v. Sirius XM Radio Inc. |
|---|---|

which included, (a) arranging for distribution of the class notice and claim form to Settlement Class Members; (b) making any mailings to Settlement Class Members required under this Settlement Agreement; (c) forwarding written inquiries from Settlement Class Members to Class Counsel or their designee; (d) establishing and maintaining the Settlement Website, and any internet banner advertisements, subject to review and approval by the Parties; (e) distributing cash payments to Settlement Class Members with inactive lifetime subscriptions, to the extent that such Settlement Class Members submit timely, valid and correct claim forms. Id. ¶ 43. The Court appointed Epiq Class Action & Claims Solution, Inc. ("Epiq") as the Settlement Administrator. Preliminary Approval Order at 1.

### 5. *Release*

The Named Plaintiffs, Paul Wright, and any Settlement Class Member "shall completely release and forever discharge Sirius XM and each of its past, present or future parents, subsidiaries, affiliates, officers, directors, employees, general or limited partners, insurers, legal representatives, trustees, attorneys, shareholders, agents, assigns, and third party suppliers and vendors . . . from any and all claims, counterclaims, lawsuits, set offs, costs, losses, rights, demands, charges, complaints, actions, causes of action, obligations, or liabilities of any and every kind, including without limitation (i) those known or unknown or capable of being known, (ii) those which are unknown but might be discovered or discoverable, and (iii) those accrued or unaccrued, matured or not matured, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, all from the beginning of the world until today, that arise out of or in any way relate or pertain to claims, no matter how styled, (a) that were asserted, or attempted to be asserted, or that could have been asserted, based on the facts alleged in the Cases, the Action and / or the Consolidated Class Action Complaint, or (b) that arise out of, relate to, or are in connection with the sale of Sirius XM's Lifetime Subscriptions, whether arising out of common law, state law, or federal law, whether by Constitution, statute, contract, common law, or equity, or (c) that arise out of, relate to, or are in connection with the administration of the Settlement." Id. ¶ 83.

### 6. *Notice*

Following the Court's grant of preliminary approval to the Settlement, Epiq endeavored to provide notice to Settlement Class Members. On August 28, 2020, Epiq

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-8605 JVS(SSx) | Date | February 8, 2021 |
|---|---|---|---|

| Title | Phillip Alvarez v. Sirius XM Radio Inc. |
|---|---|

emailed those Settlement Class Members for whom an email address was available. Azari Decl., ECF No. 85, ¶ 11. On September 8 and 21, 2020, a Postcard Notice was mailed via Untied States Postal Service first class mail to all those for whom a facially valid email address was not available but a facially valid postal address was. Id. ¶ 13-18. Finally, on December 30, 2020, an Email Reminder Notice was sent to all Settlement Class Members with Inactive Lifetime Subscriptions to remind them that claims needed to be submitted by January 12, 2021. Azari Supplemental Decl., ECF No. 91, ¶ 13. The Email Notice, the Postcard Notice, and the Email Reminder Notice directed the recipients to a Settlement Website[4] dedicated to the settlement where they could access additional information. Azari Decl. at Attachments 2 & 3; Azari Supplemental Decl. at Attachment 2. The Settlement Website contained the Long Form Notice to inform Settlement Class Members of relevant dates and deadlines and related information. Id. ¶ 21. The individual notice effort was supplemented by a targeted online advertising campaign. Id. ¶¶ 19-20.

### 7.    Opt-Out and Objection Process

Each person who is included in the definition of the Settlement Class had the right to opt-out. SA ¶ 59(a). The Summary Notice and Long Form Notice informed each such person of his or her right to request exclusion from the Settlement Class and not to be bound by the Settlement Agreement. Azari Decl. at Attachments 2-4.

Active Subscribers will receive the benefits of the Settlement automatically. Inactive subscribers were required to submit a Claim Form to obtain the Settlement's benefits (i.e., reactivation of the lifetime subscription or a $100 payment). SA ¶ 68(a), Ex. A (Claim Form). Claim Forms could be submitted online (through the Settlement Website) or by mail. Azari Decl. ¶ 26. In the event an inactive subscriber did not submit a Claim Form, and did not opt out, then he or she will be subject to the releases set forth in the Settlement. Settlement Class Members were provided an opportunity to determine whether they have either inactive lifetime subscriptions or active lifetime subscriptions (as of the Settlement Agreement's date) on the Settlement Website. See "Class Member Verification," Alvarez v. Sirius XM Radio, Inc. (last visited Jan. 5, 2021).[5]

---

[4] Located at https://www.lifetimesiriusxmsettlement.com.

[5] Available at https://www.lifetimesiriusxmsettlement.com/Verification.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-8605 JVS(SSx) | Date | February 8, 2021 |
|---|---|---|---|

| Title | Phillip Alvarez v. Sirius XM Radio Inc. |
|---|---|

Any person who is included in the definition of the Settlement Class who did not successfully opt out and who wished to object to the proposed Settlement was required to, on or before an Opt-Out and Objection Deadline, mail or hand-deliver written objections to the Settlement to Class Counsel and Counsel for Sirius XM, at the addresses set forth in the individual or publication notices, and file, mail or hand-deliver the Objections simultaneously to the Court. Id. ¶ 60(a).

### 8. *Revocation of Agreement*

Epiq was required to provide a list of any and all Settlement Class Members who successfully opted out to the Parties within five days after the Opt-Out and Objection Deadline. SA ¶ 94. That deadline was set for November 30, 2020. Ahdoot Decl., ECF 89-1, ¶ 10. Sirius XM then had the option to terminate the Settlement Agreement no later than 20 days after the Opt-Out and Objection Deadline, at its option, if more than 200 persons or entities who fall under the definition of the Settlement Class successfully opted out. SA ¶ 94. Only 37 individuals opted out of the Settlement. Ahdoot Decl. ¶ 10.

### C. *Results of Notice*

An Email Notice or a Postcard Notice was delivered to 838,772 Settlement Class Members. Azari Decl. ¶ 18. Epiq estimates that this means notice was received by approximately 98.3% of the 853,256 identified Settlement Class Members. Id. Online advertisements further generated another 31.8 million impressions. Id. ¶ 20.

Following the Opt-Out and Objection Deadline, Epiq had received 38 unique requests for exclusion from the settlement. Azari Supplemental Decl. ¶ 11. Epiq also received five objections to the Settlement. See Azari Decl. ¶ 25, Ahdoot Decl. Exs. A-E. As of January 19, 2021, Epiq had received 12,029 claim forms. Azari Supplemental Decl. ¶ 14. Azari notes, however, that this number might increase slightly as timely postmarked claim forms often arrive 10 or more days following a filing deadline. Id.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure Rule 23(e) requires court approval for class-action settlements. Fed. R. Civ. P. 23(e). When the parties reach a settlement agreement before class certification, a court uses a two-step process to approve a class-action settlement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 18-8605 JVS(SSx) | Date | February 8, 2021 |

| | |
|---|---|
| Title | Phillip Alvarez v. Sirius XM Radio Inc. |

Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). First, the court must certify the proposed settlement class. Id. Second, the court must determine whether the proposed settlement is fundamentally fair, adequate, and reasonable. Id.

### III. DISCUSSION

*A.    Class Certification*

The Court preliminarily certified the proposed Class in its prior order.   Preliminary Approval Order at 17. Nothing has changed in the interim that would warrant a deviation from the Court's prior ruling. Therefore, for the reasons specified in its preliminary approval order, the Court certifies the Settlement Class for final approval of the Settlement.

*B.    Approval of the Proposed Class Settlement*

*1.    The Fairness Factors Support Settlement Approval*

Under Rule 23(e)(2) if the proposed settlement would bind class members, the Court may approve it only after a hearing and only on finding that it is fair, reasonable and adequate. To make this determination, the Court must consider the following factors:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-8605 JVS(SSx) | Date | February 8, 2021 |
|---|---|---|---|

| Title | Phillip Alvarez v. Sirius XM Radio Inc. |
|---|---|

Before the revisions to the Federal Rule of Civil Procedure 23(e), the Ninth Circuit had developed its own list of factors to be considered. See e.g., In re Bluetooth Headset Products Liability Litigation, 654 F.3d 935, 964 (9th Cir. 2011) (citing Churchill Village, L.L.C. v. General Electric, 361 F.3d 566, 575 (9th Cir. 2004)). The revised Rule 23 "directs the parties to present [their] settlement to the court in terms of [this new] shorter list of core concerns[.]" Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes. "The goal of [amended Rule 23(e)] is . . . to focus the [district] court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Id.

> a.    *Adequacy of Representation by Class Representatives and Class Counsel*

Under Rule 23(e)(2)(A), the first factor to be considered is whether the class representatives and class counsel have adequately represented the class. This analysis includes "the nature and amount of discovery" undertaken in the litigation. Fed. R. Civ. P. 23(e)(2)(A), 2018 Advisory Committee Notes.

Class Counsel are experienced in class action litigation, including cases regarding unfair business practice claims and false advertising claims. Ahdoot Fee Decl., ECF No. 83-1, ¶¶ 65-75 & Ex. A; Dukelow Fee Decl., ECF No. 83-3, ¶¶ 22-26 & Ex. A. Although the Wright action that is consolidated in this Settlement did not proceed far into the discovery period, that action was litigated in this Court and in the Ninth Circuit before the Settlement was reached. Sirius XM disclosed evidence under mediation privilege, and thus the extent of discovery completed is more extensive than the stage of proceedings alone might suggest. Ahdoot Fee Decl. ¶ 29. Class Counsel conducted a thorough examination, investigation, and evaluation of the relevant law, facts, and allegations to assess the merits of the claims and potential claims to determine the strength of liability, potential remedies, and all defenses thereto. Id.

Because Plaintiffs and Class Counsel have adequately represented the Class, this factor weighs in favor of preliminary approval.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   CV 18-8605 JVS(SSx)                    Date   February 8, 2021

Title   Phillip Alvarez v. Sirius XM Radio Inc.

---

      *b.*    *Negotiated at Arm's Length*

      The second Rule 23(e)(2) factor asks the Court to confirm that the proposed settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). As with the preceding factor, this can be "described as [a] 'procedural' concern[], looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes. "[T]he involvement of a neutral or court-affiliated mediator or facilitator in [settlement] negotiations may bear on whether th[ose] [negotiations] were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes; accord Pederson v. Airport Terminal Services, 2018 WL 2138457, at *7 (C.D. Cal. April 5, 2018) (the oversight "of an experienced mediator" reflected noncollusive negotiations).

      The parties participated in a full-day mediation session before the Honorable Carl J. West (Ret.) on November 29, 2018. Ahdoot Fee Decl. ¶ 28. A settlement was not reached at the mediation session. The parties reached an agreement in principle immediately before oral argument before the Ninth Circuit, on December 5, 2018. Id. ¶ 32. Plaintiffs began to negotiate attorney fees only after the parties reached an agreement on all other terms of the Settlement. Id. ¶ 36.

      The Court is therefore confident in the arm's length process the Parties undertook, and that the Settlement is not the production of collusion.

      *c.*    *Adequacy of Relief Provided for the Class*

      The third factor the Court considers is whether "the relief provided for the class is adequate, taking in to account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). Under this factor, the relief "to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C), Advisory Committee Notes.

      The adequacy of relief for the Settlement Class is the Objectors' primary concern. After consideration of the Objectors' arguments, the Court does not consider them to be

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-8605 JVS(SSx) | Date | February 8, 2021 |
|---|---|---|---|

| Title | Phillip Alvarez v. Sirius XM Radio Inc. |
|---|---|

sufficient to prevent final approval of the Settlement. The Court addresses these arguments in turn. First, Adam Klock, Joshua Sauberman, and Tim Zeichert believe that Settlement Class Members with active lifetime subscriptions should have access restored to all programming which they were offered at any previous point. Klock Objection, ECF No. 89-1, Ex. B; Sauberman Objection, ECF No. 89-1, Ex. D; Zeichert Objection, ECF No. 89-1, Ex. E. Klock and Zeichert contend that they lost access to programming, including the NFL Channel, when they transferred their subscriptions to new receivers following the introduction of XM premium programming. Klock Objection; Zeichert Objection. But the subscriber agreements that were in place when each objector began his lifetime subscription stated that programming was subject to change.[6] As such, programming was properly not considered as part of the Settlement's relief.

Second, Sauberman argues that the terms of the Settlement unjustly enriches Sirius XM by continuing to require a fee for transfer of a lifetime subscription. Sauberman Objection. But, "a full recovery is often not possible in a settlement — by its very nature a compromise — and a partial recovery does not render a settlement unreasonable." Vizzi v. Mitsubishi Motors North America, Inc., 2010 WL 11508375, at *6 (C.D. Cal. Mar. 29, 2010) (citing National Rural Telecommunications Cooperative v. DIRECTV, Inc., 221 F.R.D. 523, 527 (C.D. Cal. Jan. 5, 2004)). While the Court understands Sauberman's concern, the fact that the transfer fee was not completely eliminated is not a sufficient basis for rejecting the Settlement.

Third, Sauberman objects to the lack of injunctive relief, without which Sauberman argues nothing in the Settlement "prevents Defendant from engaging in this activity in the future." Sauberman Objection. But the Settlement does not release Sirius XM from liability if it engages in future conduct similar to that which gave rise to this lawsuit.

---

[6] See Donnelly Decl., ECF No. 89-2, ¶¶ 9-10, 13-16 (stating that Klock purchased his Lifetime Subscriber plan when the August 1, 2009 XM Terms were in effect, that Zeichert purchased his Lifetime Subscriber plan when the 2005 Sirius Terms were in effect, and that Sauberman purchased his Lifetime Subscriber plan when the October 1, 2009 Sirius Terms were in effect); August 1, 2009 XM Terms, ECF No. 89-2, Ex. B, at 1 ("[W]e reserve the unrestricted right to change, rearrange, add, or delete programming, including canceling, moving or adding particular channels, at any time, with or without notice to you."); October 1, 2009 Sirius Terms, ECF No. 89-2, Ex. D, at 1 (same); 2005 Sirius Terms, ECF No. 89-2, Ex. E, at 1 ("[W]e reserve the unrestricted right to change, rearrange, add or delete programming, including cancelling, moving or adding channels, and our prices, at any time, with or without notice to you.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-8605 JVS(SSx) | | Date | February 8, 2021 |
|---|---|---|---|---|

| Title | Phillip Alvarez v. Sirius XM Radio Inc. | |
|---|---|---|

<u>See</u> Settlement ¶ 83 (covering claims "from the beginning of the world until today"). Furthermore, the Settlement obligates Sirius XM to allow Class Members to transfer their Lifetime Subscriptions an unlimited number of times for no fee greater than $35. <u>Id.</u> ¶ 66. This builds in an assurance against future excessive fees or transfer limits, ensuring that the subscriptions can indeed be for a "lifetime." The Court does not agree that injunctive relief is necessary for the Settlement to be reasonable.

Fourth, Yves Doublette argues that he should be entitled to $10,000 because he has been paying a monthly fee, ranging at various points between $11.24 and $22.11, for a new Sirius XM Radio subscription since June 2013 and because he has endured pain and suffering. Doublette Objection, ECF No. 89-1, Ex. A. He also contends that he should be allowed to transfer his subscription at no charge. <u>Id.</u> The Court notes that Class Members are not entitled to compensation for pain and suffering under the claims brought. Moreover, to the extent that Doublette believes that his unique circumstances justified more relief than provided in the Settlement, he had the option to opt out and seek separate relief. <u>See</u> <u>Amador</u> <u>v.</u> <u>Baca</u>, 2020 WL 562938, at *5 (C.D. Cal. Aug. 11, 2020). Doublette's objection does not persuade the Court that the Settlement is unfair to the Settlement Class as a whole.

Finally, Mark Raabe argues that this case should be tried before a jury and a fine imposed on Sirius XM. Raabe Objection, ECF No. 89-1, Ex. C. But settlement agreements are not per se unreasonable. Indeed, settlement agreements are specifically contemplated by Rule 23(e). Moreover, while the Court has the option to reject the Settlement, it does not have the power to force continued prosecution of this case to eventual trial. Given that there are inherent risks for Plaintiffs to proceed with their claims through class certification and eventual trial, rejection of the Settlement would not guarantee a judgment against Sirius XM and an associated greater amount of relief for the Settlement Class.

As such, the Court is not persuaded that Objectors' arguments are sufficient to justify rejecting the Settlement. The Court therefore concludes that the relief provided for Class Members is, at a general level, adequate. The Court now turns to a more particular consideration of the factors outlined in Rule 23(e)(2)(C).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   CV 18-8605 JVS(SSx)                    Date   February 8, 2021

Title   Phillip Alvarez v. Sirius XM Radio Inc.

### i.   *Costs, Risks, and Delay of Trial and Appeal*

"A[] central concern [when evaluating a proposed class action settlement] . . . relate[s] to the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. In evaluating this factor, the Court "must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case[.]" Kullar v. Foot Locker Retail, Inc., 168 Cal. App. 4th 116, 130 (2008). "In the context of a settlement . . . the test is not the maximum amount plaintiffs might have obtained at trial on the complaint, but rather whether the settlement is reasonable under all of the circumstances." Wershba v. Apple Computer, Inc., 91 Cal. App. 4th 224, 250 (2001).

Plaintiffs contend that they are confident that they would succeed if this case proceeded to trial. Mot. at 19. However, given the obstacles and inherent risks Plaintiffs face with respect to their claims, the substantial benefits the Settlement Agreement provides favor preliminary approval.

### ii.   *Effectiveness of Proposed Method of Relief Distribution*

Next, the Court must consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C). "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." Id.

The Claim process is only required for the minority of Settlement Class Members who are inactive subscribers. It requires logging on to the Settlement Website and submitting a claim form there, or a Settlement Class Member may print the claim form from that website and mail a filled-in hard-copy to the Settlement Administrator if the Class Member prefers. SA ¶ 68(a)-(b). There has also been a form on the Settlement Website that individuals could use to confirm whether they qualified as Settlement Class Members. See supra Section I.b.7. These facts speak to how the process was not overly demanding and provided a means for deterring unjustified claims. The Court therefore concludes that the proposed method of distributing relief to the Class is effective.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-8605 JVS(SSx) | Date | February 8, 2021 |
|---|---|---|---|

| Title | Phillip Alvarez v. Sirius XM Radio Inc. |
|---|---|

### iii.    Terms of Proposed Award of Attorneys' Fees

Third, the Court must consider "the terms of any proposed award of attorneys' fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(c).

Class Counsel seeks $3.5 million in attorneys' fees and expenses. Fees Mot. at 1. The Court concludes that the value of the Settlement is at least $12.6 million, but is surely worth some amount more than that. See supra Section I.B.2. After considering Class Counsel's motion for attorney's fees, the Court concludes that the amount in attorney's fees is reasonable relative to the benefits of the Settlement for Settlement Class Members. See infra Section III.D. This factor weighs in favor of approval.

### iv.    Agreement Identification Requirement

The Court must also evaluate any agreement made in connection with the proposed Settlement. See Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3).

Here, the Settlement Agreement before this Court is the only agreement. Thus, the Court need not evaluate any additional agreements outside of the evaluation it makes of the Settlement Agreement.

The Court is satisfied that the form of relief is adequate.

### d.    Equitable Treatment of Class Members

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Committee Notes.

As the Court states in its below discussion, the $5,000 that each of the Named Plaintiffs and Wright requests in service fees is excessive in light of the amount of work they each performed on behalf of the Settlement Class. See infra Section III.E. On the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 18-8605 JVS(SSx) | Date | February 8, 2021 |

| | |
|---|---|
| Title | Phillip Alvarez v. Sirius XM Radio Inc. |

other hand, the Court does not consider the requested service fees to be suggestive of the overall Settlement being unreasonable considering the comparatively large value of the Settlement. The Court therefore concludes that while this factor weighs against final approval, it is not sufficient to be determinative.

Given the preceding analysis, the Court concludes that the Settlement meets the requirements of Rule 23(e)(2).

> C.   *The Proposed Settlement Class Meets the Notice Requirements Under Fed. R. Civ. P. 23(c)(2)(B)*

Under Rule 23(c)(2)(B), "for any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(c)(2)(B) further states that the notice may be made by one of the following: United States mail, electronic means, or another type of appropriate means. Id. "The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Id.

The Court previously approved the plan for sending notice to potential Class Members. Preliminary Approval Order. On August 28, 2020, Epiq emailed those persons for whom an email address was available. Azari Decl., ECF No. 85, ¶ 11. On September 8 and 21, 2020, a Postcard Notice was mailed via the United States Postal Service first class mail to all those for whom a facially valid email address was not available but a facially valid postal address was.[7] Id. ¶ 13-18. Both the Email Notice and the Postcard

---

[7] This was the case for Sauberman, who received his class action notice via the mail. Azari Decl. ¶ 25. As Sirius XM did not have valid email addresses for all Class Members, the Court does not believe that all Class Members could have been contacted by electronic mail, as Sauberman urges. Sauberman Objection. Creating such a requirement would have been unreasonable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    CV 18-8605 JVS(SSx)                         Date    February 8, 2021

Title    Phillip Alvarez v. Sirius XM Radio Inc.

Notice directed the recipients to the Settlement Website, where they can access additional information about the Settlement. Id. at Attachments 2 & 3. The individual notice effort was supplemented by a targeted online advertising campaign. Id. ¶¶ 19-20. An Email Notice or a Postcard Notice was delivered to 838,772 Settlement Class Members to whom Epiq sent notice. Id. ¶ 18. Epiq estimates that this means notice was received by approximately 98.3% of the 853,256 identified Settlement Class Members. Id. Online advertisements further generated another 31.8 million impressions. Id. ¶ 20.

"Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." Rodriguez v. West Publishing Corp., 563 F.3d 948, 962 (9th Cir. 2009) (internal quotation marks and citation omitted). "Settlement notices are supposed to present information about a proposed settlement neutrally, simply, and understandably[.]" Id. "That standard does not require detailed analysis of the statutes or causes of action forming the basis for the plaintiff class's claims, and it does not require an estimate of the potential value of those claims." Lane, 696 F.3d at 826. The notice previously approved by the Court and implemented by Epiq satisfies this standard. See Preliminary Approval Order at 16-17. Accordingly, the Court finds that the notice to the Settlement Class was fair, adequate, and reasonable.

Given the foregoing analysis, the Court **GRANTS** Plaintiffs' motion seeking final approval of the Settlement.

D.    *Attorney's Fees*

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Attorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is 'fundamentally fair, adequate, and reasonable.'" Staton v. Boeing Co., 327 F.3d 938, 963 (9th Cir. 2003) (quoting Fed. R. Civ. P. 23(e)). "The reasonableness of any fee award must be considered against the backdrop of the 'American Rule,' which provides that courts generally are without discretion to award attorneys' fees to a prevailing plaintiff unless (1) fee-shifting is expressly authorized by the governing statute; (2) the opponents acted in bad faith or willfully violated a court order; or (3) 'the successful litigants have created a common fund for recovery or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-8605 JVS(SSx) | Date | February 8, 2021 |
|---|---|---|---|

| Title | Phillip Alvarez v. Sirius XM Radio Inc. |
|---|---|

extended a substantial benefit to a class.'" In re Bluetooth Headset Products Liability Litigation, 654 F.3d 935, 941 (9th Cir. 2011) (quoting Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 275 (1975) (Brennan, J., dissenting)). Both the first and the third prongs of the American Rule apply here: the CLRA provides for attorneys' fees as a matter of right, Cal. Civ. Code § 1780(e), and Class Counsel have succeeded in extending a substantial benefit to the class.

Where the relief obtained is not easily monetized, as is true in cases like this where a fee-shifting statute applies and some injunctive relief is obtained, the "lodestar method" is used to calculate attorneys' fees.[8] In re Bluetooth, 654 F.3d at 941. "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." Id. (citing Staton, 327 F.3d at 965). Here, the Court believes that the number of hours that Class Counsel expended prosecuting this case was reasonable given the complexities of the case. See Ahdoot Fee Decl. ¶ 58; Dubanevich Decl., ECF No. 83-2, at ¶ 16, Dukelow Decl., ECF No. 83-3, at ¶ 4.

The Court further concludes that the hourly rates charged by Class Counsel are reasonable given prevailing rates in the Los Angeles region. Class Counsel's hourly rates range from $450 for an associate to $950 for a partner. See Ahdoot Fee Decl. ¶ 58; Dubanevich Decl. at ¶ 16, Dukelow Decl. at ¶ 4. Paralegals staffed on this case also charged rates of $250 and $310. Ahdoot Fee Decl. ¶ 58; Dubanevich Decl. ¶ 16. These rates are well within the range of prevailing local hourly rates. See generally Thompson Reuters Billing Report, Ahdoot Fee Decl. Ex. B. After multiplying the number of hours expended on this case and the billable hour rates submitted by Class Counsel, the lodestar figure is calculated to be $1,646,825.25.

---

[8] While Class Counsel argue that the appropriate method for determining whether the requested attorney's fees are reasonable is the percentage method, Fees Mot. at 12, the percentage method is primarily used when there is a common fund for the benefit of the class. See In re Bluetooth, 654 F.3d at 942 ("Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method."). This Settlement did not result in the creation of a common fund, but rather entitled each individual Settlement Class Member to a set amount of relief or created guarantees by Sirius XM that apply to each Settlement Class Member. See supra Section I.B.2. The lodestar method is therefore more appropriate.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 18-8605 JVS(SSx) | Date | February 8, 2021 |

| | |
|---|---|
| Title | Phillip Alvarez v. Sirius XM Radio Inc. |

Class Counsel submit a fee request that is approximately 2.1 times the total lodestar they incurred. Fee Mot. at 22. "Because of a 'strong presumption that the lodestar is sufficient,' a multiplier is warranted only in 'rare and exceptional circumstances.'" Chambers v. Whirlpool Corp., 980 F.3d 645, 665 (9th Cir. 2020) (quoting Purdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 546-52 (2010)).[9] Before applying a multiplier, "the district court must 'decide whether to enhance or reduce the lodestar figure based on an evaluation' of the factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67 (9th Cir. 1975), 'that are not already subsumed in the initial lodestar calculation.' Parsons v. Ryan, 949 F.3d 443, 467 (9th Cir. 2020) (quoting Fischer v. SJB-P.D., Inc., 214 F.3d 1115, 1119 & n.4 (9th Cir. 2000)). The factors listed in Kerr include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

526 F.3d at 70 (citing Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)). "Moreover, a multiplier must be 'supported by both specific evidence on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high.'" Id. (quoting Van Gerwen v. Guarantee Mutual Life Insurance Co., 214 F.3d 1041, 1045 (9th Cir. 2000)).

---

[9] Plaintiffs argue that Chambers does not apply to this case because that case involved a coupon settlement and that attorney's fees in this case must be governed by California law. Supplemental Mot. at 5-11. Neither assertion is correct. First, the analysis in Chambers about how to perform the lodestar method is unrelated to the fact that Chambers involved a coupon settlement. While 28 U.S.C. § 1712(b) make dictate use of the lodestar method on the non-coupon portion of a coupon settlement, it does not dictate a special form of the lodestar method reserved specially for coupon settlements. See Chambers, 980 F.3d at 665 (citing non-coupon cases). The discussion of the lodestar method in Chambers is therefore applicable. Second, In re Bluetooth, which involved claims brought under California and Illinois law, makes clear that federal law on the lodestar method applies when evaluating whether a class settlement's award of attorney's fees under Rule 23(h) is reasonable. See 654 F.3d at 938 n.2, 941.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   CV 18-8605 JVS(SSx)                                    Date   February 8, 2021

Title   Phillip Alvarez v. Sirius XM Radio Inc.

Class Counsel state that their requested multiplier is justified "given the excellent results obtained on a contingency basis, in this complex case." Fee Mot. at 22. But the Ninth Circuit has rejected reliance on whether a fee was fixed or contingent as a basis for a multiplier. Chambers, 980 F.3d at 668 (rejecting reliance on whether a fee was contingent in justifying a multiplier where "[a]ny attorney's fees set by the court will be paid directly by Whirlpool, without reducing the class recovery, because there is no common fund"). Moreover, "the novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors 'presumably are fully reflected in the number of billable hours recorded by counsel.'" Perdue, 559 U.S. at 553 (quoting Blum v. Stenson, 465 U.S. 886, 889 (1984)).

This leaves the size of the relief for the Settlement Class. In determining whether the results in this case justify a multiplier, the Court must compare the "actual value of the settlement" to "the scope of the litigation as a whole." Chambers, 980 F.3d at 667 (quoting Hensley v. Eckerhart, 461 U.S. 424, 440 (1983)). As noted previously, the Court believes that it is fair to estimate the value of the overall Settlement on the order of magnitude of $408,944,000. See supra Section I.B.2. This is a substantial amount of relief by any measure and dwarfs this case's lodestar of $1,646,825.25. The Ninth Circuit "encourage[s] courts to guard against an unreasonable result by cross-checking their calculations against a second method," such as the percentage-of-recovery method. In re Bluetooth, 654 F.3d at 944. Awarding only the lodestar in this case would result in Plaintiffs' counsel receiving somewhere in the range of 1% of the actual value of the Settlement. As 25% is used as a benchmark for the percentage-of-recovery method, see id. at 945, a positive multiplier is surely justified under this factor.

The Court concludes that many of the remaining Kerr factors are already factored into the hourly rates used by Class Counsel in calculating the lodestar – such as the time and labor required, the skill requisite to perform the legal service properly, the preclusion of other employment by the attorney due to acceptance of the case, the customary fee, time limitations imposed by the client or the circumstances, and the experience, reputation, and ability of the attorneys. The other factors – including the "undesirability" of the case, the nature and length of the professional relationship with the client, and awards in similar cases – do not weigh in favor of a multiplier. There is no reason for this case to be undesirable, there is no evidence of there being a longstanding relationship with the Named Class Members, and the Court is unaware of substantially similar cases dictating use of a multiplier.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-8605 JVS(SSx) | | Date | February 8, 2021 |
|---|---|---|---|---|

| Title | Phillip Alvarez v. Sirius XM Radio Inc. |
|---|---|

The Court therefore applies the requested 2.1 multiplier and awards Plaintiffs $3,470,984.63 in attorney's fees.

E.    *Service Payments*

Plaintiffs request $5,000 in service payments for each of the Named Plaintiffs and Wright. Fees Mot. at 24-25. Courts have discretion to issue incentive awards to class representatives. Rodriguez v. West Publishing Corp., 563 F.3d 948, 958–59 (9th Cir. 2009). The awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Id. Courts evaluate incentive awards relative to named plaintiff[s'] efforts, considering "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." Staton, 327 F.3d at 977 (alterations in original) (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)). Courts also compare the incentive awards to the total settlement by looking at "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." In re Online DVD-Rental Antitrust Litigation, 779 F.3d 934, 947 (9th Cir. 2015) (quoting Staton, 327 F.3d at 977).

The Named Plaintiffs all submitted declarations in which they estimated the amount of time that they spent on this case. Alvarez Decl., ECF No. 83-4, ¶ 7 (15 hours); Bettison Decl., ECF No. 83-5, ¶ 7 (same); Kelleher Decl., ECF No. 83-6, ¶ 7 (12 hours); Vaugh Decl., ECF No. 83-7, ¶ 7 (15 hours); Wright Decl., ECF No. 83-8, ¶ 9 (20 hours). Each of the Named Plaintiffs "investigated the matter prior to and after retaining their respective attorneys, participated in the vetting process implemented by Plaintiffs' counsel, reviewed and approved their original complaints, understood that they may have to sit for a deposition, kept in contact with counsel to monitor the progress of the litigation, and reviewed and communicated with their counsel regarding the Settlement Agreement and its exhibits." Ahdoot Fee Decl. ¶ 46.

While the payments constitute a small fraction of the overall recovery for the Settlement Class, the Court considers $5,000 to be excessive relative to the amount of work contributed by each of the Named Plaintiffs. $5,000 payments represents hourly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   CV 18-8605 JVS(SSx)                        Date   February 8, 2021

Title   Phillip Alvarez v. Sirius XM Radio Inc.

payments ranging from $250 to $417. This Court has previously found service payments in this range to be unreasonably large. See Palmer v. Pier 1 Imports, 2018 WL 8367495, at *6 (C.D. Cal. July 23, 2018). $5,000 is also fifty times the amount of recovery for Settlement Class Members with an inactive lifetime subscription and who chose not reactive. It may be many more times greater than the value of the Settlement to Settlement Class Members with an active lifetime subscription. See supra Section I.B.2. Given these facts, the size of the recovery secured for the Settlement Class, and the risks undertaken, the Court reduces each Named Plaintiff's settlement award so that it reflects an hourly payment of $125: $1500 for Kelleher, $1875 for Alvarez, Bettison, and Vaugh, and $3000 for Wright. The Court believes that this number more accurately reflects the effort expended by the Plaintiffs and the risks they incurred.

　　　　F.　　Litigation Expenses

　　　　Class Counsel further seek reimbursement of $29,015.37 in litigation expenses. Fee Mot. at 24. "Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters."  In re Omnivision Techs., 559 F. Supp. 2d at 1048. Litigation expenses may also be awarded under Cal. Civ. Code § 1780(e). The Court has considered the details of the litigation expenses that have been submitted and finds them to be reasonable. See Ahdoot Fee Decl. ¶ 63; Dubanevich Decl. ¶ 20. The Court therefore **GRANTS** the motion with respect to litigation expenses.

　　　　　　　　　　　**IV. CONCLUSION**

　　　　For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion certifying the proposed Settlement Class, **GRANTS** final approval of the Settlement, **GRANTS** Plaintiffs $3,470,984.63 in attorney's fees, **GRANTS** service payments of $1500 for Kelleher, $1875 each for Alvarez, Bettison, and Vaugh, and $3000 for Wright, and **GRANTS** Plaintiffs $29,015.37 in litigation expenses.

　　　　　　　**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　：　　　　0

　　　　　　　　　　　　　　　　　Initials of Preparer　　　　lmb